The Honorable Chief Judge David G. Estudillo

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
### AT TACOMA

PAUL D. ETIENNE, JOSEPH J. TYSON, THOMAS A. DALY, FRANK R. SCHUSTER, EUSEBIO L. ELIZONDO, GARY F. LAZZERONI, GARY M. ZENDER, ROBERT PEARSON, LUTAKOME NSUBUGA, JESÚS MARISCAL, MICHAEL KELLY,

Plaintiffs,

v.

ROBERT W. FERGUSON, in his official capacity as Governor of Washington, NICHOLAS W. BROWN, in his official capacity as Attorney General of Washington, LEESA MANION, in her official capacity as King County Prosecuting Attorney, LARRY HASKELL, in his official capacity as Spokane County Prosecuting Attorney, JOSEPH BRUSIC, in his official capacity as Yakima County Prosecuting Attorney, RANDY FLYCKT, in his official capacity as Adams County Prosecuting Attorney, CURT LIEDKIE, in his official capacity as Asotin County Prosecuting Attorney, ERIC EISINGER, in his official capacity as Benton County Prosecuting Attorney, ROBERT SEALBY, in his official capacity as Chelan County Prosecuting Attorney, MARK NICHOLS,  in his official capacity as Clallam County Prosecuting

No. 3:25-cv-05461-DGE

**PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

NOTE ON MOTION CALENDAR: JULY 3, 2025

ORAL ARGUMENT REQUESTED

RELIEF REQUESTED BY JULY 17, 2025

PLAINTIFFS' MOTION
FOR PRELIMINARY INJUNCTION
(No. 3:25-cv-05461-DGE)

- i -

CROWLEY LAW OFFICES, P.S.
600 University Street, Suite 1708 • Seattle, WA 98101
(206) 209-0456
www.crowleylawoffices.com

Attorney, TONY GOLIK, in his official Capacity as Clark County Prosecuting Attorney, DALE SLACK, in his official capacity as Columbia County Prosecuting Attorney, RYAN JURVAKAINEN, in his official capacity as Cowlitz County Prosecuting Attorney, GORDON EDGAR, in his official capacity as Douglas County Prosecuting Attorney, MICHAEL GOLDEN, in his official capacity as Ferry County Prosecuting Attorney, SHAWN SANT, in his official capacity as Franklin County Prosecuting Attorney, MATHEW NEWBERG, in his official capacity as Garfield County Prosecuting Attorney, KEVIN McCRAE, in his official capacity as Grant County Prosecuting Attorney, NORMA TILLOTSON, in her official capacity as Grays Harbor County Prosecuting Attorney, GREGORY BANKS, in his official capacity as Island County Prosecuting Attorney, JAMES KENNEDY, in his official capacity as Jefferson County Prosecuting Attorney, CHAD ENRIGHT, in his official capacity as Kitsap County Prosecuting Attorney, GREGORY ZEMPEL, in his official capacity as Kittitas County Prosecuting Attorney, DAVID QUESNEL, in his official capacity as Klickitat County Prosecuting Attorney, JONATHAN MEYER, in his official capacity as Lewis County Prosecuting Attorney, TY ALBERTSON, in his official capacity as Lincoln County Prosecuting Attorney, MICHAEL DORCY, in his official capacity as Mason County Prosecuting Attorney, ALBERT LIN, in his official capacity as Okanogan County Prosecuting Attorney, MICHAEL ROTHMAN, in his official capacity as Pacific County Prosecuting Attorney, DOLLY HUNT, in her official Capacity as Pend Orielle County Prosecuting Attorney, MARY ROBNETT, in her official capacity as Pierce County Prosecuting Attorney, AMY VIRA, in her official capacity as San Juan County Prosecuting Attorney, RICH WEYRICH, in his official Capacity as Skagit County Prosecuting Attorney, ADAM

PLAINTIFFS' MOTION
FOR PRELIMINARY INJUNCTION
(No. 3:25-cv-05461-DGE)

- ii -

CROWLEY LAW OFFICES, P.S.
600 University Street, Suite 1708 • Seattle, WA 98101
(206) 209-0456
www.crowleylawoffices.com

1  KICK, in his official capacity as Skamania
   County Prosecuting Attorney, JASON
2  CUMMINGS, in his official capacity as
   Snohomish County Prosecuting Attorney,
3  ERIKA GEORGE, in her official capacity as
   Stevens County Prosecuting Attorney, JON
4  TUNHEIM, in his official capacity as
   Thurston County Prosecuting Attorney, DAN
5  BIGELOW, in his official capacity as
   Wahkiakum County Prosecuting Attorney,
6  GABE ACOSTA, in his official capacity as
   Walla Walla County Prosecuting Attorney,
7  ERIC RICHEY, in his official capacity as
   Whatcom County Prosecuting Attorney, and
8  DENIS TRACY, in his official capacity as
   Whitman County Prosecuting Attorney,
9
10
11                    Defendants.
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

1

2

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................... 1

BACKGROUND .................................................................................................... 4

    I.      The Sacrament of Confession and the Sacramental Seal ........................ 4

    II.    Washington's Current Framework for Reporting Child Abuse and Neglect .......... 4

    III.   Despite No Legal Obligation to Do So, Catholic Priests Are Required By Their Dioceses to Report to Law Enforcement Suspected Child Abuse or Neglect Learned About Outside Confession ................................................................. 6

    IV.   Washington's Unconstitutional Amended Framework for Reporting Child Abuse and Neglect Beginning July 27, 2025 ............................................ 7

    V.    Priests Are Committed to Keeping the Sacramental Seal ....................... 9

ARGUMENT ....................................................................................................... 10

    I.      Plaintiffs Are Likely to Succeed on the Merits of Their Claims ......................... 10

          A.    Senate Bill 5375 Impermissibly Burdens Religious Exercise (First Cause of Action) ........................................................... 10

               1.    Senate Bill 5375 Burdens Sincere Religious Practice ................. 11

               2.    Senate Bill 5375 Is Neither Neutral Nor Generally Applicable ... 12

               3.    Senate Bill 5375 Cannot Satisfy Strict Scrutiny ......................... 14

          B.    Senate Bill 5375 Violates Church Autonomy (Fourth Cause of Action) . 16

               1.    Senate Bill 5375 Interferes with Church Discipline ..................... 17

               2.    Senate Bill 5375 Interferes with Church Government ................. 19

          C.    Senate Bill 5375 Commandeers Religious Practice (Sixth Cause of Action) ................................................................. 19

    II.    Plaintiffs Face Irreparable Harm in the Absence of Injunctive Relief ................. 21

    III.   The Remaining Preliminary Injunction Factors Weigh in Favor of Injunctive Relief ................................................................................. 22

CONCLUSION ..................................................................................................... 23

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

PLAINTIFFS' MOTION            - iv -          CROWLEY LAW OFFICES, P.S.
FOR PRELIMINARY INJUNCTION          600 University Street, Suite 1708 • Seattle, WA 98101
(No. 3:25-cv-05461-DGE)                  (206) 209-0456
                                      www.crowleylawoffices.com

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Alliance for the Wild Rockies v. Cottrell,*
        632 F.3d 1127 (9th Cir. 2011) ...................................................................10

*Am. Booksellers Found. for Free Expression v. Sullivan,*
        2010 WL 11453161 (D. Alaska Oct. 20, 2010)......................................21, 23

*American Beverage Ass'n v. City & County of San Francisco,*
        916 F.3d 749 (9th Cir. 2019) ................................................................3, 22

*Bacon v. Woodward,*
        104 F.4th 744 (9th Cir. 2024) ......................................................11, 14, 15

*California Chamber of Commerce v. Council for Education & Research on*
        *Toxics,* 29 F.4th 468 (9th Cir. 2022)......................................................21

*Catholic Charities Bureau, Inc. v. Wisconsin Labor & Industry Review*
        *Commission,* 605 U.S. __ (2025) ...........................................................16

*Church of Lukumi Babalu Aye, Inc. v. City of Hialeah,*
        508 U.S. 520 (1993).................................................11, 12, 14, 15, 16

*Doe #1 v. Trump,*
        957 F.3d 1050 (9th Cir. 2020) ...............................................................23

*Doe v. Harris,*
        772 F.3d 563 (9th Cir. 2014) .................................................................21

*Employment Division, Department of Human Resources of Oregon v. Smith,*
        494 U.S. 872 (1990)...............................................................................10

*Evans v. Tacoma School District No. 10,*
        380 P.3d 553 (Wash. Ct. App. 2016).........................................................6

*Fellowship of Christian Athletes v. San Jose Unified School District Board of*
        *Education,* 82 F.4th 664 (9th Cir. 2023)..................................... *passim*

*Fulton v. City of Philadelphia,*
        593 U.S. 522 (2021).....................................................................14, 15

*Gonzalez v. Roman Catholic Archbishop of Manila,*
        280 U.S. 1 (1929)..................................................................................16

*Hilsenrath v. School District of Chathams,*
        136 F.4th 484 (3d Cir. 2025) ...........................................................19, 20

CROWLEY LAW OFFICES, P.S.
600 University Street, Suite 1708 • Seattle, WA 98101
(206) 209-0456
www.crowleylawoffices.com

