The Honorable Chief Judge David G. Estudillo

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT TACOMA

| | |
|---|---|
| PAUL D. ETIENNE, JOSEPH J. TYSON, THOMAS A. DALY, FRANK R. SCHUSTER, EUSEBIO L. ELIZONDO, GARY F. LAZZERONI, GARY M. ZENDER, ROBERT PEARSON, LUTAKOME NSUBUGA, JESÚS MARISCAL, MICHAEL KELLY,<br><br>Plaintiffs,<br><br>v.<br><br>ROBERT W. FERGUSON, in his official capacity as Governor of Washington, NICHOLAS W. BROWN, in his official capacity as Attorney General of Washington, LEESA MANION, in her official capacity as King County Prosecuting Attorney, LARRY HASKELL, in his official capacity as Spokane County Prosecuting Attorney, JOSEPH BRUSIC, in his official capacity as Yakima County Prosecuting Attorney, RANDY FLYCKT, in his official capacity as Adams County Prosecuting Attorney, CURT LIEDKIE, in his official capacity as Asotin County Prosecuting Attorney, ERIC EISINGER, in his official capacity as Benton County Prosecuting Attorney, ROBERT SEALBY, in his official capacity as Chelan County Prosecuting Attorney, MARK NICHOLS, in his official | Case No. 3:25-cv-05461-DGE<br><br>**DECLARATION OF PAUL D. ETIENNE IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |

DECLARATION OF P. ETIENNE IN SUPPORT OF - 1 –
PLAINTIFFS' MOT. FOR PRELIM. INJUNCTION
(No. 3:25-cv-05461-DGE)

CROWLEY LAW OFFICES, P.S.
600 University Street, Suite 1708 • Seattle, WA 98101
(206) 209-0456
www.crowlylawoffices.com

1  capacity as Clallam County Prosecuting Attorney, TONY GOLIK, in his official
2  Capacity as Clark County Prosecuting Attorney, DALE SLACK, in his official
3  capacity as Columbia County Prosecuting Attorney, RYAN JURVAKAINEN, in his
4  official capacity as Cowlitz County Prosecuting Attorney, GORDON EDGAR, in
5  his official capacity as Douglas County Prosecuting Attorney, MICHAEL GOLDEN,
6  in his official capacity as Ferry County Prosecuting Attorney, SHAWN SANT, in his
7  official capacity as Franklin County Prosecuting Attorney, MATHEW
8  NEWBERG, in his official capacity as Garfield County Prosecuting Attorney,
9  KEVIN McCRAE, in his official capacity as Grant County Prosecuting Attorney, NORMA
10 TILLOTSON, in her official capacity as Grays Harbor County Prosecuting Attorney,
11 GREGORY BANKS, in his official capacity as Island County Prosecuting Attorney,
12 JAMES KENNEDY, in his official capacity as Jefferson County Prosecuting Attorney,
13 CHAD ENRIGHT, in his official capacity as Kitsap County Prosecuting Attorney,
14 GREGORY ZEMPEL, in his official capacity as Kittitas County Prosecuting Attorney,
15 DAVID QUESNEL, in his official capacity as Klickitat County Prosecuting Attorney,
16 JONATHAN MEYER, in his official capacity as Lewis County Prosecuting Attorney, TY
17 ALBERTSON, in his official capacity as Lincoln County Prosecuting Attorney,
18 MICHAEL DORCY, in his official capacity as Mason County Prosecuting Attorney,
19 ALBERT LIN, in his official capacity as Okanogan County Prosecuting Attorney,
20 MICHAEL ROTHMAN, in his official capacity as Pacific County Prosecuting
21 Attorney, DOLLY HUNT, in her official Capacity as Pend Orielle County Prosecuting
22 Attorney, MARY ROBNETT, in her official capacity as Pierce County Prosecuting
23 Attorney, AMY VIRA, in her official capacity as San Juan County Prosecuting Attorney,
24 RICH WEYRICH, in his official Capacity as

DECLARATION OF P. ETIENNE IN SUPPORT OF  - 2 –
PLAINTIFFS' MOT. FOR PRELIM. INJUNCTION
(No. 3:25-cv-05461-DGE)

CROWLEY LAW OFFICES, P.S.
600 University Street, Suite 1708 • Seattle, WA 98101
(206) 209-0456
www.crowlylawoffices.com

Skagit County Prosecuting Attorney, ADAM KICK, in his official capacity as Skamania County Prosecuting Attorney, JASON CUMMINGS, in his official capacity as Snohomish County Prosecuting Attorney, ERIKA GEORGE, in her official capacity as Stevens County Prosecuting Attorney, JON TUNHEIM, in his official capacity as Thurston County Prosecuting Attorney, DAN BIGELOW, in his official capacity as Wahkiakum County Prosecuting Attorney, GABE ACOSTA, in his official capacity as Walla Walla County Prosecuting Attorney, ERIC RICHEY, in his official capacity as Whatcom County Prosecuting Attorney, and DENIS TRACY, in his official capacity as Whitman County Prosecuting Attorney,

Defendants.

