UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| PAUL D. ETIENNE, *et al.*,<br><br>Plaintiffs,<br><br>vs.<br><br>ROBERT FERGUSON, in his official capacity as Governor of the State of Washington, *et al.*,<br><br>Defendants. | Case No. 3:25-cv-5461-DGE<br><br>**UNITED STATES' MOTION TO INTERVENE**<br><br>NOTE ON MOTION CALENDAR:<br>July 14, 2025 |

## I.    INTRODUCTION

The United States respectfully moves under Federal Rule of Civil Procedure 24 to intervene in this action to remedy significant violations of the U.S. Constitution arising from the State of Washington's enactment of Senate Bill 5375 ("SB 5375"). SB 5375 makes Catholic priests, along with other "members of the clergy," mandated reporters for child abuse and neglect under state law. *See* Wash. Rev. Code § 26.44.030(1)(a)-(b). As a result, Catholic priests will be required under state law to disclose communications heard during Confession, which their faith prohibits them from doing.

UNITED STATES' MOTION TO INTERVENE
Case No. 3:25-cv-5461-DGE
Page 1

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL RIGHTS DIVISION
HOUSING AND CIVIL ENFORCEMENT SECTION
950 Pennsylvania Ave. NW – 4CON
Washington, DC  20530
(202) 598-9726

As alleged in the United States' proposed Complaint in Intervention ("Compl. in Intervention," attached as Exhibit 1), SB 5375 violates the Equal Protection Clause of the Fourteenth Amendment, and is subject to strict scrutiny, on two grounds. First, SB 5375 "infringes on fundamental rights protected by the Constitution," *Nunez v. City of San Diego*, 114 F.3d 935, 944 (9th Cir. 1997), namely, the right of Catholic priests to the free exercise of their religion under the First Amendment. *See Johnson v. Robison*, 415 U.S. 361, 375 n.14 (1974) ("Unquestionably, the free exercise of religion is a fundamental constitutional right."); *Ashaheed v. Currington*, 7 F.4th 1236, 1250 (10th Cir. 2021) ("Mr. Ashaheed's equal protection claim triggers strict scrutiny because it alleged . . . a deprivation of free exercise, a fundamental right"). By compelling priests to choose between violating their religious beliefs and complying with state law, SB 5375 is the prototypical example of a Free Exercise violation. *See Trinity Lutheran Church v. Comer*, 582 U.S. 449, 465-66 (2017).

Second, SB 5375 singles out "clergy" and treats them less favorably than non-religious actors by stripping them—and no one else—of their state legal privileges with respect to reporting suspected child abuse and neglect by persons they supervise. Furthermore, another law, Substitute House Bill 1171 ("SHB 1171"), enacted at about the same time as SB 5372, *restored* legal privileges to a non-religious group of mandatory reporters, namely, attorneys and their staff who happen to work for colleges and universities. Accordingly, SB 5375 disadvantages a suspect class—religion—and is subject to strict scrutiny. *See Ball v. Massanari*, 254 F.3d 817, 823 (9th Cir. 2001).

As shown below, the United States should be granted intervention as of right on two grounds. First, the United States has an unconditional statutory right to intervene. *See* Fed. R. Civ. P. 24(a)(1); 42 U.S.C. § 2000h-2. Second, the United States may intervene as of right because it has significant interests in this case that may, as a practical matter, be impeded by disposition of this case and cannot be adequately represented by the other parties. *See* Fed. R. Civ. P. 24(a)(2). Furthermore, given that this action was filed only recently, the United States' motion is timely. *Id.* In the alternative, the Court should grant the United States permissive intervention. *See* Fed. R. Civ. P. 24(b).

UNITED STATES' MOTION TO INTERVENE
Case No. 3:25-cv-5461-DGE
Page 2

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL RIGHTS DIVISION
HOUSING AND CIVIL ENFORCEMENT SECTION
950 Pennsylvania Ave. NW – 4CON
Washington, DC  20530
(202) 598-9726

## II. BACKGROUND

SB 5375 was signed into law by Governor Robert Ferguson on May 2, 2025 and becomes effective on July 27, 2025. Section 2 of SB 5375 amends Washington law mandating the reporting of child abuse or neglect to law enforcement in two ways, both of which are expressly targeted at religious actors. First, Section 2 adds "any member of the clergy" to those individuals who must report suspected abuse or neglect.[1] *See* Compl. in Intervention Ex. 1, at 6. Although Washington recognizes a privilege for any "confession or sacred confidence made to him or her in his or her professional character, in the course of discipline enjoined by the church to which he or she belongs," Wash. Rev. Code § 5.60.060(3), the mandatory reporting provision "trumps the statutory privilege." *State v. Warner*, 889 P.2d 479, 486 (Wash. 1995). Accordingly, whenever a parishioner's confession provides a Catholic priest with "reasonable cause to believe that a child has suffered abuse or neglect," SB 5375 requires the priest to report this information even though it would violate his sacred, faith-based duty to maintain the confidentiality of Confession.