*Hosanna-Tabor Evangelical Church & School v. EEOC,*
   565 U.S. 171 (2012)..........................................................................................17

*Hunter v. Department of Education,*
   115 F.4th 955 (9th Cir. 2024) .........................................................................19

*Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church in North America,*
   344 U.S. 94 (1952)..................................................................................16, 17

*Kennedy v. Bremerton School District,*
   597 U.S. 507 (2022).........................................................................11, 14, 19

*Larkin v. Grendel's Den, Inc.,*
   459 U.S. 116 (1982)..........................................................................................20

*Loffman v. California Department of Education,*
   119 F.4th 1147 (9th Cir. 2024) .........................................................................11

*Markel v. Union of Orthodox Jewish Congregations of America,*
   124 F.4th 796 (9th Cir. 2024) ..................................................................16, 20

*Mockaitis v. Harcleroad,*
   104 F.3d 1522 (9th Cir. 1997) ..............................................1, 12, 17, 18, 20

*Nken v. Holder,*
   556 U.S. 418 (2009)..........................................................................................22

*Our Lady of Guadalupe School v. Morrissey-Berru,*
   591 U.S. 732 (2020)...........................................................16, 17, 18, 19, 20

*Roman Catholic Diocese of Brooklyn v. Cuomo,*
   592 U.S. 14 (2020)..................................................................3, 14, 15, 21, 22

*Serbian Eastern Orthodox Diocese v. Milivojevich,*
   426 U.S. 696 (1976)...............................................................2, 17, 18, 19

*Shurtleff v. City of Boston,*
   596 U.S. 243 (2022)..................................................................................3, 20

*State v. Motherwell,*
   788 P.2d 1066 (Wash. 1990)............................................................................22

*State v. Roach,*
   489 P.3d 283 (Wash. Ct. App. 2021)................................................................5

*Tandon v. Newsom,*
   593 U.S. 61 (2021)..............................................................................11, 13, 14

PLAINTIFFS' MOTION     - vi -     CROWLEY LAW OFFICES, P.S.
FOR PRELIMINARY INJUNCTION     600 University Street, Suite 1708 • Seattle, WA 98101
(No. 3:25-cv-05461-DGE)     (206) 209-0456
     www.crowleylawoffices.com

*Waln v. Dysart School District*,
    54 F.4th 1152 (9th Cir. 2022) ........................................................................11, 14

*Watson v. Jones*,
    80 U.S. 679 (1872) ........................................................................17, 19

*Wisconsin v. Yoder*,
    406 U.S. 205 (1972) ........................................................................12

## STATUTES, RULES, AND REGULATIONS

RCW § 5.60.060 ........................................................................8

RCW § 9A.20.021 ........................................................................6

RCW § 26.44.010 ........................................................................4

RCW § 26.44.030 ........................................................................ *passim*

RCW § 26.44.080 ........................................................................6

U.S. Const. amend I ........................................................................10

## OTHER AUTHORITIES

Code of Canon Law c.1386 § 1 ........................................................................18

Code of Canon Law c.960 § 1 ........................................................................18

Code of Canon Law c.974 § 1 ........................................................................18

Code of Canon Law c.978 § 1 ........................................................................17

Code of Canon Law c.978 § 2 ........................................................................17

Code of Canon Law c.979 ........................................................................17

Code of Canon Law c.980 ........................................................................17

Code of Canon Law c.983 § 1 ........................................................................18

Michael W. McConnell, *Establishment and Disestablishment at the Founding,*
    *Part I: Establishment of Religion*, 44 Wm. & Mary L. Rev. 2105, 2110-12,
    2131-81 (2003) ........................................................................20

SB 5375, 2025 Wash. Sess. Laws ch. 197 ........................................................................8, 9

Sub. H.B. 1171, 2025 Wash. Sess. Laws ch. 192 ........................................................................1, 7, 8, 14, 15

PLAINTIFFS' MOTION
FOR PRELIMINARY INJUNCTION
(No. 3:25-cv-05461-DGE)

- vii -

CROWLEY LAW OFFICES, P.S.
600 University Street, Suite 1708 • Seattle, WA 98101
(206) 209-0456
www.crowleylawoffices.com

1    Plaintiffs hereby move this Court, pursuant to Federal Rule of Civil Procedure 65(a), for

2    an order preliminarily enjoining Defendants from enforcing RCW § 26.44.030, as amended by

3    Senate Bill 5375, as applied to information learned solely through the Sacrament of Confession.

## **INTRODUCTION**

5    For centuries, the Roman Catholic Church has taught that the Sacrament of Confession is

6    protected by the sacramental seal, which absolutely forbids a priest from disclosing in any manner

7    and for any reason what the priest hears from a penitent during confession.  A priest who directly

8    violates the sacramental seal incurs a *latae sententiae* excommunication—i.e., *automatic*

9    excommunication—thereby risking eternal damnation.   Accordingly, the historical record is

10   replete with examples of Catholic priests choosing death as martyrs rather than succumbing to

11   government demands that they violate the sacramental seal.

12   Given this country's commitment to religious freedom, legal protection for the sacramental

13   seal has been recognized in the United States for more than 200 years.  Indeed, one of the earliest

14   religious liberty cases protected the sacramental seal.  The Territory of Washington enshrined such

15   protection into its first legal code and recodified the protection when Washington became a state.

16   And the Ninth Circuit has not identified any "case in the United States in which a court has given

17   approval to the invasion of the Catholic rite of confession by an agency of government." *Mockaitis*

18   *v. Harcleroad*, 104 F.3d 1522, 1533 (9th Cir. 1997).

19   Beginning on July 27, 2025, however, the amendments to RCW § 26.44.030 made by

20   Senate Bill 5375 will require Catholic priests to violate the sacramental seal.  Specifically, Catholic

21   priests—including all Plaintiffs—will be required to report suspected child abuse or neglect

22   revealed by penitents during confession or face imprisonment, fine, and civil liability.   And

23   Washington is putting Catholic priests to that Hobson's choice despite exempting from any such

24   reporting obligation others who learn of child abuse or neglect through a wide array of confidential

25   communications, including communications covered by the attorney-client privilege.   Indeed,

26   Substitute House Bill 1171 simultaneously amends RCW § 26.44.030 to exempt attorneys

27

PLAINTIFFS' MOTION
FOR PRELIMINARY INJUNCTION
(No. 3:25-cv-05461-DGE)

- 1 -

CROWLEY LAW OFFICES, P.S.
600 University Street, Suite 1708 • Seattle, WA 98101
(206) 209-0456
www.crowleylawoffices.com

1    employed by an institution of higher education and anyone working at their direction from the

2    same reporting requirement.

3    　　Because the First Amendment to the U.S. Constitution prohibits the State of Washington

4    from selectively putting Plaintiffs to a choice between eternal damnation or criminal prosecution,

5    each of the preliminary injunction factors—likelihood of success, irreparable harm, public interest,

6    and balance of equities—weighs strongly in Plaintiffs' favor.  *First*, Plaintiffs have a strong

7    likelihood of success on their first cause of action—that RCW § 26.44.030, as amended by Senate

8    Bill 5375, violates the Free Exercise Clause of the First Amendment by imposing unjustifiable

9    burdens on religious practices that are not generally applicable to secular activities.  Specifically,

10   the law burdens Catholic priests by forcing them to act contrary to their faith and disclose

11   confidential communications from the Sacrament of Confession, while at the same time,

12   exempting other persons who learn of abuse and neglect through confidential communications or

13   otherwise.  *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th

14   664, 689 (9th Cir. 2023) (en banc) ("*FCA*") (subjecting "selective enforcement favoring

15   comparable secular activities" to strict scrutiny).

16   　　*Second*, Plaintiffs are likely to prevail on the merits of their fourth cause of action because

17   RCW § 26.44.030, as amended by Senate Bill 5375, intrudes on matters of Catholic Church

18   governance and discipline in violation of both the Free Exercise and Establishment Clauses of the

19   First Amendment.  *See Serbian E. Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 724-25 (1976)

20   (holding that matters of "internal discipline and government" are the exclusive preserve of a

21   church).  The Sacrament of Confession and the meting out of penance is one of the means by which

22   the Catholic Church disciplines its members.  By requiring that Catholic priests disclose what they

23   hear in confession, Washington is directly intruding upon, and chilling, that form of discipline.

24   　　*Third*, Plaintiffs are also likely to prevail on the merits of their sixth cause of action because

25   RCW § 26.44.030, as amended by Senate Bill 5375, commandeers the Catholic Church's internal

26   religious practices for state purposes in violation of the Establishment Clause of the First

27   Amendment.  The information disclosed to a priest in the Sacrament of Confession would not be

PLAINTIFFS' MOTION
FOR PRELIMINARY INJUNCTION
(No. 3:25-cv-05461-DGE)

- 2 -

CROWLEY LAW OFFICES, P.S.
600 University Street, Suite 1708 • Seattle, WA 98101
(206) 209-0456
www.crowleylawoffices.com

known by a priest absent the Catholic Church's teaching about how the Sacrament reconciles a penitent with God and his Church. By coopting for its own purposes what is disclosed in the purely religious activity of confession to a priest, Washington is using religious practice to achieve civil ends—one of the very forms of establishment the Establishment Clause was intended to preclude. *See Shurtleff v. City of Bos.*, 596 U.S. 243, 286 (2022) (Gorsuch, J. concurring) (describing "government use[ of] the established church to carry out certain civil functions" as what the Establishment Clause was intended to prohibit).