I, Paul D. Etienne, hereby declare as follows:

1. I am over the age of eighteen and competent to make this declaration. I make this declaration based on personal knowledge about which I am competent to testify.

2. I am the Roman Catholic Archbishop of the Archdiocese of Seattle, Washington. I sincerely believe in the Roman Catholic faith and the teaching of the Roman Catholic Church, including with respect to the Sacrament of Confession.

3. As a bishop of the Roman Catholic Church, I have the faculties to, and do, hear the Sacrament of confession. As the Archbishop of Seattle, it is also my responsibility to ensure that the priests incardinated within the Archdiocese of Seattle adhere to the Church's teaching regarding the Sacrament of Confession, including the sacramental seal. I am charged with the authority to revoke a priest's faculty to hear confession should the priest deviate from Church teaching or violate Canon Law with respect to the sacramental seal.[1]

4. As taught by the Roman Catholic Church, Jesus Christ, the eternal son of God, became incarnate and was crucified on the Cross in atonement for man's sins. Through baptism, man receives the forgiveness of sins merited by Christ's crucifixion on the Cross, is conformed to the righteousness of God, and receives the gift of eternal life with God.[2] Upon man's baptism and complete remission of sin, there is no impediment to eternal life with God.[3]

5. Baptism does not, however, eradicate the temporal consequences of sin—including suffering, illness, death, and an inclination toward sin. Man, for his temporal life, must wrestle with these temporal effects of sin, including the inclination toward sin.[4] Should man give in to the inclination to sin and commit particularly grievous sins, man turns away from God.[5] Absent repentance and God's forgiveness, those grievous sins—i.e., mortal sins—destroy communion with God and with his Church, exclude man from God's kingdom, and risk consigning man to the

---

[1] Code of Canon Law cc. 974 § 1, 1386 § 1.
[2] Catechism of the Catholic Church ¶¶ 1987-1995.
[3] Id. ¶ 1263.
[4] Id. ¶ 1264.
[5] Id. ¶ 1855.

DECLARATION OF P. ETIENNE IN SUPPORT OF  - 4 –
PLAINTIFFS' MOT. FOR PRELIM. INJUNCTION
(No. 3:25-cv-05461-DGE)

CROWLEY LAW OFFICES, P.S.
600 University Street, Suite 1708 • Seattle, WA 98101
(206) 209-0456
www.crowlylawoffices.com

eternal death of Hell.[6] But the Catholic Church teaches that through the Sacrament of Confession, God "will forgive us our sins and cleanse us from all unrighteousness."[7]

6. The Sacrament of Confession is the only ordinary means by which man receives forgiveness for the commission of mortal sin after baptism.[8] The absolution afforded through confession is thus a continuation of Christ's mission to forgive sins.[9] Confession—also known as the Sacrament of Reconciliation or the Sacrament of Penance—requires the penitent to confess his sins, express contrition for those sins, and possess the intention to turn away from sin.[10] This sacrament is both an act of mercy and an act of Church discipline where the priest acts *in persona Christi* (in the person of Christ). In this sacrament, the priest "is equally a judge and a physician and has been established by God as a minister of divine justice and mercy."[11]

7. In the Sacrament of Confession, the priest is "a minister of the Church," must "adhere faithfully to the doctrine of the magisterium and the norms issued by competent authority," can "pos[e] questions … with prejudice and discretion" to determine a penitent's culpability in grave sin, and determine if there is "doubt about the disposition of the penitent."[12]

8. The priest is also charged to "impose salutary and suitable penances in accord with the quality and number of sins, taking into account the condition of the penitent," and the penitent is "obliged to fulfill" this penance.[13] If the priest provides the penitent absolution, the penitent is forgiven by God of the sins committed since baptism (or the penitent's most recent confession), is reconciled with God and His Church, and stands, once again, without impediment to eternal life with God.[14]

9. Although it is the priest who imparts absolution, forgiveness of sins is granted by God alone.[15] In hearing a penitent's confession, the priest is acting *in persona Christi capitis*—

---

[6] *Id.* ¶ 1861.
[7] 1 John 1:9.
[8] Code of Canon Law c. 960 § 1.
[9] Matthew 9:6.
[10] Code of Canon Law c. 959.
[11] *Id.* at c. 978 § 1.
[12] *Id.* at c. 978 § 2; *id.* at cc. 979-980.
[13] *Id.* at c. 981.
[14] Catechism of the Catholic Church ¶ 1462.
[15] *Id.* ¶ 1441.