Second, Section 2 strips "members of the clergy," and no one else, from the ability to rely on state-law privileges as a defense to reporting suspected abuse and neglect "caused by a person over whom he or she regularly exercises supervisory authority[.]" *See* Wash. Rev. Code § 26.44.030(1)(b). It does so by adding the clause, "Except for members of the clergy" before the phrase "no one shall be required to report under this section when he or she obtains the information solely as a result of a privileged communication" under state law. Compl. in Intervention Ex. 1, at 7. This includes not only

---

[1] Section 1 of SB 5375 adds the following definition of "member of the clergy":

> [A]ny regularly licensed, accredited, or ordained minister, *priest*, rabbi, imam, elder, or similarly situated religious or spiritual leader of any church, religious denomination, religious body, spiritual community, or sect, or person performing official duties that are recognized as the duties of a member of the clergy under the discipline, tenets, doctrine, or custom of the person's church, religious denomination, religious body, spiritual community, or sect, whether acting in an individual capacity or as an employee, agent, or official of any public or private organization or institution.

Compl. in Intervention Ex. 1, at 4 (emphasis added).

UNITED STATES' MOTION TO INTERVENE  
Case No. 3:25-cv-5461-DGE  
Page 3

UNITED STATES DEPARTMENT OF JUSTICE  
CIVIL RIGHTS DIVISION  
HOUSING AND CIVIL ENFORCEMENT SECTION  
950 Pennsylvania Ave. NW – 4CON  
Washington, DC  20530  
(202) 598-9726

the privilege covering Confessional communications, but *any other privilege* recognized under state law, including for attorney-client communications.  Furthermore, three days before signing SB 5375, the Governor signed SHB 1171, which conversely *restores* applicable privileges for attorneys who were incidentally included as mandatory reporters because they work for colleges and universities (such as clinical law professors or in-house counsel).  *See* Wash. Rev. Code § 26.44.030(1)(f); Compl. in Intervention Ex. 2.

On May 29, 2025, Plaintiffs sued Governor Ferguson, Attorney General Brown, and the prosecuting attorneys for each of Washington's counties under 42 U.S.C. § 1983 to enjoin enforcement of SB 5375 on grounds that it violates the First and Fourteenth Amendments, including the Equal Protection Clause.  Compl., ECF No. 1.  The United States' proposed complaint in intervention, which names the State of Washington as a defendant, also alleges that SB 5375 violates the Equal Protection Clause, including by infringing on the fundamental right to the free exercise of religion under the First Amendment.  The proposed complaint in intervention seeks equitable relief that does not exceed the private plaintiffs' prayer for relief.  *Compare* Compl. 39-40, ¶¶ V.a-e *with* Compl. in Intervention ¶¶ VI.a, b.

### III.     ARGUMENT

#### A.     The United States Has an Unconditional Statutory Right to Intervene

The United States' motion to intervene should be granted under Rule 24(a)(1) because Section 902 of the 1964 Civil Rights Act confers on the United States an unconditional right to intervene in this action.  Section 902 provides:

> Whenever an action has been commenced in any court of the United States seeking relief from the denial of equal protection of the laws under the fourteenth amendment to the Constitution on account of race, color, *religion*, sex or national origin, the Attorney General for or in the name of the United States may intervene in such action upon timely application if the Attorney General certifies that the case is of general public importance.  In such action the United States shall be entitled to the same relief as if it had instituted the action.

UNITED STATES' MOTION TO INTERVENE
Case No. 3:25-cv-5461-DGE
Page 4

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL RIGHTS DIVISION
HOUSING AND CIVIL ENFORCEMENT SECTION
950 Pennsylvania Ave. NW – 4CON
Washington, DC  20530
(202) 598-9726

42 U.S.C. § 2000h-2 (emphasis added).  This action claims that SB 5375 violates equal protection based on religion.  Compl. ¶¶ 151-152.  Furthermore, the United States Attorney General has certified that this case is of "general public importance."  *See* Certificate of the Attorney General, attached as Exhibit 2.  Accordingly, Section 902 entitles the United States to intervene as of right in this action.  *See Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 258 (2009); *Melendres v. Skinner*, 113 F.4th 1126, 1129 n.3 (9th Cir. 2024); *Seattle Sch. Dist. No. 1 v. Washington*, 473 F. Supp. 996, 1000 (W.D. Wash. 1979).  Furthermore, as explained in Section III.B.1 *infra*, the United States' motion is timely.