These deprivations of Plaintiffs' constitutional rights constitute *per se* irreparable harm. *See Roman Cath. Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 19 (2020) (per curiam) ("The loss of First Amendment freedoms for even minimal periods of time, unquestionably constitutes irreparable injury." (citation omitted)). These deprivations of Plaintiffs' constitutional rights are also the antithesis of serving the public interest. *See Am. Bev. Ass'n v. City & Cnty. of S.F.*, 916 F.3d 749, 758 (9th Cir. 2019) (en banc) ("It is always in the public interest to prevent the violation of a party's constitutional rights." (citation omitted)). And these deprivations of Plaintiffs' constitutional rights outweigh any interest Washington has in intruding upon the sacramental seal—an intrusion that for *decades* Washington has not thought sufficiently important to impose on Catholic priests and that it declines to impose on others who have reasonable cause to believe that a child has suffered abuse or neglect. *FCA*, 82 F.4th at 695 (where plaintiffs have "(at a minimum) 'raised serious First Amendment questions,' that alone 'compels a finding that the balance of hardships tips sharply in [its] favor'").

For these and the reasons set forth below, Plaintiffs respectfully request that the Court enter a preliminary injunction enjoining the enforcement of RCW § 26.44.030, as amended by Senate Bill 5375, as applied to Catholic confession pending a final judgment on the merits.

PLAINTIFFS' MOTION
FOR PRELIMINARY INJUNCTION
(No. 3:25-cv-05461-DGE)

- 3 -

CROWLEY LAW OFFICES, P.S.
600 University Street, Suite 1708 • Seattle, WA 98101
(206) 209-0456
www.crowleylawoffices.com

1

## **<u>BACKGROUND</u>**

2

**I.      The Sacrament of Confession and the Sacramental Seal**

3
        The Catholic Church teaches that dying in a state of mortal sin risks eternal damnation to

4
Hell.  Etienne Decl. ¶5.[1]  But the Catholic Church also teaches that, through the Sacrament of

5
Confession, God "will forgive us our sins and cleanse us from all unrighteousness."  *Id.*  While

6
venial (less serious) sins can be forgiven in various ways, "[t]he Sacrament of Confession is the

7
only ordinary means by which man receives forgiveness for the commission of mortal sin after

8
baptism."  *Id.* ¶6.  The absolution afforded through confession is thus a continuation of Christ's

9
mission to forgive sins.  *Id.*

10
        That confession of sins is protected by the sacramental seal, which "absolutely forbid[s]"

11
a priest from "betray[ing] in any way a penitent in words or in any manner and for any reason."

12
*Id.* ¶10.  So inviolable is the sacramental seal that "[t]he absolute prohibition imposed by the

13
sacramental seal … prevent[s] the priest from speaking of the content of the confession to the

14
penitent himself, outside of the sacrament."  *Id.*  That is because the sacramental seal derives from

15
the very nature of the sacrament itself, instituted by God, and divinely revealed to the Church.  *Id.*

16
        Any priest "who directly violates the sacramental seal incurs a *latae sententiae*

17
excommunication"—i.e., *automatic* excommunication.  *Id.* ¶12.  The penalty of automatic

18
excommunication is applied to offenses under Canon Law that threaten or contradict the Church's

19
unity and theological teaching, and include, in addition to violation of the sacramental seal,

20
apostasy, heresy, schism, or desecration of the Eucharist.  *Id.* ¶13.  And given the threat posed by

21
such conduct to the unity and theological teaching of the Church, a *latae sententiae*

22
excommunication is "reserved to the Apostolic See," meaning only the Pope can lift it.  *Id.*

23
**II.     Washington's Current Framework for Reporting Child Abuse and Neglect**

24
        Chapter 26.44 of the Revised Code of Washington imposes a legislative framework for

25
reporting child abuse and neglect.  It provides "for the reporting of such cases to the appropriate

26

27

---

[1] The declarations submitted in support of this Motion are identified herein by the declarant's last name.

- 4 -

1  public authorities" and directs that "protective services shall be made available in an effort to

2  prevent further abuses, and to safeguard the general welfare of such children." RCW § 26.44.010.

3      In its current form, RCW § 26.44.030(1)(a) requires certain, defined groups of persons—

4  generally agents of the state or those licensed by the state to perform certain services—to report to

5  the "proper law enforcement agency" or the department of children, youth, and families any child

6  abuse or neglect that the specified persons have reasonable cause to believe has occurred. Required

7  reporters include law enforcement officers, probation officers, state-licensed psychologists, state-

8  registered pharmacists, state-licensed "practitioners of the healing arts," and other persons

9  employed by or licensed by the state. RCW § 26.44.030(1)(a). Other "persons," including

10  religious clergy, family members, or lawyers who have reasonable cause to believe that a child has

11  suffered abuse or neglect "may," but need not, report such conduct. *Id.* § 26.44.030(3).

12      RCW § 26.44.030(1)(b) requires "any person" to report suspected abuse or neglect to the

13  "proper law enforcement agency" or the department of children, youth, and families when, "in his

14  or her official supervisory capacity with a nonprofit or for-profit organization," that person has

15  reason to believe someone "employed by, contracted by, or [who] volunteers with the

16  organization" who "regularly has unsupervised access to a child or children as part of the

17  employment, contract, or voluntary service" has engaged in such abuse. Exempted from this

18  requirement, however, is information obtained "solely as a result of a privileged

19  communication"—including the attorney-client privilege, the spousal privilege,[2] the sexual assault

20  advocate privilege, the domestic violence advocate privilege, the union (including a teacher's

21  union) representative privilege, and the priest-penitent privilege. *Id.* §§ 26.44.030(1)(b), 5.60.060.

22  In other words, supervisors are required to report suspected child abuse or neglect by anyone

23  associated with the organization with access to children unless the information was learned through

24  a privileged communication.

25      RCW § 26.44.030(1)(d) requires "any adult who has reasonable cause to believe that a

26  child who resides with them[] has suffered severe abuse" to report that severe abuse if "able or

27

---

[2] This spousal privilege applies to, among other things, a spouse's or domestic partner's confession to rape of a child. *State v. Roach*, 489 P.3d 283 (Wash. Ct. App. 2021).

PLAINTIFFS' MOTION
FOR PRELIMINARY INJUNCTION
(No. 3:25-cv-05461-DGE)                    - 5 -                    CROWLEY LAW OFFICES, P.S.
600 University Street, Suite 1708 • Seattle, WA 98101
(206) 209-0456
www.crowleylawoffices.com

capable of making a report."  "Severe abuse" is defined as "[a]ny single act of abuse that causes physical trauma of sufficient severity that, if left untreated, could cause death; any single act of sexual abuse that causes significant bleeding, deep bruising, or significant external or internal swelling; or more than one act of physical abuse, each of which causes bleeding, deep bruising, significant external or internal swelling, bone fracture, or unconsciousness."  RCW § 26.44.030(1)(d).  No reporting obligation is imposed on such adults for neglect or abuse that is not severe; nor is the reporting obligation imposed on nonresident or minor family members, attorneys, or others with reasonable cause to suspect abuse.  *See id.* § 26.44.030(3).

Finally, RCW § 26.44.030(1)(f) adds to the pool of mandatory reporters in any "administrative and academic or athletic department employees, including student employees, of institutions of higher education …, and of private institutions of higher education."  RCW § 26.44.030(1)(f).  This includes law professors at law schools.

Failure to make a report under either RCW § 26.44.030(1)(a), (b), (d), or (f) risks criminal prosecution for a gross misdemeanor, carrying a penalty of up to 364 days in prison and a fine of up to $5,000.  *See* RCW §§ 26.44.080, 9A.20.021(c)(2).  Those who fail to report may also be subject to civil damages in suits brought by private parties.  *See Evans v. Tacoma Sch. Dist. No. 10*, 380 P.3d 553, 561 (Wash. Ct. App. 2016).

### III.    Despite No Legal Obligation to Do So, Catholic Priests Are Required By Their Dioceses to Report to Law Enforcement Suspected Child Abuse or Neglect Learned About Outside Confession

Consistent with the Church's efforts to combat child abuse, Plaintiffs Paul D. Etienne, Joseph J. Tyson, and Thomas A. Daly have all implemented within their respective dioceses policies consistent with, and in many respects broader than, the current child abuse and neglect reporting requirements of RCW § 26.44.030(1)(a) and (b).  Etienne Decl. ¶20; Tyson Decl. ¶20; Daly Decl. ¶20.  Among the many requirements of those policies include the reporting to proper law enforcement agencies or the department of children, youth, and families whenever Church personnel—including all priests—have reasonable cause to believe child abuse or neglect has occurred.  Etienne Decl. ¶20; Tyson Decl. ¶20; Daly Decl. ¶20.  Thus, even though they are not

PLAINTIFFS' MOTION
FOR PRELIMINARY INJUNCTION
(No. 3:25-cv-05461-DGE)

- 6 -

CROWLEY LAW OFFICES, P.S.
600 University Street, Suite 1708 • Seattle, WA 98101
(206) 209-0456
www.crowleylawoffices.com

currently required to report under Washington law, priests within each diocese are required by the dioceses to report to proper law enforcement agencies or the department of children, youth, and families suspected child abuse or neglect.  Etienne Decl. ¶20; Tyson Decl. ¶20; Daly Decl. ¶20. The sole exception to this self-imposed reporting requirement is information learned by a priest in the confessional and thus protected by the sacramental seal.  Etienne Decl. ¶20; Tyson Decl. ¶20; Daly Decl. ¶20.