1  *i.e.*, in the very person of Jesus Christ.  The priest therefore hears the penitent's confession of sins
2  *non ut homo, set ut Deus*—*i.e.*, not as man, but as God. And when the priest imparts absolution,
3  he does so not as man, but as God.  The penitent's confession is therefore a confession of sins *to*
4  *God*, so much so that the Catholic Church teaches that a priest "simply 'does not know' what he
5  was told during confession, because he did not listen to [the penitent] as a man but, precisely, in
6  the name of God."[16]

7        10.  Given this theological understanding of the sacrament, a penitent's confession is
8  protected by the sacramental seal.  The sacramental seal "absolutely forbid[s]" a priest from
9  "betray[ing] in any way a penitent in words or in any manner and for any reason."[17]  The
10  sacramental seal "prevent[s] the priest from speaking of the content of the confession to the
11  penitent himself, outside of the sacrament."[18]  That is because the sacramental seal derives from
12  the very nature of the sacrament itself, instituted by God, and divinely revealed to the Church.[19]
13  And the sacramental seal binds the priest "to the point that he is forbidden to remember voluntarily
14  the confession and he is obliged to suppress any involuntary recollection of it."[20]  Indeed, so
15  inviolable is the sacramental seal that, "once the sacrament has been celebrated," not even the
16  penitent "ha[s] the power to relieve the [the priest] of the obligation of secrecy."[21]

17        11.  The sacramental seal is intrinsic to the sacrament itself.  When Jesus Christ gave
18  Saint Peter the keys to the Kingdom of Heaven, they came with Christ's power to "bind" and to
19  "loose"—a power that includes adjudicating and forgiving sins.[22]  With that power came the
20  obligation to keep secret confessed sins.

21        12.  Priests are obligated to defend the sacramental seal, if necessary, *usque ad*
22  *sanguinis effusionem*—i.e., through the shedding of blood.  Any priest "who directly violates the

---

[16] *Note of the Apostolic Penitentiary on the Importance of the Internal Forum and the Inviolability of the Sacramental Seal* (June 29, 2019).
[17] Code of Canon Law c. 983 § 1.
[18] *Note of the Apostolic Penitentiary*, *supra* note 13.
[19] *Id.*
[20] *Id.*
[21] *Id.*
[22] *See* Matthew 16:19; *see also* George Joyce, *Power of the Keys*, *in* Catholic Encyclopedia (8th ed. 1910), https://www.newadvent.org/cathen/08631b.htm.

DECLARATION OF P. ETIENNE IN SUPPORT OF  - 6 –
PLAINTIFFS' MOT. FOR PRELIM. INJUNCTION
(No. 3:25-cv-05461-DGE)

CROWLEY LAW OFFICES, P.S.
600 University Street, Suite 1708 • Seattle, WA 98101
(206) 209-0456
www.crowlylawoffices.com

1  sacramental seal incurs *latae sententiae* excommunication"—i.e., *automatic* excommunication—
2  risking eternal damnation.[23]

3    13.   The penalty of automatic excommunication is applied to offenses under Canon Law
4  that threaten or contradict the Church's unity and theological teaching, and include, in addition to
5  violation of the sacramental seal, apostasy, heresy, schism, or desecration of the Eucharist.[24] And
6  given the threat posed by such conduct to the unity and theological teaching of the Church, *a latae*
7  *sententiae* excommunication is "reserved to the Apostolic See," meaning that only the Pope can
8  lift it.[25]

9    14.   In 2002, the United States Conference of Catholic Bishops ("USCCB") adopted the
10 *Charter for the Protection of Children and Young People* in direct response to the revelations of
11 clergy sexual abuse within the Church.[26] The *Charter* provides a range of procedures to address
12 sexual abuse allegations, reconciliation and healing, transparency, accountability, and prevention.

13   15.   Consistent with the *Charter*, the Church in the United States established the
14 Committee for the Protection of Children and Young People along with its Secretariat of Child
15 and Youth Protection. The Church also established a National Review Board—an advisory board
16 of male and female lay people designed to help the USCCB prevent the sexual abuse of minors.[27]
17 The USCCB now publishes annually the results of audits of all U.S. dioceses conducted by an
18 independent, outside firm.[28]

19   16.   The Archdiocese of Seattle has cooperated fully in the Church's response to combat
20 clergy sexual abuse. The Archdiocese of Seattle received an on-site audit in 2021 and 2018.