B. The United States May Intervene as of Right Under Rule 24(a)(2)

The United States' motion to intervene should also be granted as of right under Rule 24(a)(2). Under this rule, an applicant is entitled to intervene when:

> (1) the intervention application is timely; (2) the applicant has a significant protectable interest relating to the property or transaction that is the subject of the action; (3) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the existing parties may not adequately represent the applicant's interest.

*Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011) (quoting *Prete v. Bradbury*, 438 F.3d 949, 954 (9th Cir. 2006)); *accord State Farm Fire & Casualty Co. v. Hevner*, No. C25-98 MJP, 2025 WL 860820, at *1 (W.D. Wash. Mar. 19, 2025).  While the applicant has the burden to show each element, they "are broadly interpreted in favor of intervention." *Citizens for Balanced Use*, 647 F.3d at 897.  "We construe Rule 24(a) liberally in favor of potential intervenors." *California ex rel. Lockyer v. United States*, 450 F.3d 436, 440 (9th Cir. 2006).

1. The United States' Motion is Timely

First, there is no reasonable dispute that the United States' motion is timely.  Timeliness is determined by "three primary factors: "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay."  *Smith v. L.A.*

UNITED STATES' MOTION TO INTERVENE
Case No. 3:25-cv-5461-DGE
Page 5

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL RIGHTS DIVISION
HOUSING AND CIVIL ENFORCEMENT SECTION
950 Pennsylvania Ave. NW – 4CON
Washington, DC  20530
(202) 598-9726

*Unified Sch. Dist.*, 830 F.3d 843, 854 (9th Cir. 2016) (quoting *United States v. Alisal Water Corp.*, 370 F.3d 915, 921 (9th Cir. 2004)).[2]

Each of these factors weighs towards granting intervention here. This action was filed on May 29, 2025, and the United States moved to intervene approximately three weeks later. This litigation is accordingly at an early stage, with no discovery or dispositive motions. There has been no delay and, consequently, no prejudice to the other parties.

> 2.   The United States Has a Significant Protectable Interest in This Action

The United States has a significant, protectable interest in ensuring that state laws do not violate the First and Fourteenth Amendments. "The requirement of a significantly protectable interest is generally satisfied when the interest is protectable under some law, and there is a relationship between the legally protected interest and the claims at issue." *City of Emeryville v. Robinson*, 621 F.3d 1251, 1259 (9th Cir. 2010) (quotation and alteration marks omitted). "Whether an applicant for intervention as of right demonstrates sufficient interest in an action is a practical, threshold inquiry, and no specific legal or equitable interest need be established." *Citizens for Balanced Use*, 647 F.3d at 897 (quotation and alteration marks omitted). This interest need not rise to the level required for Article III standing, provided that the applicant "seek[s] the same relief sought by at least one existing party to the case…" *Cal. Dep't of Toxic Substances Control v. Jim Dobbas, Inc.*, 54 F.4th 1078, 1085 (9th Cir. 2022) (citing *Little Sisters of the Poor Sts. Peter and Paul Home v. Pennsylvania*, 591 U.S. 657, 674 n.6 (2020) & *Town of Chester v. Laroe Estates, Inc.*, 581 U.S. 433, 439-40 (2017)).

It is well settled that "the United States suffers a concrete harm to its sovereignty when its laws are violated." *La Unión del Pueblo Entero v. Abbott*, 604 F. Supp. 3d 512, 526 (W.D. Tex. 2022); *accord Vt. Agency of Natural Res. v. United States*, 529 U.S. 765, 771 (2000) (United States suffers an "injury to its sovereignty arising from violation of its laws"); *cf. Berger v. N.C. State Conf. of the*

---

[2] Courts generally apply the same factors to similarly-worded requirements that a motion to intervene be "timely." *See League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1308 (9th Cir. 1997) (applying same timeliness factors for intervention as of right and permissive intervention).