The priests serving within the Archdiocese of Seattle, Diocese of Spokane, and Diocese of Yakima, including all Plaintiffs, adhere to these policies.  Etienne Decl. ¶20; Tyson Decl. ¶20; Daly Decl. ¶20. Moreover, when the priests in each diocese, including all Plaintiffs, hear confessions involving sins of child abuse or neglect, they could counsel the penitent to self-report and obtain the necessary temporal intervention and help.  Etienne Decl. ¶21; Tyson Decl. ¶21; Daly Decl. ¶21.  And priests in each diocese, including all Plaintiffs, who suspect based on what is disclosed during confession that the penitent is suffering from abuse or neglect, the penitent has engaged in abuse or neglect, or some third party has engaged in abuse or neglect, could invite the penitent for counseling outside of the Sacrament of Confession and, if the penitent agrees to that counsel, the priest must report any information learned in that counseling session required to be reported by diocesan policies and RCW § 26.44.030(1)(a).  *Id.*

**IV.    Washington's Unconstitutional Amended Framework for Reporting Child Abuse and Neglect Beginning July 27, 2025**

On April 30, 2025, Governor Ferguson signed Substitute House Bill 1171, which makes two fundamental changes to the reporting obligations for attorneys at institutions of higher education, both of which reduce the number of mandatory reporters.

*First*, Substitute House Bill 1171 excludes from the RCW § 26.44.030(1)(f) mandatory reporting requirement lawyers employed by institutions of higher education—including law professors—who have reasonable cause to believe that a child has suffered child abuse or neglect if that reasonable cause is merely "related to the representation of a client"—which, on its face, is

PLAINTIFFS' MOTION
FOR PRELIMINARY INJUNCTION
(No. 3:25-cv-05461-DGE)

- 7 -

CROWLEY LAW OFFICES, P.S.
600 University Street, Suite 1708 • Seattle, WA 98101
(206) 209-0456
www.crowleylawoffices.com

broader than even the attorney-client privilege and would thus potentially shield more information than that protected by the attorney-client privilege alone.[3]

*Second*, Substitute House Bill 1171 excludes from the RCW § 26.44.030(1)(f) mandatory reporting requirements any employees of institutions of higher education who have reasonable cause to believe that a child has suffered child abuse or neglect if (1) that employee is working under the supervision or direction of a lawyer employed by institutions of higher education; and (2) that reasonable cause is "related to the representation of a client."[4]

The express legislative purpose of Substitute House Bill 1171 was to subordinate Washington's interest in preventing child abuse to Washington's interest in preserving the attorney-client privilege at institutions of higher education and law school legal clinics.[5]

On May 2, 2025, just two days after signing into law Substitute House Bill 1171, Governor Ferguson signed into law Senate Bill 5375, which makes two fundamental changes to RCW § 26.44.030(1)(a) and (b), both of which expanded the mandatory reporting obligation to include Catholic priests, including reportable information heard in the Sacrament of Confession.

*First*, Senate Bill 5375 amends RCW § 26.44.030(1)(a) to add "***any member of the clergy***" to the list of persons required to report suspected abuse or neglect.  Any other person not specifically delineated in RCW § 26.44.030(1)(a)—e.g., an aunt or uncle of an abused child— remains *permitted* to make a report but is not required to do so.  No exception is made for abuse or neglect about which the priest learned in the Sacrament of Confession.[6]

*Second*, Senate Bill 5375 amends RCW § 26.44.030(1)(b) to expressly exclude members of the clergy—and *only* members of the clergy—from the applications of *any* of the privileges otherwise recognized by Washington law when learning about suspected child abuse or neglect by a member of an organization in which the clergy member provides a supervisory role: "***Except for***

---

[3] *Compare* Sub. H.B. 1171, 2025 Wash. Sess. Laws ch. 192, § 2 (exempting from the reporting obligation "information *related* to the representation of a client" (emphasis added)) *with* RCW § 5.60.060(2)(a) (protecting from disclosure "*communication* made by the client to him or her, or his or her *advice given* thereon in the course of professional employment" (emphasis added)).
[4] Sub. H.B. 1171, 2025 Wash. Sess. Laws ch. 192, § 2.
[5] *See id.* § 1.
[6] SB 5375, 2025 Wash. Sess. Laws ch. 197, § 2.

PLAINTIFFS' MOTION
FOR PRELIMINARY INJUNCTION
(No. 3:25-cv-05461-DGE)

- 8 -

CROWLEY LAW OFFICES, P.S.
600 University Street, Suite 1708 • Seattle, WA 98101
(206) 209-0456
www.crowleylawoffices.com

1    **members of the clergy**, no one shall be required to report under this section when he or she obtains

2    the information solely as a result of a privileged communication as provided in RCW 5.60.060."[7]

3    Privileged information obtained by anyone other than clergy remains excluded from the reporting

4    requirement.  And, consistent with the amendment to RCW § 26.44.030(1)(a), no exception is

5    made for information learned in the Sacrament of Confession.

6         According to Defendant Ferguson and the Legislature—and despite just two days earlier

7    subordinating the protection of children from abuse to Washington's interest in preserving the

8    attorney-client privilege for law school legal clinics serviced by law students at the direction of

9    attorney law professors—Senate Bill 5375 was necessary because protecting children is "the most

10   important thing," so important that not even this Country's traditions of religious freedom and

11   conscience can be placed "above the protection of a child."[8]

12   **V.    Priests Are Committed to Keeping the Sacramental Seal**

13        Given the intrusion on the sacramental seal and Plaintiffs' sincerely held religious belief

14   in, and sacred obligations to uphold, the Catholic Church's teaching regarding the sacramental

15   seal, the priests serving within the Archdiocese of Seattle, Diocese of Spokane, and Diocese of

16   Yakima, including all Plaintiffs, are committed to keeping inviolate the sacramental seal, even in

17   the face of Senate Bill 5375.  *See* Etienne Decl. ¶17; Tyson Decl. ¶17; Daly Decl. ¶17 ("[N]either

18   I nor the priests within my dioceses will comply with the amendments to RCW § 26.44.030

19   effected by Senate Bill 5375 with respect to any information that I learn solely through the

20   Sacrament of Confession."); *see also* Elizondo ¶16; Schuster ¶16; Kelly ¶6; Lazzeroni ¶6; Mariscal

21   ¶6; Nsubuga ¶6; Pearson ¶6; Zender ¶6 ("I will not comply with the amendments to RCW §

22   26.44.030 effected by Senate Bill 5375.").

23        Plaintiffs filed suit on May 29, 2025 (ECF 1) and now move for preliminary injunctive

24   relief on the First, Fourth, and Sixth Causes of Action, seeking relief by July 17, 2025.

25

26

27

---

[7] *Id.*
[8] Martens Decl., Ex. 6.

CROWLEY LAW OFFICES, P.S.
600 University Street, Suite 1708 • Seattle, WA 98101
(206) 209-0456
www.crowleylawoffices.com

1

## ARGUMENT

2       A preliminary injunction is warranted where plaintiffs establish that (1) they are likely to

3  succeed on the merits, (2) irreparable harm is likely in the absence of preliminary relief, (3) the

4  balance of equities tips in their favor, and (4) an injunction is in the public interest.  *Winter*, 555

5  U.S. at 20.   Under the Ninth Circuit's sliding-scale approach to preliminary relief, "serious

6  questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can

7  support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a

8  likelihood of irreparable injury and that the injunction is in the public interest."  *All. for the Wild*

9  *Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) (cleaned up).  Where a complaint advances

10  several claims, a preliminary injunction must issue if a plaintiff can make the required showing as

11  to any one of his claims.  *See FCA*, 82 F.4th at 712 (Smith, J., concurring in part and dissenting in

12  part) (citing *Wild Rockies*, 632 F.3d at 1139).

13       Here, all four factors weigh heavily in favor of Plaintiffs' requested injunction.

14  **I.    Plaintiffs Are Likely to Succeed on the Merits of Their Claims**

15       Plaintiffs are likely to succeed on the merits of their claims because Senate Bill 5375, as

16  applied to the Catholic Sacrament of Confession, violates the Free Exercise and Establishment

17  Clauses of the First Amendment to the U.S. Constitution.[9]  Those clauses provide that "*Congress*

18  *shall make no law respecting an establishment of religion*," (the Establishment Clause), "or

19  *prohibiting the free exercise thereof*" (the Free Exercise Clause).  U.S. Const. amend I (emphases

20  added).  Both clauses have been "been made applicable to the States by incorporation into the

21  Fourteenth Amendment" to the U.S. Constitution.  *See Emp. Div., Dep't of Human Res. of Or. v.*

22  *Smith*, 494 U.S. 872, 876-77 (1990).