21   17.   Given the intrusion on the sacramental seal and my sincerely held religious belief
22 in the teaching of the Roman Catholic Church regarding the sacramental seal, neither I nor the

---

[23] Code of Canon Law c. 1386 § 1.
[24] *Id.* at cc. 1364, 1370, 1382, 1386.
[25] *Id.*
[26] *Charter for the Protection of Children and Young People*, U.S. Conf. of Catholic Bishops, https://www.usccb.org/offices/child-and-youth-protection/charter-protection-children-and-young-people (last visited June 5, 2025).
[27] *Protection of Children & Young People*, U.S. Conf. of Catholic Bishops, https://www.usccb.org/committees/protection-children-young-people (last visited June 5, 2025).
[28] *Audits*, U.S. Conf. of Catholic Bishops, https://www.usccb.org/offices/child-and-youth-protection/audits (last visited June 5, 2025).

DECLARATION OF P. ETIENNE IN SUPPORT OF  - 7 –
PLAINTIFFS' MOT. FOR PRELIM. INJUNCTION
(No. 3:25-cv-05461-DGE)

CROWLEY LAW OFFICES, P.S.
600 University Street, Suite 1708 • Seattle, WA 98101
(206) 209-0456
www.crowlylawoffices.com

priests within my dioceses will comply with the amendments to RCW § 26.44.030 effected by Senate Bill 5375 with respect to any information that I learn solely through the Sacrament of Confession.

18.     Despite my commitment, and the commitment of the priests within my archdiocese, to uphold the sacramental seal despite the amendments to RCW § 26.44.030, I understand that certain faithful within my archdiocese are going to be concerned that RCW § 26.44.030 requires priests to report to law enforcement or other state authorities information disclosed during confession, even if unrelated to child abuse or neglect.  The faithful in my archdiocese include, for example, recent immigrants afraid of deportation.  RCW § 26.44.030 as amended by Senate Bill 5375 could induce them not to seek the Sacrament of Confession for fear that priests will be required to report them to the immigration authorities.  Such fear among the faithful will interfere with my pastoral duties, and the pastoral duties of the priests in my archdiocese, impeding my and the Church's mission to reconcile sinners to God and His Church, and save souls.

19.     Catholic priests in the Archdiocese of Seattle are already required to—and do—report child abuse and neglect when learned outside the Sacrament of Confession.

20.     Consistent with the Roman Catholic Church's efforts to eradicate the societal scourge of child abuse, the Archdiocese of Seattle has adopted and implemented policies that go further in the protection of children than the current requirements of Washington law on reporting child abuse and neglect.  Among the many requirements of those policies are the reporting to proper law enforcement agencies or the department of children, youth, and families whenever church personnel—defined to include clergy and lay faithful working for the diocese, its parishes, schools, or agencies—have reasonable cause to believe child abuse or neglect has occurred.[29]  That is a reporting obligation broader in scope than Washington law currently requires and includes mandatory reporting when a priest learns about suspected abuse or neglect through non-sacramental counsel.  The sole exception to this self-imposed reporting requirement is information

---

[29] *Policy for the Prevention of and Response to Sexual Abuse, Sexual Misconduct, and Sexual Harassment*, Archdiocese of Seattle, Office of Human Resources (rev. Jan. 2018), https://archseattle.org/wp-content/uploads/2021/08/Safe-Environment-Program-Policy-Prevention-Response-Eng-8.31.2021.pdf.

learned by a priest *only* in the confessional and thus protected by the sacramental confessional seal. I, and the priests within the Archdiocese of Seattle, adhere to these policies.

21. Moreover, because absolution given by a priest requires true contrition for all confessed sins, I, and the priests within the Archdiocese of Seattle to whom are confessed sins of child abuse or neglect by the penitent, could counsel the penitent to self-report and obtain the necessary temporal intervention and help. I, and the priests within the Archdiocese of Seattle who suspect based on what is disclosed during confession that the penitent is suffering from abuse or neglect, the penitent has engaged in abuse or neglect, or some third party has engaged in abuse or neglect, could invite the penitent for counseling outside of the Sacrament of Confession. If the penitent were to agree to such counseling and I or a priest within the Archdiocese of Seattle were to learn information in that non-sacramental counseling providing reasonable cause to believe abuse or neglect has been committed, I or the priest is obligated to report that suspected abuse or neglect to proper law enforcement agencies or the department of children, youth, and families.

\*   \*   \*

I declare under penalty of perjury that the foregoing is true and correct.

*/s/ Paul D. Etienne*

Paul D. Etienne

EXECUTED this 5th day of June, 2025, at Seattle, Washington.

DECLARATION OF P. ETIENNE IN SUPPORT OF - 9 –
PLAINTIFFS' MOT. FOR PRELIM. INJUNCTION
(No. 3:25-cv-05461-DGE)

CROWLEY LAW OFFICES, P.S.
600 University Street, Suite 1708 • Seattle, WA 98101
(206) 209-0456
www.crowlylawoffices.com