UNITED STATES' MOTION TO INTERVENE  
Case No. 3:25-cv-5461-DGE  
Page 6

UNITED STATES DEPARTMENT OF JUSTICE  
CIVIL RIGHTS DIVISION  
HOUSING AND CIVIL ENFORCEMENT SECTION  
950 Pennsylvania Ave. NW – 4CON  
Washington, DC  20530  
(202) 598-9726

*NAACP*, 597 U.S. 179, 191 (2022) ("No one questions that States possess 'a legitimate interest in the continued enforce[ment] of [their] own statutes.'") (quoting *Cameron v. EMW Women's Surgical Ctr.*, 595 U.S. 267, 277 (2022) (citations and internal quotations omitted) (brackets in original)). Furthermore, the Ninth Circuit has recognized that the Attorney General has a "significant protectable interest" arising from the "administration and enforcement of the laws[.]" *Smith v. Pangilinan*, 651 F.2d 1320, 1324 (9th Cir. 1981); *see also Dep't of Fair Empl. and Hous. v. Law Sch. Admission Council*, No. C-12-1830 EMC, 2012 WL 130475876, at *1 (N.D. Cal. Oct. 18, 2012); *Alturas Indian Rancheria v. Cal. Gambling Control Comm'n*, No. CIV. S-11-2070, 2011 WL 5118974, at *2 (E.D. Cal. Oct. 27, 2011) (holding that United States has a "significant protectable interest" in "preserving the system that Congress has set up for collecting taxes").

Although the United States does not directly enforce the Bill of Rights, Congress has charged the Attorney General with enforcement of the Religious Land Use and Institutionalized Persons Act, *see* 42 U.S.C. § 2000cc-2(f), which codifies the Free Exercise Clause with respect to institutions and land use. *See Guru Nanak Sikh Soc'y v. Cnty. of Sutter*, 456 F.3d 978, 985 (9th Cir. 2006). The Attorney General has also issued comprehensive guidance on the First Amendment's protection of religious freedom. *Fed. Law Protections for Religious Liberty*, 82 Fed. Reg. 49,668 (Oct. 20, 2017). Indeed, numerous courts have found that the Attorney General's sovereign interest in enforcing the Fourteenth Amendment is strong enough to support Article III standing, which exceeds what Rule 24(a)(2) requires. *See United States v. City of Jackson*, 318 F.2d 1, 14-17 (5th Cir. 1963) (citing *In re Debs*, 158 U.S. 564, 584-86 (1895)); *United States v. Texas*, 566 F. Supp. 3d 605, 637-41 (W.D. Tex. 2021); *United States v. Idaho*, 623 F. Supp. 3d 1096, 1107 (D. Idaho 2022) ("[T]he United States' sovereign interests are harmed when its laws are violated."). The United States therefore has a "significant protectable interest" in this litigation.

UNITED STATES' MOTION TO INTERVENE
Case No. 3:25-cv-5461-DGE
Page 7

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL RIGHTS DIVISION
HOUSING AND CIVIL ENFORCEMENT SECTION
950 Pennsylvania Ave. NW – 4CON
Washington, DC  20530
(202) 598-9726

3. *Disposition of This Case May Impede the United States' Interests*

The United States' ability to protect the substantial legal interest described above would, as a practical matter, be impaired absent intervention in this case. The outcome of this case, including the potential for appeals by existing parties, implicates *stare decisis* concerns that warrant the United States' intervention. *See Day v. Apoliona*, 505 F.3d 963, 965 (9th Cir. 2007) (intervention was necessary to protect state intervenor's interest where case might "have a precedential impact regarding the availability of an enforceable right of action"); *City of L.A.*, 288 F.3d at 400 (*amicus curiae* status may be insufficient to protect rights of applicant for intervention "because such status does not allow [applicant] to raise issues or arguments formally and gives [applicant] no right of appeal"); *Smith*, 651 F.2d at 1325 ("In appropriate circumstances, . . . *stare decisis* may supply the requisite practical impairment warranting intervention of right."). This is particularly true here because Plaintiffs' and the United States' complaints raise common questions of law and fact, such that "resolution of the liability question would, as a practical matter, bear significantly on the resolution of" the United States' claims in a subsequent or similar action. *United States v. Stringfellow*, 783 F.2d 821, 826 (9th Cir. 1986). As such, intervention is necessary to protect the United States' substantial interest in this litigation.

4. *The United States' Interests Are Not Adequately Represented*

Finally, the United States' interests in this litigation are not adequately represented by the existing parties to the case. "The [proposed intervenor's] burden of showing inadequacy of representation is 'minimal' and satisfied if the applicant can demonstrate that representation of its interests 'may be' inadequate." *Citizens for Balanced Use*, 647 F.3d at 898 (quoting *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003)). Three factors are relevant: "(1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect."

UNITED STATES' MOTION TO INTERVENE
Case No. 3:25-cv-5461-DGE
Page 8

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL RIGHTS DIVISION
HOUSING AND CIVIL ENFORCEMENT SECTION
950 Pennsylvania Ave. NW – 4CON
Washington, DC  20530
(202) 598-9726

*Arakaki*, 324 F.3d at 1086 (citing *California v. Tahoe Reg'l Planning Agency*, 792 F.2d 775, 778 (9th Cir. 1986)).