23       **A.    Senate Bill 5375 Impermissibly Burdens Religious Exercise (First Cause of
                Action)**

24

25       As applied to the Sacrament of Confession, Senate Bill 5375 impermissibly burdens

26  Plaintiffs' exercise of their sincerely held religious beliefs in violation of the Free Exercise Clause,

27

---

[9] Plaintiffs' Complaint asserts another six causes of action, on each of which Plaintiffs are more than likely to prevail.
Plaintiffs have focused on three causes of action for purposes of this Motion.

as alleged in Plaintiffs' First Cause of Action.

In evaluating a Free Exercise Clause claim, the first question a court must assess is whether the law at issue "has burdened [plaintiff's] sincere religious practice." *Waln v. Dysart Sch. Dist.*, 54 F.4th 1152, 1159 (9th Cir. 2022) (quoting *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 525 (2022)).  When a plaintiff's religious exercise is burdened by a law that is either not neutral or not generally applicable, "'the focus then shifts to the defendant' to demonstrate that … the challenged action survives strict scrutiny." *Loffman v. Cal. Dep't of Educ.*, 119 F.4th 1147, 1165 (9th Cir. 2024) (quoting *Kennedy*, 597 U.S. at 524-25).  And "[s]trict scrutiny in the Free Exercise context 'is not watered down; it really means what it says.'" *Bacon v. Woodward*, 104 F.4th 744, 751 (9th Cir. 2024) (quoting *Tandon v. Newsom*, 593 U.S. 61, 65 (2021)).

"[I]f the object of a law is to infringe upon or restrict practices because of their religious motivation, the law is not neutral." *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 533 (1993).  Non-neutrality can be assessed by looking to the face of the law at issue, circumstantial evidence of intent, and the law's operation. *See id.* at 534-35.  A law is not generally applicable if it is substantially underinclusive of non-religiously motivated conduct that might endanger the same governmental interest that the law is designed to protect.  *Id.* at 546-47.  In other words, a policy is not generally applicable toward religion if it treats "*any* comparable secular activity more favorably than religious exercise." *Tandon*, 593 U.S. at 62; *see also Lukumi*, 508 U.S. at 533.  Comparability "must be judged against the asserted government interest that justifies the regulation at issue." *FCA*, 82 F.4th at 689 (quoting *Tandon*, 593 U.S. at 62).  Comparability is lacking when, "in practice," the asserted interest results in "selective enforcement favoring comparable secular activities." *Id.*

### 1.    Senate Bill 5375 Burdens Sincere Religious Practice

There is no doubt that Senate Bill 5375 has burdened Plaintiffs' sincere religious practice. The most blatant example of such a burden is a law that "affirmatively compels [religious believers], under threat of criminal sanction, to perform acts undeniably at odds with fundamental tenets of their religious beliefs." *Wisconsin v. Yoder*, 406 U.S. 205, 218 (1972).  Here, Senate Bill

PLAINTIFFS' MOTION
FOR PRELIMINARY INJUNCTION
(No. 3:25-cv-05461-DGE)

- 11 -

CROWLEY LAW OFFICES, P.S.
600 University Street, Suite 1708 • Seattle, WA 98101
(206) 209-0456
www.crowleylawoffices.com

5375 indisputably compels Plaintiffs to act contrary to their sincere religious beliefs because it subjects them to criminal prosecution and civil liability for maintaining the sacramental seal when a penitent discloses child abuse or neglect during the Sacrament of Confession.  To be clear, Plaintiffs do not contend here that the legal reporting obligation, as applied to admissions of child abuse or neglect *outside* the confessional, impermissibly burdens Plaintiffs' religious belief or practice.  As noted above, it is the policy of the Archdiocese of Seattle and the Dioceses of Yakima and Spokane to report to authorities known or suspected instances of child abuse or neglect learned outside the Sacrament of Confession.  *See supra* 6-7.  But Plaintiffs' sincere religious practice is burdened when they are compelled to report, contrary to Church teaching, conduct disclosed in the Sacrament of Confession.  *See Mockaitis*, 104 F.3d at 1531 ("A substantial burden is imposed on his free exercise of religion as the responsible head of the archdiocese of Portland by the intrusion into the Sacrament of Penance by officials of the state.").

### 2. Senate Bill 5375 Is Neither Neutral Nor Generally Applicable

#### a) Senate Bill 5375 Is Not Neutral

Senate Bill 5375 is not neutral because on its face it restricts a practice—namely, the maintenance of confidentiality—based on its religious status.  The text of Section 26.44.030(1) and (3) generally permits people to hold in confidence admissions of child abuse and neglect communicated to them.  Senate Bill 5375, however, singles out "clergy," defined by reference to their religious status,[10] for imposition of a legal obligation to break confidentiality and report child abuse or neglect.  *See Lukumi*, 508 U.S. at 533 (noting that law prohibiting clergy from holding public office violated Free Exercise Clause "because it impose[d] special disabilities on the basis of … religious status" (cleaned up)).  That alone makes the law non-neutral and triggers strict scrutiny.  *See id*.

But if there were any doubt, the legislative history surrounding enactment of Section Bill 5375 confirms the intent to impose a reporting obligation on a religiously defined group of people.  *See FCA*, 82 F.4th at 690 (in evaluating neutrality, the court "must … examine …

---

[10] *See* Senate Bill 5375 (defining clergy as "religious or spiritual leader").

PLAINTIFFS' MOTION
FOR PRELIMINARY INJUNCTION
(No. 3:25-cv-05461-DGE)

- 12 -

CROWLEY LAW OFFICES, P.S.
600 University Street, Suite 1708 • Seattle, WA 98101
(206) 209-0456
www.crowleylawoffices.com

contemporaneous statements made by members of the decisionmaking body" (internal quotation marks omitted)).  For example, the Senate Bill Report justified the bill as being "about all the children who have been abused or neglected that we didn't protect in the name of religious freedom."  Martens Decl., Ex. 3.  Senator Frame, the lead sponsor of Senate Bill 5375, stated that she could not "stomach any argument about religious freedom being more important than preventing … abuse," that it was "traumatizing to have colleagues … tell me to my face that religious freedom is more important than protecting children," and "[y]ou never put somebody's conscience above the protection of a child."  Martens Decl., Ex. 6, 7.  Senate Bill 5375 is thus "not neutral …, trigger[ing] strict scrutiny under the Free Exercise Clause."  *Tandon*, 593 U.S. at 62.

### b)  Senate Bill 5375 Is Not Generally Applicable

Nor is Section 26.44.030(1), as amended by Senate Bill 5375, generally applicable—also triggering strict scrutiny.  It impermissibly exempts groups other than the clergy from its mandatory reporting obligation, notwithstanding that the public interest in preventing child abuse by obligating those exempted groups to disclose child abuse or neglect is no less compelling. Indeed, the vast majority of confirmed child abuse and neglect in Washington—more than 92%— is perpetrated by the victim's parent or domestic partner.  Martens Decl., Ex. 5.

Specifically, Senate Bill 5375 added "clergy" to the limited list of mandatory reporters even though:

- Other groups that are likely to learn about child abuse or neglect remain exempted from the mandatory obligation—e.g., parents, domestic partners, family members, and attorneys—are not required to report most forms of abuse and neglect.  *See* RCW § 26.44.030(1)(a), (d) & (3).

- Non-clergy supervisors at organizations have no obligation to report abuse or neglect by supervisees with access to children if that abuse was learned through a privileged communication.  *See* RCW § 26.44.030(1)(b).

- Substitute House Bill 1171 amended RCW § 26.44.030(1) to exempt attorneys— and those working at an attorney's direction—at institutions of higher education from requirements to disclose abuse related to representation of a client.[11]

---

[11] Sub. H.B. 1171, 2025 Wash. Sess. Laws ch. 192, § 2.

PLAINTIFFS' MOTION
FOR PRELIMINARY INJUNCTION
(No. 3:25-cv-05461-DGE)

- 13 -

The reporting obligation imposed by Section 26.44.030(1), as amended by Senate Bill 5375, is therefore selective, rather than generally applicable: it "treats … comparable secular" persons—like parents, certain non-clergy supervisors, and attorneys learning of abuse—"more favorably than religious" persons. *See Tandon*, 593 U.S. at 62  (reversing denial of injunction, holding that "government regulations are not neutral and generally applicable, and therefore trigger strict scrutiny under the Free Exercise Clause, whenever they treat *any* comparable secular activity more favorably than religious exercise"); *Roman Catholic Diocese*, 592 U.S. at 17-18 (holding that law that singles out houses of worship for disparate treatment from secular enterprises is not generally applicable); *Bacon*, 104 F.4th at 751; *FCA*, 82 F.4th at 689.  This lack of general applicability also triggers strict scrutiny.

### 3.    Senate Bill 5375 Cannot Satisfy Strict Scrutiny

Because Section 26.44.030(1), as amended by Senate Bill 5375, is not neutral nor generally applicable and burdens Plaintiffs' sincere religious practice of the Sacrament of Confession, the law is subject to strict scrutiny.  *See Lukumi*, 505 U.S. at 546 ("A law burdening religious practice that is not neutral or not of general applicability must undergo the most rigorous of scrutiny."); Defendants thus bear the burden of proving that the law serves a "compelling" governmental interest to which the law is "narrowly tailored." *Kennedy*, 597 U.S. at 525; *Waln*, 54 F.4th at 1163 (same).  Satisfying this burden will occur "only in rare cases," *Lukumi*, 505 U.S. at 546, and requires that Defendants present proof—not mere "speculation"—that the law serves a compelling government interest and is narrowly tailored, *Fulton v. City of Phila.*, 593 U.S. 522, 542 (2021).