The existing parties cannot adequately represent the United States' interests because no private party may adequately represent the United States' sovereign interest in ensuring enforcement of fundamental rights under the Constitution. "[T]he United States has an interest in enforcing federal law that is independent of any claims of private citizens." *United States v. E. Baton Rouge Sch. Dist.*, 594 F.2d 56, 58 (5th Cir. 1979); *see also EEOC v. Pemco Aeroplex*, 383 F.3d 1280, 1291 (11th Cir. 2004) ("Quite simply, it is so unusual to find privity between a governmental agency and private plaintiffs because governmental agencies have statutory duties, responsibilities, and interests that are far broader than the discrete interests of a private party."). Thus, "[a]ggrieved individuals … lack the required 'identity of interests' with government agencies." *Acosta v. Idaho Falls Sch. Dist. No. 91*, 291 F. Supp.3d 1162, 1168 (D. Idaho 2017). And absent "identical" interests, there can be no "adequate representation" under Rule 24(a)(2). *Berger*, 597 U.S. at 195-96 (rejecting a presumption that the state board of elections adequately represented state legislators' interests merely because they were "related" to the board's interests). Accordingly, the United States meets this requirement for intervention.

C.     The United States Should Be Granted Permissive Intervention

Finally, in the alternative, the United States should be permitted to intervene under Rule 24(b)(1)(B) because it "has a claim or defense that shares with the main action a common question of law or fact." Permissive intervention is appropriate where there is "(1) an independent ground for jurisdiction; (2) a timely motion; and (3) a common question of law and fact between the movant's claim or defense and the main action." *Freedom from Religion Found. v. Geithner*, 644 F.3d 836, 843 (9th Cir. 2011); *accord Sullivan v. Ferguson*, No. 3:22-cv-5403-DGE, 2022 WL 10428165, at *4 (W.D. Wash. Oct. 18, 2022).

All three factors are present here. First, there is an "independent ground for jurisdiction" because the United States' intervention would not enlarge or destroy the Court's federal question

UNITED STATES' MOTION TO INTERVENE  
Case No. 3:25-cv-5461-DGE  
Page 9

UNITED STATES DEPARTMENT OF JUSTICE  
CIVIL RIGHTS DIVISION  
HOUSING AND CIVIL ENFORCEMENT SECTION  
950 Pennsylvania Ave. NW – 4CON  
Washington, DC  20530  
(202) 598-9726

jurisdiction to hear this case. *See Freedom from Religion Found.*, 644 F.3d at 844. Second, as described above, the United States' motion is timely. Third, there are common questions of law and fact between Plaintiffs' and the United States' claims, in that both contend that SB 5375 infringes on the fundamental constitutional rights of Catholic priests by requiring them to violate their faith-based belief in the confidentiality of Confession.

### IV.  CONCLUSION

For the foregoing reasons, the Court should grant the United States' motion to intervene and order its intervention in this action.

Dated:  June 23, 2025

Respectfully submitted,

HARMEET K. DHILLON
Assistant Attorney General

s/ Michael E. Gates
MICHAEL E. GATES
Deputy Assistant Attorney General

s/ Max Lapertosa
CARRIE PAGNUCCO
Chief
AMIE S. MURPHY
Deputy Chief
MAX LAPERTOSA
Trial Attorney
United States Department of Justice
Housing and Civil Enforcement Section
Civil Rights Division
950 Pennsylvania Avenue NW—4CON
Washington, DC  20530
Tel: (202) 598-9726
Fax: (202) 514-1116
Max.Lapertosa@usdoj.gov

UNITED STATES' MOTION TO INTERVENE
Case No. 3:25-cv-5461-DGE
Page 10

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL RIGHTS DIVISION
HOUSING AND CIVIL ENFORCEMENT SECTION
950 Pennsylvania Ave. NW – 4CON
Washington, DC  20530
(202) 598-9726

**CERTIFICATE OF COMPLIANCE WITH WORD COUNT**

Pursuant to Local Civil Rule 7(e)(6), I certify that this memorandum contains 3,122 words, in compliance with the Civil Local Rules.

                                                                s/ Max Lapertosa

UNITED STATES' MOTION TO INTERVENE
Case No. 3:25-cv-5461-DGE
Page 11

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL RIGHTS DIVISION
HOUSING AND CIVIL ENFORCEMENT SECTION
950 Pennsylvania Ave. NW – 4CON
Washington, DC  20530
(202) 598-9726