A law is not narrowly tailored to a compelling government interest "[w]here government restricts only conduct protected by the First Amendment and fails to enact feasible measures to restrict other conduct producing substantial harm or alleged harm of the same sort." *Lukumi*, 505 U.S. at 546-47.  Nor is a law is narrowly tailored if it is "overbroad or underinclusive in substantial respects." *Id.* at 546.  "Put differently, a law … fails narrow tailoring if … other permissible conduct 'endangers these interests in a similar or greater degree.'" *Bacon*, 104 F.4th at 753

PLAINTIFFS' MOTION
FOR PRELIMINARY INJUNCTION
(No. 3:25-cv-05461-DGE)

- 14 -

CROWLEY LAW OFFICES, P.S.
600 University Street, Suite 1708 • Seattle, WA 98101
(206) 209-0456
www.crowleylawoffices.com

1    (quoting *Lukumi*, 508 U.S. at 543).  Furthermore, if "the government can achieve its interests in a

2    manner that does not burden religious exercise, it must do so."  *Fulton*, 593 U.S. at 541.

3          Under these standards, Senate Bill 5375 is not narrowly tailored to a compelling

4    government interest.  To the extent protecting children from abuse and neglect is the purpose of

5    Senate Bill 5375 and RCW § 26.44.030 as amended, *see supra* 8-9, 12-3 (recounting purpose of

6    Senate Bill 5375 as articulated by the bill sponsor and Governor), there is no reason why protecting

7    children from abuse and neglect cannot be accomplished by a clergy reporting obligation that does

8    not intrude upon the sacramental seal.  *Fulton*, 593 U.S. at 542.  RCW § 26.44.030 demonstrates

9    this by making certain persons mandatory reporters but exempting information learned through

10    certain communications: non-clergy supervisors of employees with regular access to children and

11    attorneys (and those working at their direction) at institutions of higher education are both

12    mandatory reporters, except with respect to certain privileged information.    RCW

13    § 26.44.030(1)(b); Sub. H.B. 1171, 2025 Wash. Sess. Laws ch. 192, § 2.  The policies of the

14    Catholic Church in Washington also demonstrate that there exists a means of protecting children

15    from abuse and neglect without invading the Sacrament of Confession.  As noted above, the

16    Archdiocese of Seattle and the Dioceses of Spokane and Yakima have all implemented policies

17    that require the reporting to proper law enforcement agencies or the department of children, youth,

18    and families whenever Church personnel—including all priests—learn of abuse or neglect, except

19    when that abuse is heard in the Sacrament of Confession.  Etienne Decl. ¶20; Tyson Decl. ¶20;

20    Daly Decl. ¶20.  These policies are more than the law currently requires—of clergy *and* non-clergy

21    personnel.  *Cf. Roman Cath. Diocese*, 592 U.S. at 18 (no narrow tailoring where plaintiffs' policies

22    were more stringent than the law required but less onerous than the challenged obligation sought

23    to impose).  And these policies serve the interest of protecting children without imposing *any*

24    burden on the religious exercise of Catholic clergy.  Indeed, the Archdiocese of Seattle and the

25    Dioceses of Spokane and Yakima have supported legislation to that effect.

26          Moreover, the interest in protecting children is equally served by requiring *all* relatives,

27    attorneys, and non-clergy supervisors of employees with regular access to children—in *addition*

to clergy—to report suspect child abuse and neglect. But RCW § 26.44.030 imposes no reporting obligation on such persons to report the suspected child abuse and neglect that clergy are required to report. Thus, RCW § 26.44.030(1), as amended by Senate Bill 5375, fails to implement feasible measures on non-clergy to address "substantial harm or alleged harm of the same sort" as the measures that Senate Bill 5375 imposes on Catholic clergy. *Lukumi*, 508 U.S. at 547; *see also Cath. Charities Bureau, Inc. v. Wis. Lab. & Indus. Rev. Comm'n*, 605 U.S. __ (2025), Slip. Op. at 13-14 (law not "closely fitted" to compelling interest in funding unemployment coverage where secular but not religious entities were exempted from tax funding the coverage).

For these reasons, RCW § 26.44.030(1), as amended by Senate Bill 5375, necessarily fails strict scrutiny, and Plaintiffs are likely to succeed on their First Cause of Action.

## B. Senate Bill 5375 Violates Church Autonomy (Fourth Cause of Action)

By interfering with the Church's internal discipline and governance, Washington is also violating the church autonomy doctrine grounded in both the Free Exercise and Establishment Clauses, as alleged in the Fourth Cause of Action.

The Free Exercise and Establishment Clauses "collectively 'protect[ ] the right of religious institutions to decide for themselves, free from state interference, matters of church government as well as those of faith and doctrine.'" *Markel v. Union of Orthodox Jewish Congregations of Am.*, 124 F.4th 796, 802 (9th Cir. 2024) (quoting *Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 591 U.S. 732, 737 (2020)). Church autonomy keeps religious organizations free "from secular control or manipulation." *Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church in N. Am.*, 344 U.S. 94, 116 (1952).

"[T]he general principle of church autonomy" protects "independence in matters of faith and doctrine and in closely linked matters of internal government." *Our Lady,* 591 U.S. at 747. "[I]nternal government" includes the appointment and authority of clergy, *Gonzalez v. Roman Catholic Archbishop of Manila*, 280 U.S. 1, 16-17 (1929), replacing church administrators, *Kedroff*, 344 U.S. at 119, and the hiring and firing of parochial schoolteachers, *Hosanna-Tabor Evangelical Church & School v. EEOC*, 565 U.S. 171, 196 (2012), among many other issues. *See*

PLAINTIFFS' MOTION
FOR PRELIMINARY INJUNCTION
(No. 3:25-cv-05461-DGE)
- 16 -
CROWLEY LAW OFFICES, P.S.
600 University Street, Suite 1708 • Seattle, WA 98101
(206) 209-0456
www.crowleylawoffices.com

*Serbian*, 426 U.S. at 713-14 (civil courts exercise no jurisdiction "in a matter which concerns theological controversy, church discipline, ecclesiastical government, or the conformity of the members of the church to the standard of morals required of them."). As relevant here, the church autonomy doctrine also governs the "strictly and purely ecclesiastical" issues of "church discipline" and "ecclesiastical government." *See id.* (quoting *Watson v. Jones*, 80 U.S. 679, 733 (1872)). On such matters, no government interest can justify the intrusion: civil governments must "stay out." *Our Lady*, 591 U.S. at 746; *see also Hosanna-Tabor*, 565 U.S. at 196 ("The First Amendment has struck the balance for us.").

### 1.    Senate Bill 5375 Interferes with Church Discipline

Courts have long held that "questions of church discipline are at the core of ecclesiastical concern." *Serbian*, 426 U.S. at 717. Senate Bill 5375 completely disrupts the process of church discipline embodied within the Sacrament of Confession.

Senate Bill 5375 interferes with a priest's charge to discipline lay members of the Church through the Sacrament of Confession. In the confessional, the Catholic Church teaches that a priest acts *in persona Christi* ("in the person of Christ"). Etienne Decl. ¶6; Compl. ¶49. This means that the priest serves as "'equally a judge and physician,'" "'a minister of divine justice and mercy.'" Etienne Decl. ¶6; Compl. ¶49 (quoting Code of Canon Law c.978 § 1). The priest is obligated to "adhere faithfully to the doctrine of the magisterium and the norms of competent authority," pose questions to the penitent "with prudence and discretion," and "impose salutary and suitable penances in accord the quality and number of sins, taking into account the condition of the penitent." Etienne Decl. ¶¶7-8; Compl. ¶50 (quoting Code of Canon Law cc.978 § 2, 979-980). Upon the priest's absolution, the penitent is "'reconciled with God and His Church.'" Etienne Decl. ¶8; Compl. ¶5 (quoting Code of Canon Law c.960 § 1). The sacrament is thus both an indispensable act of mercy and a central form of Church discipline.

Senate Bill 5375 interferes with this finely tuned religious disciplinary process by removing the confidentiality that is one of its animating characteristics. Catholic Canon Law "absolutely forbid[s]" priests from ever divulging what a penitent relays in confession "in any

PLAINTIFFS' MOTION
FOR PRELIMINARY INJUNCTION
(No. 3:25-cv-05461-DGE)

- 17 -

CROWLEY LAW OFFICES, P.S.
600 University Street, Suite 1708 • Seattle, WA 98101
(206) 209-0456
www.crowleylawoffices.com

1    manner and for any reason." Code of Canon Law c.983 § 1. Senate Bill 5375 thus interferes with

2    the "church discipline" inherent in the Sacrament of Confession by forcing priests to break the seal

3    and punishing them if they do not. *Serbian*, 426 U.S. at 714. Unsurprisingly, the Ninth Circuit

4    has not identified any "case in the United States in which a court has given approval to the invasion

5    of the Catholic rite of confession by an agency of government." *Mockaitis*, 104 F.3d at 1533.

6         To the contrary, that invasion runs directly counter to longstanding caselaw recognizing the

7    confessional seal as part of the Catholic Church's autonomy protected by the First Amendment.

8    For example, in *People v. Philips*, one of the earliest-known religious freedom cases in the United

9    States, the Court of General Sessions of New York City refused to force a Catholic priest to testify

10   in a criminal case about what he heard in the Sacrament of Confession. *People v. Philips,* Ct. of

11   Gen. Sessions, City of N.Y. (June 14, 1813), cited with approval in *Mockaitis*, 104 F.3d at 1532.

12   As that court observed, "The sinner will not confess, nor will the priest receive his confession, if

13   the veil of secrecy is removed." *Id.* Relying on the "religious freedom guaranteed by the

14   constitution," the court held it "essential to the free exercise of a religion, that its ordinances should

15   be administered," including the Sacrament of Confession. *Id.*

16        Senate Bill 5375 also interferes with a bishop's ability to discipline the priests whom he

17   governs. A church's power to supervise its ministers "was recognized to preserve a church's

18   independent authority in such matters." *Our Lady*, 591 U.S. at 747. "Without that power" of

19   ministerial supervision, a priest "could contradict the church's tenets and lead the congregation

20   away from the faith." *Id.* Senate Bill 5375, however, demands that Catholic bishops violate their

21   supervisory authority guaranteed by the church autonomy doctrine. That is because bishops are

22   charged by the Church with the authority to "revoke the faculty to hear confessions," Code of

23   Canon Law c.974 § 1, and "punish[ ]" even "indirect[ ]" violations of the confessional seal, *see id.*

24   at c.1386 § 1. And Senate Bill 5375 would chill Catholic bishops from exercising these

25   supervisory powers and expose bishops to liability if they enforce them.

26

27

### 2.    Senate Bill 5375 Interferes with Church Government

Senate Bill 5375 also unconstitutionally interferes in ecclesiastical government.  By demanding priests divulge what they hear in sacramental confession to law enforcement, Washington violates the Church's "independent authority" over sacraments, which are "essential to the institution's central mission."  *Our Lady*, 591 U.S. at 746-47.  Under RCW § 26.44.030 as amended by Senate Bill 5375, priests cannot hear confessions in compliance with Catholic Canon law, and bishops cannot perform their oversight duties in compliance with Canon Law.  Indeed, Washington legislators expressly recognized that Senate Bill 5375 would require the Church to "change cannon [sic] law" in order to comply.  Martens Decl., Ex. 2, 3; Compl. ¶¶86, 83-89.  These are "intrusion[s]" into "matters of church government" that the First Amendment prohibits.  *See Our Lady*, 591 U.S. at 746.  Washington "must 'accept the ecclesiastical decisions of church tribunals as [they] find[] them.'"  *Hunter v. Dep't of Educ.*, 115 F.4th 955, 967 (9th Cir. 2024) (quoting *Serbian*, 426 U.S. at 698).  These "strictly and purely ecclesiastical" demands therefore exceed the State's power.  *See Watson*, 80 U.S. at 733.

### C.    Senate Bill 5375 Commandeers Religious Practice (Sixth Cause of Action)

Fundamentally, Senate Bill 5375 seeks to leverage quintessentially religious speech to serve state ends.  In effect, it conscripts the Catholic Church to serve as Washington's ecclesiastical arm.  Such commandeering of church functions is a blatant Establishment Clause violation—indeed, the very type of conduct the Establishment Clause was intended to foreclose—as alleged in the Sixth Cause of Action.

Establishment Clause violations occur when civil law adopts the "hallmarks of religious establishments [that] the framers sought to prohibit."  *Kennedy*, 597 U.S. at 537; *see also Hilsenrath v. Sch. Dist. of Chathams*, 136 F.4th 484, 491 (3d Cir. 2025) (applying "hallmarks" test).  Those hallmarks are informed by the founding generation's desire to break away from "the established Church of England, over which the King of England and Parliament exercised significant control, not only in matters of personnel, but also in matters of doctrine and worship."

1  *Markel*, 124 F.4th at 808.  "This type of established religion was present in the colonies too,"

2  including in Virginia where the Church of England was established.  *Id.*

3      One hallmark of an establishment was the government's use of the church "to carry out

4  certain civil functions."  *Hilsenrath*, 136 F.4th at 491 (quoting *Shurtleff*, 596 U.S. at 286, and citing

5  Michael W. McConnell, *Establishment and Disestablishment at the Founding, Part I:*

6  *Establishment of Religion*, 44 Wm. & Mary L. Rev. 2105, 2110-12, 2131-81 (2003)).  This

7  hallmark was present in the religious establishment in colonial Virginia, where the government

8  forced clergy to make "biennial presentments to the county court of certain misdemeanors,"

9  including sexual offenses.  McConnell, *supra*, at 2176.  Indeed, this was "[p]erhaps the most

10  'governmental' of all duties of church officials in Virginia."  *Id.*  And it was this religious

11  establishment that the founding fathers precluded with the Establishment Clause of the First

12  Amendment.  As the Ninth Circuit has observed, "the history of the nation has shown a uniform

13  respect for the character of sacramental confession as inviolable by government agents interested

14  in securing evidence of crime from the lips of criminal."  *Mockaitis*, 104 F.3d at 1532.

15      In violation of this prohibition, Senate Bill 5375 commandeers the Catholic Church to carry

16  out civil functions by turning confession into governmental information gathering.  Senate Bill

17  5375 requires bishops and priests to ignore the confessional seal and relay to law enforcement

18  penitents' statements during confession.  In other words, as in colonial Virginia, Washington law

19  requires clergy to make presentment to the government of certain criminal offenses, including

20  sexual offenses.  *Compare* McConnell, *supra*, at 2176.  In doing so, Washington is exercising its

21  police power through the Church's ecclesiastical discipline and governance.  And by seeking to

22  "dictate or … influence such matters," Senate Bill 5375 "constitute[s] one of the central attributes

23  of an establishment of religion.  The First Amendment outlaws such intrusion."  *Our Lady*, 591

24  U.S. at 746; *see also Larkin v. Grendel's Den, Inc.*, 459 U.S. 116, 123 (1982) ("delegating a

25  governmental power to religious institutions, inescapably implicates the Establishment Clause,"

26  "independent" of the *Lemon* test).

27

PLAINTIFFS' MOTION
FOR PRELIMINARY INJUNCTION
(No. 3:25-cv-05461-DGE)

- 20 -

CROWLEY LAW OFFICES, P.S.
600 University Street, Suite 1708 • Seattle, WA 98101
(206) 209-0456
www.crowleylawoffices.com

## II.    Plaintiffs Face Irreparable Harm in the Absence of Injunctive Relief

"'Irreparable harm is relatively easy to establish in a First Amendment case[,]' because the party seeking the injunction 'need only demonstrate the existence of a colorable First Amendment claim.'" *FCA*, 82 F.4th at 694-95 (quoting *Cal. Chamber of Com. v. Council for Educ. & Rsch. on Toxics*, 29 F.4th 468, 482 (9th Cir. 2022)); *see also Doe v. Harris*, 772 F.3d 563, 583 (9th Cir. 2014) (holding law modernizing reporting obligations of sex offenders likely violated the First Amendment, which constituted irreparable injury). That is because "it is axiomatic that '[t]he loss of First Amendment freedoms for even minimal periods of time, unquestionably constitutes irreparable injury.'" *FCA*, 82 F.4th at 694-95 (quoting *Roman Cath. Diocese*, 592 U.S. at 19). Each of Plaintiffs' First Amendment claims is therefore alone sufficient to establish irreparable injury. *See FCA*, 82 F.4th at 694-95.

Moreover, Senate Bill 5375 was enacted to coerce the Church into "chang[ing] its rules." *E.g.*, Compl. ¶¶86-87. In other words, the law requires Plaintiffs to "take significant … compliance measures"—namely, fundamentally changing the confessional and breaking from Church doctrine to be an arm of the state—"or risk criminal prosecution." *Am. Booksellers Found. for Free Expression v. Sullivan*, 2010 WL 11453161, *3 (D. Alaska Oct. 20, 2010). Because Plaintiffs here will not comply with the law, the threat of government intrusion into the sanctity of the sacramental seal and the priest-penitent relationship posed by investigation and enforcement of RCW § 26.44.030(1), as amended by Senate Bill 5375, constitutes irreparable harm. The law imposes a chilling effect on the confessional that jeopardizes the ability of Plaintiffs—and Catholic priests throughout Washington—to reconcile laity with God and His Church. Etienne Decl. ¶18. And without a full confession from a penitent, the absolution afforded by Plaintiffs and all Catholic priests in Washington will fail to completely reconcile Catholic penitents with God and His Church, substantially impeding the mission of the Church—and all Plaintiffs—to save souls. Etienne Decl. ¶18; *cf. FCA*, 82 F.4th at 694-95 (identifying impeding plaintiff's "ability to recruit new students to bolster its dwindling membership" as harm warranting preliminary injunctive relief).

PLAINTIFFS' MOTION
FOR PRELIMINARY INJUNCTION
(No. 3:25-cv-05461-DGE)

- 21 -

CROWLEY LAW OFFICES, P.S.
600 University Street, Suite 1708 • Seattle, WA 98101
(206) 209-0456
www.crowleylawoffices.com

III.    **The Remaining Preliminary Injunction Factors Weigh in Favor of Injunctive Relief**

"Where, as here, the party opposing injunctive relief is a government entity, the third and fourth factors—the balance of equities and the public interest—'merge.'" *FCA*, 82 F.4th at 695 (quoting *Nken v. Holder*, 556 U.S. 418, 435 (2009)).    Those factors indisputably favor a preliminary injunction here.

Plaintiffs have "(at a minimum) 'raised serious First Amendment questions,'" which "alone compels a finding that the balance of hardships tips sharply in [its] favor." *FCA*, 82 F.4th at 695 (cleaned up).    "[I]t is always in the public interest to prevent the violation of a party's constitutional rights." *Id.* (quoting *Am. Bev.*, 916 F.3d at 758).    And, as noted above, RCW § 26.44.030 risks substantially—and irreparably—interfering with Plaintiffs' service to God and His Church.

Moreover, the harms imposed by enforcement of RCW § 26.44.030(1), as amended by Senate Bill 5375, extend beyond Plaintiffs to the lay faithful and the public more generally.    Not only does a state-imposed impediment to the sacraments "strike at the very heart of the First Amendment's guarantee of religious liberty," *Roman Cath. Diocese*, 592 U.S. at 19-20, but impeding a Catholic penitent from the Sacrament of Confession means the penitent will remain separated from Christ's Church and God, risking their eternal damnation to Hell.    It also impedes a priest from counseling an offending penitent both that absolution requires a commitment to no longer offend (which may lead to treatment or other intervention) and true contrition (which may lead to accepting responsibility)—a risk expressly acknowledged by Washington's Supreme Court.    *See State v. Motherwell*, 788 P.2d 1066, 1069 (Wash. 1990) ("[A] rule that requires clergy to report under all circumstances could serve to dissuade parishioners from acknowledging in consultation with their ministers the existence of abuse and seeking a solution to it.").

By contrast, there is no harm to the public by temporarily preserving the sacramental seal during this litigation.    Washington's child abuse and reporting statute has existed for decades without requiring priests to report what they learned in confession. *See FCA*, 82 F.4th at 695 (no harm to defendant where plaintiff had "existed as a recognized club for nearly two decades without any objection"); *Doe #1 v. Trump*, 957 F.3d 1050, 1068 (9th Cir. 2020) (holding "[t]he public

PLAINTIFFS' MOTION
FOR PRELIMINARY INJUNCTION
(No. 3:25-cv-05461-DGE)

- 22 -

CROWLEY LAW OFFICES, P.S.
600 University Street, Suite 1708 • Seattle, WA 98101
(206) 209-0456
www.crowleylawoffices.com

interest lies with maintaining the *status quo*," where, "[f]or countless decades," a statutory scheme existed without the new requirement sought to be enjoined).  And there is no evidence that intruding upon the sacramental seal will in fact increase the prevention of child abuse or neglect. Catholic priests in Washington are already required to—and do—report child abuse and neglect when learned outside the Sacrament of Confession.  Etienne Decl. ¶19; Tyson Decl. ¶19; Daly Decl. ¶19; *see Am. Booksellers*, 2010 WL 11453161, *3 (rejecting state's public interest arguments where it had "clear alternative options for prosecuting sexual predators and where plaintiffs asserted being "face[d] with unconstitutional restrictions on their communicative activities with the potential of a criminal charge hanging over them").  And, when they learn of abuse in the sacrament, they can take steps to engage the penitent in non-sacramental counselling, which, if that counseling provides an independent reasonable cause to believe child abuse or neglect has occurred, is reported to authorities.  Etienne Decl. ¶21.  In any event, Catholic priests in Washington—like their brother priests throughout history—have committed to maintain the sacramental seal, even in the face of threatened imprisonment, fine, or civil liability: this is a matter of *libertas Ecclesiae*, so there will be no reporting.  Etienne Decl. ¶¶12, 17.

Put simply, enforcing RCW § 26.44.030(1), as amended by Senate Bill 5375, during this litigation will do no more than punish priests—and preclude potential intervention and reporting of abuse and neglect—in an expression of state opprobrium of Catholic teaching regarding the sacramental seal.  Opprobrium of religion serves no public interest.

## CONCLUSION

Preliminary relief is necessary to stop irreparable harm to Plaintiffs and safeguard the American commitment to the free exercise of religion.  Plaintiffs respectfully request that this Court issue a preliminary injunction blocking the investigation and enforcement of RCW § 26.44.030, as amended by Senate Bill 3575, to the extent it applies to information learned by Catholic clergy through the Sacrament of Confession.

\*       \*       \*

PLAINTIFFS' MOTION
FOR PRELIMINARY INJUNCTION
(No. 3:25-cv-05461-DGE)

- 23 -

CROWLEY LAW OFFICES, P.S.
600 University Street, Suite 1708 • Seattle, WA 98101
(206) 209-0456
www.crowleylawoffices.com

1     The undersigned certifies that this motion contains 8,360 words, in compliance with Local

2  Civil Rule 7(e)(6).

3

4   Dated: June 5, 2025                    Respectfully submitted,

5

6                                          /s/ William J. Crowley

7                                          William J. Crowley
                                           CROWLEY LAW OFFICES, P.S.
8                                          600 University Street
                                           Suite 1708
9                                          Seattle, WA 98101
                                           Tel: (206) 224-7069
10                                         will@crowleylawoffices.com

11                                         Matthew T. Martens (*pro hac vice*)
12                                         Siddharth Velamoor
                                           Donna Farag (*pro hac vice*)
13                                         Zachary Halpern (*pro hac vice*)
                                           WILMER CUTLER PICKERING HALE AND
14                                            DORR LLP
15                                         2100 Pennsylvania Avenue, NW
                                           Washington, DC 20037
16                                         Tel: (202) 663-6000
                                           Fax: (202) 663-6363
17                                         matthew.martens@wilmerhale.com
                                           siddharth.velamoor@wilmerhale.com
18                                         donna.farag@wilmerhale.com
                                           zac.halpern@wilmerhale.com
19

20                                         Leah M. Fugere (*pro hac vice*)
                                           WILMER CUTLER PICKERING HALE AND
21                                            DORR LLP
22                                         350 South Grand Avenue
                                           Suite 2400
23                                         Los Angeles, CA 90071
                                           Tel: (213) 443-5300
24                                         Fax: (213) 443-5400
                                           leah.fugere@wilmerhale.com
25

26

27

1
2
3
4
5

Robert Kingsley Smith (*pro hac vice*)
WILMER CUTLER PICKERING HALE AND
   DORR LLP
60 State Street
Boston, MA 02109
Tel: (617) 526-6000
Fax: (617) 526-5000
robert.smith@wilmerhale.com

6
7
8
9
10
11
12
13

Mark L. Rienzi (*pro hac vice*)
Eric C. Rassbach (*pro hac vice*)
William J. Haun (*pro hac vice*)
Laura Wolk Slavis (*pro hac vice*)
BECKET FUND FOR RELIGIOUS LIBERTY
1919 Pennsylvania Ave NW, Suite 400
Washington, D.C. 20006
Tel: (202) 955-0095
mrienzi@becketfund.org
erassbach@becketfund.org
whaun@becketfund.org
lslavis@beckfund.org

14
15
16
17
18
19
20

Hiram S. Sasser, III (*pro hac vice* forthcoming)
Jeremy Dys (*pro hac vice* forthcoming)
Chris Motz (*pro hac vice* forthcoming)
FIRST LIBERTY INSTITUTE
2001 W. Plano Pkwy., Ste. 1600
Plano, Texas 75075
Tel: (972) 941-4444
Fax: (972) 941-4457
hsasser@firstliberty.org
jdys@firstliberty.org
cmotz@firstlibery.org

*Attorneys for Plaintiffs*

21
22
23
24
25
26
27

PLAINTIFFS' MOTION
FOR PRELIMINARY INJUNCTION
(No. 3:25-cv-05461-DGE)

- 25 -

CROWLEY LAW OFFICES, P.S.
600 University Street, Suite 1708 • Seattle, WA 98101
(206) 209-0456
www.crowleylawoffices.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

## **CERTIFICATE OF SERVICE**

I certify under penalty of perjury that on June 5, 2025, I caused to be electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send a notification of the filing to the email addresses indicated on the Court's Electronic Mail Notice List.

Dated: June 5, 2025

*/s/ Siddharth Velamoor*
Siddharth Velamoor
WILMER CUTLER PICKERING HALE AND
    DORR LLP
2100 Pennsylvania Avenue, NW
Washington, DC 20037
Tel: (202) 663-6000
Fax: (202) 663-6363
siddharth.velamoor@wilmerhale.com

PLAINTIFFS' MOTION
FOR PRELIMINARY INJUNCTION
(No. 3:25-cv-05461-DGE)

- 26 -

CROWLEY LAW OFFICES, P.S.
600 University Street, Suite 1708 • Seattle, WA 98101
(206) 209-0456
www.crowleylawoffices.com