# Exhibit 1

1

2

3

4

5

6

7

8

9      UNITED STATES DISTRICT COURT
       WESTERN DISTRICT OF WASHINGTON
10             AT TACOMA

11  PAUL D. ETIENNE, JOSEPH J. TYSON,
    THOMAS A. DALY, FRANK R.                    Case No. 3:25-cv-5461-DGE
12  SCHUSTER, EUSEBIO L. ELIZONDO,
    GARY F. LAZZERONI, GARY M.
13  ZENDER, ROBERT PEARSON,
    LUTAKOMA NSUBUGA, JESUS
14  MARISCAL, and MICHAEL KELLY,

15              Plaintiffs,

16         vs.                                  **UNITED STATES OF AMERICA'S**
                                                **COMPLAINT IN INTERVENTION**
17  ROBERT FERGUSON, in his official
    capacity as Governor of the State of
18  Washington, *et al*.,

19              Defendants.

20  UNITED STATES OF AMERICA,

21              Plaintiff-Intervenor,

22         vs.

23  STATE OF WASHINGTON,

24              Defendant.

25

26

27  UNITED STATES' COMPLAINT IN                UNITED STATES DEPARTMENT OF JUSTICE
    INTERVENTION                                        CIVIL RIGHTS DIVISION
28  Case No. 3:25-cv-5461-DGE             HOUSING AND CIVIL ENFORCEMENT SECTION
    Page 1                                       950 Pennsylvania Ave. NW – 4CON
                                                       Washington, DC  20530
                                                          (202) 598-9726

The United States of America, by and through its undersigned counsel, brings this complaint in intervention for declaratory and injunctive relief, and alleges as follows:

## I.

## PRELIMINARY STATEMENT

1.  This action challenges the constitutionality of a new Washington state law, known as "Senate Bill 5375" ("SB 5375"), which takes effect July 27, 2025.  (*See* Exhibit 1.)  This legislation, signed on May 2, 2025, by Washington State Governor Bob Ferguson, unlawfully targets clergy and, specifically, Catholic priests,[1] in violation of their fundamental right to freely exercise their religious beliefs guaranteed by the First and Fourteenth Amendments of the U.S. Constitution.

2.  The Sacrament of Penance and Reconciliation, also known as Confession, is one of the seven Holy Sacraments of the Catholic Church.  It is a sacred rite with roots that can be traced back to the origins of Catholicism.

3.  During Confession, penitent Catholics confess aloud their sins to a Catholic priest, asking God for forgiveness, and as he performs his apostolic duties in hearing the Confession, the Catholic priest provides absolution to the penitent.

4.  The seal of confidentiality is, therefore, the lifeblood of Confession.  Without it, the free exercise of the Catholic religion, *i.e.*, the apostolic duties performed by the Catholic priest to the benefit of Catholic parishioners, cannot take place.

---

[1]  SB 5375 has been widely criticized for attacking the sacred rite of Confession.  *See* "Washington State Attacks the Seal of Confession," *National Catholic Register*, May 7, 2025, https://www.ncregister.com/commentaries/washington-state-attacks-the-seal-of-confession.  It has also been reported that SB 5375 is "forcing priests to choose between ecclesial and secular authority, as Washington's bishops say that priests who violate the seal of confession will incur an automatic (latae sententiae) excommunication."  *See* Connor Hartigan, "State laws require priests to disclose abuse revealed in confession," *America Magazine: The Jesuit Review of Law and Culture*, May 12, 2025, https://www.americamagazine.org/faith/2025/05/12/seal-confession-law-washington-separation-church-state-250618.

UNITED STATES' COMPLAINT IN
INTERVENTION
Case No. 3:25-cv-5461-DGE
Page 2

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL RIGHTS DIVISION
HOUSING AND CIVIL ENFORCEMENT SECTION
950 Pennsylvania Ave. NW – 4CON
Washington, DC  20530
(202) 598-9726

5. By design, SB 5375 directly interferes with and substantially burdens this sacred rite. It adds "any member of the clergy," which expressly includes Catholic priests, as individuals who must report information relating to suspected child abuse or neglect to state officials or law enforcement. The failure to do so subjects priests to criminal penalties and civil liability. Although Washington, like every other state, recognizes a privilege for Confession and other confidential religious communications, SB 5375 strips Catholic priests of their ability to rely on this or any other legal privilege as a defense to reporting suspected abuse or neglect. Thus, to comply with SB 5375, Catholic priests must disclose information even when it has been obtained solely through the sacred rite of Confession.

6. Yet complying with SB 5375 under these circumstances would place Catholic priests fundamentally at odds with the core tenets and beliefs of their religion, and even prohibit them from continuing to serve as priests in the Catholic church. Under Catholic canon law, priests are "prohibited completely from using knowledge acquired from confession to the detriment of the penitent even when any danger of revelation is excluded." Codex Iuris Canonici c.984 § 1 (1983).[2] Thus, "every priest who hears confessions is bound under very severe penalties to keep absolute secrecy regarding the sins that his penitents have confessed to him. He can make no use of knowledge that confession gives him about penitents' lives." *Catechism of the Catholic Church* § 1467.[3] The punishment for directly violating the sacramental seal of Confession is excommunication. Codes Iuris Canonici c.1386, § 1. A more direct burden on the exercise of religion would be difficult to imagine.

7. SB 5375 directly interferes with the fundamental right of Catholic priests to freely exercise their religion by forcing them to violate the sanctity and confidentiality of confessional communications. No other mandatory reporter is required to forego his or her fundamental rights under the Constitution in this manner. Furthermore, a second provision of this bill expressly strips "clergy," and no one else, from relying on *any* legal privileges, including the confessional privilege, as a defense

---

[2] *Available at:* https://www.vatican.va/archive/cod-iuris-canonici/cic_index_en.html.

[3] *Available at:* https://www.vatican.va/archive/ENG0015/_INDEX.HTM.

UNITED STATES' COMPLAINT IN INTERVENTION
Case No. 3:25-cv-5461-DGE
Page 3

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL RIGHTS DIVISION
HOUSING AND CIVIL ENFORCEMENT SECTION
950 Pennsylvania Ave. NW – 4CON
Washington, DC  20530
(202) 598-9726

to reporting child abuse and neglect.  All non-religious "supervisors" may continue to rely on applicable state law privileges.

8.      In addition, at about the same time SB 5375 was enacted to deprive Catholic priests of their privileges under state law, Governor Ferguson signed another bill into law, Substitute House Bill 1171 ("SHB 1171") (attached as Exhibit 2), which *restored* legal privileges to attorneys who are mandatory reporters because they happen to work for colleges and universities, including at law school clinics.

9.      The United States does not challenge the inclusion of priests as mandatory reporters *per se*.  Outside of Confession, Catholic priests are trained to be mandatory reporters and frequently report child abuse and neglect, including in their capacities as teachers, counselors, colleagues, and friends. For example, in testimony on SB 5375 before the Senate Human Services Committee, Bishop Frank Schuster of the Seattle Archdiocese testified that he was, in fact, a mandatory reporter for a minor who came to him for counseling regarding a relationship with an adult.  Bishop Schuster testified that, after hearing the boy's story, he immediately called the police and the boy's parents.  Bishop Schuster also referred to the Charter for the Protection of Children and Young People, otherwise known as the Dallas Charter, which was passed in response to the allegations of sexual abuse of minors by Catholic clergy. The Dallas Charter sets forth comprehensive measures to protect children from sexual abuse, including a requirement that priests report allegations of abuse to law enforcement, except when obtained through Confession.[4]

10.      Preserving the sacramental seal of Confession does not inhibit a priest from promoting justice and safety.  Confession is an opportunity for priests to encourage perpetrators to turn themselves

---

[4] *See* U.S. Conf. of Catholic Bishops, *Promise to Protect/Pledge to Heal:  Charter for the Protection of Children and Young People* 10 (June 2018) ("Dioceses/eparchies are to report an allegation of sexual abuse of a person who is a minor to the public authorities with due regard for the Sacrament of Penance.  Diocesan/eparchial personnel are to comply with all applicable civil laws with respect to the reporting of allegations of sexual abuse of minors to civil authorities and cooperate in their investigation in accord with the law of the jurisdiction in question."), *available at:* https://www.usccb.org/resources/Charter-for-the-Protection-of-Children-and-Young-People-2018-final%281%29.pdf.

UNITED STATES' COMPLAINT IN INTERVENTION
Case No. 3:25-cv-5461-DGE
Page 4

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL RIGHTS DIVISION
HOUSING AND CIVIL ENFORCEMENT SECTION
950 Pennsylvania Ave. NW – 4CON
Washington, DC  20530
(202) 598-9726

1    in, and to counsel victims on finding a safe adult to whom to report.  Confession may also allow priests

2    to provide referrals or assistance to parents or caregivers who confess to circumstances amounting to

3    "neglect" that arise from, for example, the lack of adequate child care, food, or medical assistance in the

4    home.  SB 5375 will therefore have a chilling effect on thousands of Catholic priests and parishioners

5    alike, who may be uncertain as to whether administering and adhering to the mandatory Sacrament of

6    Penance will subject them to criminal penalties, child welfare investigations, civil liability, or

7    excommunication.  Given these new risks, penitents will be less likely to express themselves during

8    Confession, preventing them from securing assistance for their families.

9        11.    As described in more detail herein, SB 5375 violates the Equal Protection Clause of the

10   Fourteenth Amendment, as follows:

11       a.    *First*, SB 5375 deprives Catholic priests of their fundamental right to freely exercise their

12             religious beliefs, as guaranteed under the First Amendment.  It does so by conditioning

13             compliance on forcing priests to betray their sacred duty to maintain the confidentiality of

14             confessional communications and thereby face excommunication from the Catholic

15             Church.  SB 5375 is not neutral or generally applicable because it expressly targets

16             religious actors and, by design, compels Catholic priests to reveal information obtained

17             through Confession.  Although other mandatory reporters must also reveal privileged

18             communications, they do not face this significant violation of their fundamental rights

19             and liberties protected under the Constitution.

20       b.    *Second*, SB 5375 treats members of the clergy, including Catholic priests, less favorably

21             than other individuals.  It does so by revoking state legal privileges for "members of the

22             clergy," and no one else, with respect to reporting abuse committed by individuals they

23             supervide.  At the same time, SHB 1171 *restores* legal privileges to secular mandatory

24             reporters, *i.e.*, attorneys who work for colleges and universities.

UNITED STATES' COMPLAINT IN
INTERVENTION
Case No. 3:25-cv-5461-DGE
Page 5

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL RIGHTS DIVISION
HOUSING AND CIVIL ENFORCEMENT SECTION
950 Pennsylvania Ave. NW – 4CON
Washington, DC  20530
(202) 598-9726

12. Because SB 5375 violates fundamental rights and discriminates based on a suspect class, *i.e.*, religion, it is subject to strict scrutiny, which it cannot survive because it is not narrowly tailored to achieve a compelling governmental interest.

13. The United States accordingly files this Complaint in Intervention to vindicate its sovereign and other interests in enforcing the Constitution's guarantee of equal protection of the laws with respect to religion.

## II.

## JURISDICTION AND VENUE

14. This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345.

15. This case seeks relief from the denial of equal protection of the laws under the Fourteenth Amendment on account of religion. *See* Compl. ¶¶ 151-153, ECF No. 1. The Attorney General of the United States has certified that this case is of general public importance. *See* U.S. Mot. Intervene Ex. 2. Accordingly, the United States may intervene as of right in this action under 42 U.S.C. § 2000h-2 and Federal Rule of Civil Procedure 24(a)(1). The United States may also intervene as of right under Federal Rule of Civil Procedure 24(a)(2).

16. Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the acts or omissions giving rise to this action occurred within this district.

17. The Court may issue declaratory relief under 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57, and injunctive relief under 28 U.S.C. § 2202 and Federal Rule of Civil Procedure 65.

## III.

## PARTIES

18. Plaintiff-Intervenor is the United States of America.

19. Defendant, the State of Washington, is a State of the United States of America. The State of Washington includes all of its officers, employees, and agents responsible for enforcing SB 5375, including the state's Governor, Bob Ferguson.

UNITED STATES' COMPLAINT IN
INTERVENTION
Case No. 3:25-cv-5461-DGE
Page 6

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL RIGHTS DIVISION
HOUSING AND CIVIL ENFORCEMENT SECTION
950 Pennsylvania Ave. NW – 4CON
Washington, DC  20530
(202) 598-9726

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# IV.

## FACTUAL BACKGROUND

### THE CATHOLIC SACRAMENT OF PENANCE AND RECONCILIATION

20.    The Sacrament of Penance and Reconciliation, commonly referred to as Confession, is one of the seven Holy Sacraments of the Catholic religion and, therefore, a critical practice of religious exercise.  Under this sacrament, "the faithful … confess their sins to a legitimate minister," which "constitute the only ordinary means by which a member of the faithful … is reconciled with God and the Church."  Codex Iuris Canonici c.959-60.

21.    According to Catechism, "[t]he Sacrament of Penance involves a conversion of our hearts to God, a confession of sins to a priest, the forgiveness of our sins, a penance to make some amends for sin, and reconciliation with God and the Church."  U.S. Conf. of Catholic Bishops, *U.S. Catholic Catechism for Adults* 264 (2006).

22.    The sacrament of Confession can be traced back to the origins of the Catholic Church and is rooted in scripture.  *See e.g., 1 John* 1:9 (New American Bible) ("But if we acknowledge our sins, he who is just can be trusted to forgive our sins and cleanse us from every wrong."); *see also John* 20:21–23 (New American Bible, St. Joseph Ed.) ("As the Father has sent me, so I send you. . . . Receive the Holy Spirit.  If you forgive men's sins, they are forgiven them; *if you hold them bound, they are held bound.*") (emphasis added).

23.    Catholics are required to go to Confession "at least once a year."  Codex Iuris Canonici c.989.  Priests must allow parishioners to confess anonymously by either using "confessionals with a fixed grate between the penitent and the confessor," or hearing them "outside of a confessional with a just cause."  *Id.* c.964 §§ 2-3.

24.    Strict confidentiality between the Catholic priest and the penitent during Confession is essential for the full expression of this rite, during which the priest may impose a penance and offer the absolution of sin.

UNITED STATES' COMPLAINT IN
INTERVENTION
Case No. 3:25-cv-5461-DGE
Page 7

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL RIGHTS DIVISION
HOUSING AND CIVIL ENFORCEMENT SECTION
950 Pennsylvania Ave. NW – 4CON
Washington, DC  20530
(202) 598-9726

25.     "The sacramental seal is inviolable; therefore, it is absolutely forbidden for a confessor [priest] to betray in any way a penitent in words or in any manner and for any reason." *Id.* c.983, § 1. Priests are "prohibited completely from using knowledge acquired from confession to the detriment of the penitent even when any danger of revelation is excluded." *Id.* c.984 § 1.  Thus, "every priest who hears confessions is bound under very severe penalties to keep absolute secrecy regarding the sins that his penitents have confessed to him.  He can make no use of knowledge that confession gives him about penitents' lives." *Catechism of the Catholic Church* § 1467.

26.     The *automatic* penalty for violating confidentiality of Confession is excommunication from the Catholic Church.  "A confessor who directly violates the seal of confession incurs an automatic (*latae sententiae*) excommunication reserved to the Apostolic See."  Codes Iuris Canonici c.1386, § 1.

27.     Accordingly, if a Catholic priest reveals information he learns during Confession, he is no longer a Catholic priest, he is removed from the Catholic Church, and he is excluded from participating in the sacraments of the Catholic Church.

## WASHINGTON STATE SENATE BILL 5375

28.     SB 5375 is an amendment to Washington's mandatory reporting law for suspected child abuse and neglect.  *See* Wash. Rev. Code § 26.44.030.  Section 1 of SB 5375 adds a definition of "member of the clergy" that expressly includes "any … priest" who "perform[s] official duties that are recognized … under the discipline, tenets, doctrine, or custom of the person's church, religious denomination, [or] religious body[.]"  Section 2 adds "members of the clergy" to the law's existing list of mandatory reporters.  *See* Wash. Rev. Code § 26.44.030(1)(a).

29.     Adding Catholic priests as mandatory reporters imposes significant legal obligations and consequences on them.  They must report any suspected child abuse and neglect, regardless of the source, "at the first opportunity, but in no case longer than" 48 hours after learning the information and include "the identity of the accused if known." *Id.* § 26.44.030(1)(g).  A priest who fails to report suspected abuse or neglect within this time frame is guilty of a "gross misdemeanor," *id.* § 26.44.080,

UNITED STATES' COMPLAINT IN
INTERVENTION
Case No. 3:25-cv-5461-DGE
Page 8

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL RIGHTS DIVISION
HOUSING AND CIVIL ENFORCEMENT SECTION
950 Pennsylvania Ave. NW – 4CON
Washington, DC  20530
(202) 598-9726

which is punishable by up to 364 days in jail and/or a $5,000 fine.  *Id.* § 9.92.020.  Catholic priests who fail to comply with their mandatory reporting duties may also be exposed to civil liability.

30.    Washington, like every other state, recognizes a privilege for confidential religious communications, including communications made during Confession.  *Id.* § 5.60.060(3).  However, as mandatory reporters under Section § 26.44.030(1)(a), Catholic priests may not rely on this privilege as a defense to failure to report.  They must therefore disclose any information they receive in Confession that provides "reasonable cause" of abuse or neglect.

31.    This was not inadvertent but was, in fact, SB 5375's express design and intent.  Senator Noel Frame, who introduced the bill, stated, "The Legislature has a duty to act and end the cycles of abuse that can repeat generation after generation.  When kids ask for help, we need to be sure that they get help.  It's time to pass this bill once and for all."[5]

32.    Senator Leonard Christian introduced an amendment to SB 5375 that would have exempted statements made during Confession.  Under this amendment, "[a] member of the clergy, to the extent the member of the clergy believes necessary, shall reveal information relating to a privileged communication from a penitent to prevent reasonably certain death or substantial bodily harm."  *See* S. Amend. 71 to SB 5375 (attached as Exhibit 3).

33.    Senator Christian's amendment mirrored the language of SHB 1171, which the Governor signed into law only three days before signing SB 5375.  Unlike SB 5375, which stripped clergy of their legal privileges, SHB 1171 *restored* legal privileges for attorneys who were mandatory reporters of child abuse and neglect because of their employment with colleges and universities.  Although attorneys are not mandatory reporters *per se*, law professors, clinical law instructors or students, or in-house counsel at colleges and universities were covered as mandatory reporters as "employees" of "institutions of

---

[5]  *See* Mitchell Roland, "Bill to Designate Clergy as Mandatory Reporters of Abuse Clears Washington Senate," *The Spokesman-Review* (Mar. 21, 2025), https://www.spokesman.com/stories/2025/mar/04/bill-to-designate-clergy-as-mandatory-reporters-of.

UNITED STATES' COMPLAINT IN INTERVENTION
Case No. 3:25-cv-5461-DGE
Page 9

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL RIGHTS DIVISION
HOUSING AND CIVIL ENFORCEMENT SECTION
950 Pennsylvania Ave. NW – 4CON
Washington, DC  20530
(202) 598-9726

higher education." *See* Wash. Rev. Code § 26.44.030(1)(f).  They were therefore required to report child abuse and neglect even when learned through privileged attorney-client communications.  SHB 1171 corrected this problem by exempting attorneys from having to report any "information related to the representation of a client," except when necessary to "prevent reasonably certain death or substantial bodily harm."

34.    The Legislature enacted SHB 1171's reporting exemption for attorneys based on legal privileges, but voted down Senator Christian's substantially identical exception for Catholic priests and other clergy.

35.    Another provision of SB 5375 strips "members of the clergy," and no one else, of the ability to rely on state-law privileges as a defense to reporting suspected abuse and neglect "caused by a person over whom he or she regularly exercises supervisory authority[.]" *See* Wash. Rev. Code § 26.44.030(1)(b).  It does so by adding the clause, "Except for members of the clergy" before the phrase "no one shall be required to report under this section when he or she obtains the information solely as a result of a privileged communication" under state law.  *See id.*

36.    These privileges include not only the confessional privilege in Wash. Rev. Code § 5.60.060(3), but also any other state-law privileges that might apply to priests in their roles as supervisors.  Thus, for example, if a priest learned of possible abuse or neglect of a child through an investigation conducted by the church's legal counsel, this information would trigger the priest's mandatory reporting obligations even though the information would otherwise be protected by attorney-client privilege.  By contrast, a supervisor who is not a "member of the clergy" may continue to rely on such privileges as a defense to mandatory reporting.

37.    Accordingly, SB 5375 by its terms treats individuals differently based on their religion by removing applicable legal protections only for "clergy."

38.    Requiring Catholic priests to break the confidentiality of Confession creates a chilling effect on both priests and adherents in their willingness to adhere to the sacred rite of Confession.

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL RIGHTS DIVISION
HOUSING AND CIVIL ENFORCEMENT SECTION
950 Pennsylvania Ave. NW – 4CON
Washington, DC  20530
(202) 598-9726

Although much of the debate over SB 5375 centered on preventing physical or sexual abuse of children, its scope is much broader.  Under Washington's mandatory reporting law, "abuse and neglect" includes "negligent treatment or maltreatment of a child" by a parent or caregiver.  Wash. Rev. Code § 26.44.020(1).  "Negligent treatment or maltreatment," in turn, "means an act or a failure to act, or the cumulative effects of a pattern of conduct, behavior, or inaction, that evidences a serious disregard of consequences of such magnitude as to constitute a clear and present danger to a child's health, welfare, or safety[.]"  *Id.* § 26.44.020(19).  SB 5375's chilling effect may therefore extend to all Catholics based on their fear and uncertainty that any confession that revealed, for example, a lack of adequate child care or medical care could, in practice, be interpreted by priests to constitute "neglect" and result in a child welfare investigation and potential dependency action.

## V.

## CAUSE OF ACTION

### Violation of the Equal Protection Clause of the U.S. Constitution, Amendment XIV

39.    The United States re-pleads the preceding paragraphs and incorporates them herein by reference.

40.    Section 1 of the Fourteenth Amendment provides, *inter alia*, that States shall not "deny to any person within its jurisdiction the equal protection of the laws."

41.    The Equal Protection Clause prohibits States from making or enacting classifications that "invade or restrain" the fundamental rights and liberties of its citizens, including the free exercise of religion under the First Amendment, unless such classifications are narrowly tailored to achieving a compelling governmental interest.  *See Harper v. Va. State Bd. of Elections*, 383 U.S. 663, 670 (1966); *Plyler v. Doe*, 457 U.S. 202, 216-17 (1982) (under Equal Protection Clause, classifications "that impinge upon the exercise of a fundamental right" are "presumptively individious"); *Nunez v. City of San Diego*, 114 F.3d 935, 944 (9th Cir. 1997) (same).  "Unquestionably, the free exercise of religion is a fundamental constitutional right."  *Johnson v. Robison*, 415 U.S. 361, 375 n.14 (1974); *accord Ashaheed*

UNITED STATES' COMPLAINT IN
INTERVENTION
Case No. 3:25-cv-5461-DGE
Page 11

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL RIGHTS DIVISION
HOUSING AND CIVIL ENFORCEMENT SECTION
950 Pennsylvania Ave. NW – 4CON
Washington, DC  20530
(202) 598-9726

*v. Currington*, 7 F.4th 1236, 1250 (10th Cir. 2021) (finding "equal protection claim trigger[ed] strict scrutiny because it alleged . . . a deprivation of free exercise, a fundamental right").

42.    SB 5375 targets, invades, restrains, and substantially burdens the fundamental rights of Catholic priests to freely exercise their religion, as protected by the First Amendment's Free Exercise Clause, by forcing them to violate their sacred vow of confidentiality for information learned through Confession.

43.    SB 5375 specifically targets members of the clergy and is not a neutral, generally applicable law that incidentally burdens religion.

44.    The Equal Protection Clause also prohibits States from enacting classifications that are based on a suspect class, including religious classifications, unless they are narrowly tailored to achieving a compelling governmental interest.  *See Ball v. Massanari*, 254 F.3d 817, 823 (9th Cir. 2001); *Al Saud v. Days*, 50 F.4th 705, 709–10 (9th Cir. 2022).

45.    SB 5375 treats religious actors, including, in particular, Catholic priests, less favorably than non-religious actors.

46.    Because SB 5375 both infringes upon fundamental rights and is based on a suspect classification, it is subject to strict scrutiny.

47.    SB 5375 cannot survive strict scrutiny because it is not narrowly tailored or substantially related to achieving a compelling governmental interest.

48.    SB 5375 accordingly violates the Equal Protection Clause.

49.    Legal remedies are inadequate to protect the United States' interests in preventing the constitutional violations described above, thereby rendering equitable relief appropriate.

UNITED STATES' COMPLAINT IN
INTERVENTION
Case No. 3:25-cv-5461-DGE
Page 12

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL RIGHTS DIVISION
HOUSING AND CIVIL ENFORCEMENT SECTION
950 Pennsylvania Ave. NW – 4CON
Washington, DC  20530
(202) 598-9726

# VI.

## **PRAYER FOR RELIEF**

WHEREFORE, the United States respectfully requests the following relief:

a.      A declaration that SB 5375 violates the rights of Catholic priests who are bound by the Sacramental Seal of Confession under the Equal Protection Clause of the Fourteenth Amendment as stated above;

b.      Preliminary and permanently enjoin the State of Washington, including all of its officers, employees, agents, and anyone working on their behalf, from enforcing SB 5375 against Catholic priests, who, consistent with their religious exercise and beliefs, refuse to disclose information obtained during the Sacramental Seal of Confession that would otherwise be required to be reported under SB 5375; and

c.      All other relief as the needs of justice may require.

UNITED STATES' COMPLAINT IN
INTERVENTION
Case No. 3:25-cv-5461-DGE
Page 13

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL RIGHTS DIVISION
HOUSING AND CIVIL ENFORCEMENT SECTION
950 Pennsylvania Ave. NW – 4CON
Washington, DC  20530
(202) 598-9726

1  Dated:  June 23, 2025

2                                              Respectfully submitted,

3                                              PAMELA BONDI
                                               Attorney General
4
5                                              HARMEET K. DHILLON
                                               Assistant Attorney General
                                               Civil Rights Division
6
7                                              s/ Michael E. Gates
                                               MICHAEL E. GATES
                                               Deputy Assistant Attorney General
8                                              Civil Rights Division

9                                              CARRIE PAGNUCCO
                                               Chief
10
11                                             s/ Max Lapertosa
                                               AMIE S. MURPHY
                                               Deputy Chief
12                                             MAX LAPERTOSA
                                               Trial Attorney
13                                             United States Department of Justice
                                               Housing and Civil Enforcement Section
14                                             Civil Rights Division
                                               950 Pennsylvania Avenue NW—4CON
15                                             Washington, DC  20530
                                               Tel: (202) 598-9726
16                                             Fax: (202) 514-1116
                                               Max.Lapertosa@usdoj.gov
17

18

19

20

21

22

23

24

25

26

27  UNITED STATES' COMPLAINT IN              UNITED STATES DEPARTMENT OF JUSTICE
    INTERVENTION                                        CIVIL RIGHTS DIVISION
28  Case No. 3:25-cv-5461-DGE              HOUSING AND CIVIL ENFORCEMENT SECTION
    Page 14                                      950 Pennsylvania Ave. NW – 4CON
                                                      Washington, DC  20530
                                                          (202) 598-9726

# Exhibit 1

S-0471.1

_____

**SENATE BILL 5375**

_____

**State of Washington**       **69th Legislature**       **2025 Regular Session**

**By** Senators Frame, C. Wilson, Bateman, Dhingra, Nobles, and Valdez

Read first time 01/20/25.  Referred to Committee on Human Services.

1    AN ACT Relating to the duty of clergy to report child abuse and
2  neglect; and amending RCW 26.44.020 and 26.44.030.

3  BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF WASHINGTON:

4    **Sec. 1.**  RCW 26.44.020 and 2024 c 298 s 5 are each amended to
5  read as follows:
6    The definitions in this section apply throughout this chapter
7  unless the context clearly requires otherwise.
8    (1) "Abuse or neglect" means sexual abuse, sexual exploitation,
9  female genital mutilation as defined in RCW 18.130.460, trafficking
10  as described in RCW 9A.40.100, sex trafficking or severe forms of
11  trafficking in persons under the trafficking victims protection act
12  of 2000, 22 U.S.C. Sec. 7101 et seq., or injury of a child by any
13  person under circumstances which cause harm to the child's health,
14  welfare, or safety, excluding conduct permitted under RCW 9A.16.100;
15  or the negligent treatment or maltreatment of a child by a person
16  responsible for or providing care to the child. An abused child is a
17  child who has been subjected to child abuse or neglect as defined in
18  this section.
19    (2) "Child" or "children" means any person under the age of
20  ((eighteen)) 18 years of age.

1    (3) "Child forensic interview" means a developmentally sensitive
2    and legally sound method of gathering factual information regarding
3    allegations of child abuse, child neglect, or exposure to violence.
4    This interview is conducted by a competently trained, neutral
5    professional utilizing techniques informed by research and best
6    practice as part of a larger investigative process.
7    (4) "Child protective services" means those services provided by
8    the department designed to protect children from child abuse and
9    neglect and safeguard such children from future abuse and neglect,
10   and conduct investigations of child abuse and neglect reports.
11   Investigations may be conducted regardless of the location of the
12   alleged abuse or neglect. Child protective services includes referral
13   to services to ameliorate conditions that endanger the welfare of
14   children, the coordination of necessary programs and services
15   relevant to the prevention, intervention, and treatment of child
16   abuse and neglect, and services to children to ensure that each child
17   has a permanent home. In determining whether protective services
18   should be provided, the department shall not decline to provide such
19   services solely because of the child's unwillingness or developmental
20   inability to describe the nature and severity of the abuse or
21   neglect.
22   (5) "Child protective services section" means the child
23   protective services section of the department.
24   (6) "Child who is a candidate for foster care" means a child who
25   the department identifies as being at imminent risk of entering
26   foster care but who can remain safely in the child's home or in a
27   kinship placement as long as services or programs that are necessary
28   to prevent entry of the child into foster care are provided, and
29   includes but is not limited to a child whose adoption or guardianship
30   arrangement is at risk of a disruption or dissolution that would
31   result in a foster care placement. The term includes a child for whom
32   there is reasonable cause to believe that any of the following
33   circumstances exist:
34   (a) The child has been abandoned by the parent as defined in RCW
35   13.34.030 and the child's health, safety, and welfare is seriously
36   endangered as a result;
37   (b) The child has been abused or neglected as defined in this
38   chapter and the child's health, safety, and welfare is seriously
39   endangered as a result;

1    (c) There is no parent capable of meeting the child's needs such
2    that the child is in circumstances that constitute a serious danger
3    to the child's development;

4    (d) The child is otherwise at imminent risk of harm.

5    (7) "Children's advocacy center" means a child-focused facility
6    in good standing with the state chapter for children's advocacy
7    centers and that coordinates a multidisciplinary process for the
8    investigation, prosecution, and treatment of sexual and other types
9    of child abuse. Children's advocacy centers provide a location for
10   forensic interviews and coordinate access to services such as, but
11   not limited to, medical evaluations, advocacy, therapy, and case
12   review by multidisciplinary teams within the context of county
13   protocols as defined in RCW 26.44.180 and 26.44.185.

14   (8) ((~~"Clergy" means any regularly licensed or ordained minister,~~
15   ~~priest, or rabbi of any church or religious denomination, whether~~
16   ~~acting in an individual capacity or as an employee or agent of any~~
17   ~~public or private organization or institution.~~

18   ~~(9)~~)) "Court" means the superior court of the state of
19   Washington, juvenile department.

20   ((~~(10)~~)) (9) "Department" means the department of children,
21   youth, and families.

22   ((~~(11)~~)) (10) "Experiencing homelessness" means lacking a fixed,
23   regular, and adequate nighttime residence, including circumstances
24   such as sharing the housing of other persons due to loss of housing,
25   economic hardship, fleeing domestic violence, or a similar reason as
26   described in the federal McKinney-Vento homeless assistance act
27   (Title 42 U.S.C., chapter 119, subchapter I) as it existed on January
28   1, 2021.

29   ((~~(12)~~)) (11) "Family assessment" means a comprehensive
30   assessment of child safety, risk of subsequent child abuse or
31   neglect, and family strengths and needs that is applied to a child
32   abuse or neglect report. Family assessment does not include a
33   determination as to whether child abuse or neglect occurred, but does
34   determine the need for services to address the safety of the child
35   and the risk of subsequent maltreatment.

36   ((~~(13)~~)) (12) "Family assessment response" means a way of
37   responding to certain reports of child abuse or neglect made under
38   this chapter using a differential response approach to child
39   protective services. The family assessment response shall focus on
40   the safety of the child, the integrity and preservation of the

1  family, and shall assess the status of the child and the family in
2  terms of risk of abuse and neglect including the parent's or
3  guardian's or other caretaker's capacity and willingness to protect
4  the child and, if necessary, plan and arrange the provision of
5  services to reduce the risk and otherwise support the family. No one
6  is named as a perpetrator, and no investigative finding is entered in
7  the record as a result of a family assessment.

8  ((<del>(14)</del>)) (13) "Founded" means the determination following an
9  investigation by the department that, based on available information,
10 it is more likely than not that child abuse or neglect did occur.

11 ((<del>(15)</del>)) (14) "Inconclusive" means the determination following an
12 investigation by the department of social and health services, prior
13 to October 1, 2008, that based on available information a decision
14 cannot be made that more likely than not, child abuse or neglect did
15 or did not occur.

16 ((<del>(16)</del>)) (15) "Institution" means a private or public hospital or
17 any other facility providing medical diagnosis, treatment, or care.

18 ((<del>(17)</del>)) (16) "Law enforcement agency" means the police
19 department, the prosecuting attorney, the state patrol, the director
20 of public safety, or the office of the sheriff.

21 ((<del>(18)</del>)) (17) "Malice" or "maliciously" means an intent, wish, or
22 design to intimidate, annoy, or injure another person. Such malice
23 may be inferred from an act done in willful disregard of the rights
24 of another, or an act wrongfully done without just cause or excuse,
25 or an act or omission of duty betraying a willful disregard of social
26 duty.

27 (18) "Member of the clergy" means any regularly licensed,
28 accredited, or ordained minister, priest, rabbi, imam, elder, or
29 similarly situated religious or spiritual leader of any church,
30 religious denomination, religious body, spiritual community, or sect,
31 or person performing official duties that are recognized as the
32 duties of a member of the clergy under the discipline, tenets,
33 doctrine, or custom of the person's church, religious denomination,
34 religious body, spiritual community, or sect, whether acting in an
35 individual capacity or as an employee, agent, or official of any
36 public or private organization or institution.

37 (19) "Negligent treatment or maltreatment" means an act or a
38 failure to act, or the cumulative effects of a pattern of conduct,
39 behavior, or inaction, that evidences a serious disregard of
40 consequences of such magnitude as to constitute a clear and present

1  danger to a child's health, welfare, or safety, including but not
2  limited to conduct prohibited under RCW 9A.42.100. When considering
3  whether a clear and present danger exists, evidence of a parent's
4  substance abuse as a contributing factor to negligent treatment or
5  maltreatment shall be given great weight. The fact that siblings
6  share a bedroom is not, in and of itself, negligent treatment or
7  maltreatment. Poverty, experiencing homelessness, or exposure to
8  domestic violence as defined in RCW 7.105.010 that is perpetrated
9  against someone other than the child does not constitute negligent
10 treatment or maltreatment in and of itself.
11     (20) "Pharmacist" means any registered pharmacist under chapter
12 18.64 RCW, whether acting in an individual capacity or as an employee
13 or agent of any public or private organization or institution.
14     (21) "Practitioner of the healing arts" or "practitioner" means a
15 person licensed by this state to practice podiatric medicine and
16 surgery, optometry, chiropractic, nursing, dentistry, osteopathic
17 medicine and surgery, or medicine and surgery or to provide other
18 health services. The term "practitioner" includes a duly accredited
19 Christian Science practitioner. A person who is being furnished
20 Christian Science treatment by a duly accredited Christian Science
21 practitioner will not be considered, for that reason alone, a
22 neglected person for the purposes of this chapter.
23     (22) "Prevention and family services and programs" means specific
24 mental health prevention and treatment services, substance abuse
25 prevention and treatment services, and in-home parent skill-based
26 programs that qualify for federal funding under the federal family
27 first prevention services act, P.L. 115-123. For purposes of this
28 chapter, prevention and family services and programs are not remedial
29 services or family reunification services as described in RCW
30 13.34.025(2).
31     (23) "Professional school personnel" include, but are not limited
32 to, teachers, counselors, administrators, child care facility
33 personnel, and school nurses.
34     (24) "Psychologist" means any person licensed to practice
35 psychology under chapter 18.83 RCW, whether acting in an individual
36 capacity or as an employee or agent of any public or private
37 organization or institution.
38     (25) "Screened-out report" means a report of alleged child abuse
39 or neglect that the department has determined does not rise to the

1  level of a credible report of abuse or neglect and is not referred
2  for investigation.
3      (26) "Sexual exploitation" includes: (a) Allowing, permitting, or
4  encouraging a child to engage in prostitution by any person; or (b)
5  allowing, permitting, encouraging, or engaging in the obscene or
6  pornographic photographing, filming, or depicting of a child by any
7  person.
8      (27) "Sexually aggressive youth" means a child who is defined in
9  RCW 74.13.075(1)(b) as being a sexually aggressive youth.
10     (28) "Social service counselor" means anyone engaged in a
11 professional capacity during the regular course of employment in
12 encouraging or promoting the health, welfare, support, or education
13 of children, or providing social services to adults or families,
14 including mental health, drug and alcohol treatment, and domestic
15 violence programs, whether in an individual capacity, or as an
16 employee or agent of any public or private organization or
17 institution.
18     (29) "Unfounded" means the determination following an
19 investigation by the department that available information indicates
20 that, more likely than not, child abuse or neglect did not occur, or
21 that there is insufficient evidence for the department to determine
22 whether the alleged child abuse did or did not occur.

23     **Sec. 2.**   RCW 26.44.030 and 2024 c 298 s 6 are each amended to
24 read as follows:
25     (1)(a)  When any <u>member of the clergy,</u> practitioner, county
26 coroner or medical examiner, law enforcement officer, professional
27 school personnel, registered or licensed nurse, social service
28 counselor, psychologist, pharmacist, employee of the department of
29 children, youth, and families, licensed or certified child care
30 providers or their employees, employee of the department of social
31 and health services, juvenile probation officer, diversion unit
32 staff, placement and liaison specialist, responsible living skills
33 program staff, HOPE center staff, state family and children's ombuds
34 or any volunteer in the ombuds' office, or host home program has
35 reasonable cause to believe that a child has suffered abuse or
36 neglect, he or she shall report such incident, or cause a report to
37 be made, to the proper law enforcement agency or to the department as
38 provided in RCW 26.44.040.

1  (b) When any person, in his or her official supervisory capacity
2  with a nonprofit or for-profit organization, has reasonable cause to
3  believe that a child has suffered abuse or neglect caused by a person
4  over whom he or she regularly exercises supervisory authority, he or
5  she shall report such incident, or cause a report to be made, to the
6  proper law enforcement agency, provided that the person alleged to
7  have caused the abuse or neglect is employed by, contracted by, or
8  volunteers with the organization and coaches, trains, educates, or
9  counsels a child or children or regularly has unsupervised access to
10 a child or children as part of the employment, contract, or voluntary
11 service. ((No)) Except for members of the clergy, no one shall be
12 required to report under this section when he or she obtains the
13 information solely as a result of a privileged communication as
14 provided in RCW 5.60.060.
15 Nothing in this subsection (1)(b) shall limit a person's duty to
16 report under (a) of this subsection.
17 For the purposes of this subsection, the following definitions
18 apply:
19 (i) "Official supervisory capacity" means a position, status, or
20 role created, recognized, or designated by any nonprofit or for-
21 profit organization, either for financial gain or without financial
22 gain, whose scope includes, but is not limited to, overseeing,
23 directing, or managing another person who is employed by, contracted
24 by, or volunteers with the nonprofit or for-profit organization.
25 (ii) "Organization" includes a sole proprietor, partnership,
26 corporation, limited liability company, trust, association, financial
27 institution, governmental entity, other than the federal government,
28 and any other individual or group engaged in a trade, occupation,
29 enterprise, governmental function, charitable function, or similar
30 activity in this state whether or not the entity is operated as a
31 nonprofit or for-profit entity.
32 (iii) "Reasonable cause" means a person witnesses or receives a
33 credible written or oral report alleging abuse, including sexual
34 contact, or neglect of a child.
35 (iv) "Regularly exercises supervisory authority" means to act in
36 his or her official supervisory capacity on an ongoing or continuing
37 basis with regards to a particular person.
38 (v) "Sexual contact" has the same meaning as in RCW 9A.44.010.
39 (c) The reporting requirement also applies to department of
40 corrections personnel who, in the course of their employment, observe

1  offenders or the children with whom the offenders are in contact. If,
2  as a result of observations or information received in the course of
3  his or her employment, any department of corrections personnel has
4  reasonable cause to believe that a child has suffered abuse or
5  neglect, he or she shall report the incident, or cause a report to be
6  made, to the proper law enforcement agency or to the department as
7  provided in RCW 26.44.040.

8      (d) The reporting requirement shall also apply to any adult who
9  has reasonable cause to believe that a child who resides with them,
10 has suffered severe abuse, and is able or capable of making a report.
11 For the purposes of this subsection, "severe abuse" means any of the
12 following: Any single act of abuse that causes physical trauma of
13 sufficient severity that, if left untreated, could cause death; any
14 single act of sexual abuse that causes significant bleeding, deep
15 bruising, or significant external or internal swelling; or more than
16 one act of physical abuse, each of which causes bleeding, deep
17 bruising, significant external or internal swelling, bone fracture,
18 or unconsciousness.

19     (e) The reporting requirement also applies to guardians ad litem,
20 including court-appointed special advocates, appointed under Titles
21 11 and 13 RCW and this title, who in the course of their
22 representation of children in these actions have reasonable cause to
23 believe a child has been abused or neglected.

24     (f) The reporting requirement in (a) of this subsection also
25 applies to administrative and academic or athletic department
26 employees, including student employees, of institutions of higher
27 education, as defined in RCW 28B.10.016, and of private institutions
28 of higher education.

29     (g) The report must be made at the first opportunity, but in no
30 case longer than ((forty-eight)) 48 hours after there is reasonable
31 cause to believe that the child has suffered abuse or neglect. The
32 report must include the identity of the accused if known.

33     (2) The reporting requirement of subsection (1) of this section
34 does not apply to the discovery of abuse or neglect that occurred
35 during childhood if it is discovered after the child has become an
36 adult. However, if there is reasonable cause to believe other
37 children are or may be at risk of abuse or neglect by the accused,
38 the reporting requirement of subsection (1) of this section does
39 apply.

1    (3) Any other person who has reasonable cause to believe that a
2  child has suffered abuse or neglect may report such incident to the
3  proper law enforcement agency or to the department as provided in RCW
4  26.44.040.

5    (4) The department, upon receiving a report of an incident of
6  alleged abuse or neglect pursuant to this chapter, involving a child
7  who has died or has had physical injury or injuries inflicted upon
8  him or her other than by accidental means or who has been subjected
9  to alleged sexual abuse, shall report such incident to the proper law
10 enforcement  agency,  including  military  law  enforcement,  if
11 appropriate.  In  emergency  cases,  where  the  child's  welfare  is
12 endangered, the department shall notify the proper law enforcement
13 agency within ((twenty-four)) 24 hours after a report is received by
14 the department. In all other cases, the department shall notify the
15 law enforcement agency within ((seventy-two)) 72 hours after a report
16 is  received  by  the  department.  If  the  department  makes  an  oral
17 report,  a  written  report  must  also  be  made  to  the  proper  law
18 enforcement agency within five days thereafter.

19   (5) Any law enforcement agency receiving a report of an incident
20 of  alleged  abuse  or  neglect  pursuant  to  this  chapter,  involving  a
21 child who has died or has had physical injury or injuries inflicted
22 upon  him  or  her  other  than  by  accidental  means,  or  who  has  been
23 subjected  to  alleged  sexual  abuse,  shall  report  such  incident  in
24 writing as provided in RCW 26.44.040 to the proper county prosecutor
25 or city attorney for appropriate action whenever the law enforcement
26 agency's  investigation  reveals  that  a  crime  may  have  been  committed.
27 The law enforcement agency shall also notify the department of all
28 reports  received  and  the  law  enforcement  agency's  disposition  of
29 them. In emergency cases, where the child's welfare is endangered,
30 the  law  enforcement  agency  shall  notify  the  department  within
31 ((twenty-four)) 24 hours. In all other cases, the law enforcement
32 agency shall notify the department within ((seventy-two)) 72 hours
33 after a report is received by the law enforcement agency.

34   (6) Any county prosecutor or city attorney receiving a report
35 under subsection (5) of this section shall notify the victim, any
36 persons the victim requests, and the local office of the department,
37 of the decision to charge or decline to charge a crime, within five
38 days of making the decision.

39   (7) The department may conduct ongoing case planning and
40 consultation with those persons or agencies required to report under

1   this section, with consultants designated by the department, and with
2   designated representatives of Washington Indian tribes if the client
3   information exchanged is pertinent to cases currently receiving child
4   protective services. Upon request, the department shall conduct such
5   planning and consultation with those persons required to report under
6   this section if the department determines it is in the best interests
7   of the child. Information considered privileged by statute and not
8   directly related to reports required by this section must not be
9   divulged without a valid written waiver of the privilege.

10  (8) Any case referred to the department by a physician licensed
11  under chapter 18.57 or 18.71 RCW on the basis of an expert medical
12  opinion that child abuse, neglect, or sexual assault has occurred and
13  that the child's safety will be seriously endangered if returned
14  home, the department shall file a dependency petition unless a second
15  licensed physician of the parents' choice believes that such expert
16  medical opinion is incorrect. If the parents fail to designate a
17  second physician, the department may make the selection. If a
18  physician finds that a child has suffered abuse or neglect but that
19  such abuse or neglect does not constitute imminent danger to the
20  child's health or safety, and the department agrees with the
21  physician's assessment, the child may be left in the parents' home
22  while the department proceeds with reasonable efforts to remedy
23  parenting deficiencies.

24  (9) Persons or agencies exchanging information under subsection
25  (7) of this section shall not further disseminate or release the
26  information except as authorized by state or federal statute.
27  Violation of this subsection is a misdemeanor.

28  (10) Upon receiving a report that a child is a candidate for
29  foster care as defined in RCW 26.44.020, the department may provide
30  prevention and family services and programs to the child's parents,
31  guardian, or caregiver. The department may not be held civilly liable
32  for the decision regarding whether to provide prevention and family
33  services and programs, or for the provision of those services and
34  programs, for a child determined to be a candidate for foster care.

35  (11) Upon receiving a report of alleged abuse or neglect, the
36  department shall make reasonable efforts to learn the name, address,
37  and telephone number of each person making a report of abuse or
38  neglect under this section. The department shall provide assurances
39  of appropriate confidentiality of the identification of persons
40  reporting under this section. If the department is unable to learn

1  the information required under this subsection, the department shall
2  only investigate cases in which:
3      (a)  The  department  believes  there  is  a  serious  threat  of
4  substantial harm to the child;
5      (b)  The  report  indicates  conduct  involving  a  criminal  offense
6  that has, or is about to occur, in which the child is the victim; or
7      (c) The department has a prior founded report of abuse or neglect
8  with regard to a member of the household that is within three years
9  of receipt of the referral.
10     (12)(a) Upon  receiving  a  report  of  alleged  abuse  or  neglect,  the
11 department  shall  use  one  of  the  following  discrete  responses  to
12 reports  of  child  abuse  or  neglect  that  are  screened  in  and  accepted
13 for departmental response:
14     (i) Investigation; or
15     (ii) Family assessment.
16     (b)  In  making  the  response  in  (a)  of  this  subsection  the
17 department shall:
18     (i) Use  a  method  by  which  to  assign  cases  to  investigation  or
19 family  assessment  which  are  based  on  an  array  of  factors  that  may
20 include  the  presence  of:  Imminent  danger,  level  of  risk,  number  of
21 previous  child  abuse  or  neglect  reports,  or  other  presenting  case
22 characteristics,  such  as  the  type  of  alleged  maltreatment  and  the  age
23 of  the  alleged  victim.  Age  of  the  alleged  victim  shall  not  be  used  as
24 the sole criterion for determining case assignment;
25     (ii)  Allow  for  a  change  in  response  assignment  based  on  new
26 information that alters risk or safety level;
27     (iii)  Allow  families  assigned  to  family  assessment  to  choose  to
28 receive an investigation rather than a family assessment;
29     (iv)  Provide  a  full  investigation  if  a  family  refuses  the  initial
30 family assessment;
31     (v)  Provide  voluntary  services  to  families  based  on  the  results
32 of  the  initial  family  assessment.  If  a  family  refuses  voluntary
33 services,  and  the  department  cannot  identify  specific  facts  related
34 to  risk  or  safety  that  warrant  assignment  to  investigation  under  this
35 chapter,  and  there  is  not  a  history  of  reports  of  child  abuse  or
36 neglect  related  to  the  family,  then  the  department  must  close  the
37 family  assessment  response  case.  However,  if  at  any  time  the
38 department  identifies  risk  or  safety  factors  that  warrant  an
39 investigation  under  this  chapter,  then  the  family  assessment  response
40 case must be reassigned to investigation;

1    (vi) Conduct an investigation, and not a family assessment, in
2  response to an allegation that, the department determines based on
3  the intake assessment:

4    (A) Indicates a child's health, safety, and welfare will be
5  seriously endangered if not taken into custody for reasons including,
6  but not limited to, sexual abuse and sexual exploitation of the child
7  as defined in this chapter;

8    (B) Poses a serious threat of substantial harm to a child;

9    (C) Constitutes conduct involving a criminal offense that has, or
10  is about to occur, in which the child is the victim;

11    (D) The child is an abandoned child as defined in RCW 13.34.030;

12    (E) The child is an adjudicated dependent child as defined in RCW
13  13.34.030, or the child is in a facility that is licensed, operated,
14  or certified for care of children by the department under chapter
15  74.15 RCW.

16    (c) In addition, the department may use a family assessment
17  response to assess for and provide prevention and family services and
18  programs, as defined in RCW 26.44.020, for the following children and
19  their families, consistent with requirements under the federal family
20  first prevention services act and this section:

21    (i) A child who is a candidate for foster care, as defined in RCW
22  26.44.020; and

23    (ii) A child who is in foster care and who is pregnant,
24  parenting, or both.

25    (d) The department may not be held civilly liable for the
26  decision to respond to an allegation of child abuse or neglect by
27  using the family assessment response under this section unless the
28  state or its officers, agents, or employees acted with reckless
29  disregard.

30    (13)(a) For reports of alleged abuse or neglect that are accepted
31  for investigation by the department, the investigation shall be
32  conducted within time frames established by the department in rule.
33  In no case shall the investigation extend longer than ((ninety)) 90
34  days from the date the report is received, unless the investigation
35  is being conducted under a written protocol pursuant to RCW 26.44.180
36  and a law enforcement agency or prosecuting attorney has determined
37  that a longer investigation period is necessary. At the completion of
38  the investigation, the department shall make a finding that the
39  report of child abuse or neglect is founded or unfounded.

1     (b) If a court in a civil or criminal proceeding, considering the
2     same facts or circumstances as are contained in the report being
3     investigated by the department, makes a judicial finding by a
4     preponderance of the evidence or higher that the subject of the
5     pending investigation has abused or neglected the child, the
6     department shall adopt the finding in its investigation.

7         (14) For reports of alleged abuse or neglect that are responded
8     to through family assessment response, the department shall:

9         (a) Provide the family with a written explanation of the
10    procedure for assessment of the child and the family and its
11    purposes;

12        (b) Collaborate with the family to identify family strengths,
13    resources, and service needs, and develop a service plan with the
14    goal of reducing risk of harm to the child and improving or restoring
15    family well-being;

16        (c) Complete the family assessment response within ((forty-five))
17    45 days of receiving the report except as follows:

18        (i) Upon parental agreement, the family assessment response
19    period may be extended up to ((one hundred twenty)) 120 days. The
20    department's extension of the family assessment response period must
21    be operated within the department's appropriations;

22        (ii) For cases in which the department elects to use a family
23    assessment response as authorized under subsection (12)(c) of this
24    section, and upon agreement of the child's parent, legal guardian,
25    legal custodian, or relative placement, the family assessment
26    response period may be extended up to one year. The department's
27    extension of the family assessment response must be operated within
28    the department's appropriations.

29        (d) Offer services to the family in a manner that makes it clear
30    that acceptance of the services is voluntary;

31        (e) Implement the family assessment response in a consistent and
32    cooperative manner;

33        (f) Have the parent or guardian agree to participate in services
34    before services are initiated. The department shall inform the
35    parents of their rights under family assessment response, all of
36    their options, and the options the department has if the parents do
37    not agree to participate in services.

38        (15)(a) In conducting an investigation or family assessment of
39    alleged abuse or neglect, the department or law enforcement agency:

1      (i) May interview children. If the department determines that the
2  response to the allegation will be family assessment response, the
3  preferred practice is to request a parent's, guardian's, or
4  custodian's permission to interview the child before conducting the
5  child interview unless doing so would compromise the safety of the
6  child or the integrity of the assessment. The interviews may be
7  conducted on school premises, at day-care facilities, at the child's
8  home, or at other suitable locations outside of the presence of
9  parents. If the allegation is investigated, parental notification of
10 the interview must occur at the earliest possible point in the
11 investigation that will not jeopardize the safety or protection of
12 the child or the course of the investigation. Prior to commencing the
13 interview the department or law enforcement agency shall determine
14 whether the child wishes a third party to be present for the
15 interview and, if so, shall make reasonable efforts to accommodate
16 the child's wishes. Unless the child objects, the department or law
17 enforcement agency shall make reasonable efforts to include a third
18 party in any interview so long as the presence of the third party
19 will not jeopardize the course of the investigation; and

20     (ii) Shall have access to all relevant records of the child in
21 the possession of mandated reporters and their employees.

22     (b) The Washington state school directors' association shall
23 adopt a model policy addressing protocols when an interview, as
24 authorized by this subsection, is conducted on school premises. In
25 formulating its policy, the association shall consult with the
26 department and the Washington association of sheriffs and police
27 chiefs.

28     (16) If a report of alleged abuse or neglect is founded and
29 constitutes the third founded report received by the department
30 within the last ((twelve)) 12 months involving the same child or
31 family, the department shall promptly notify the office of the family
32 and children's ombuds of the contents of the report. The department
33 shall also notify the ombuds of the disposition of the report.

34     (17) In investigating and responding to allegations of child
35 abuse and neglect, the department may conduct background checks as
36 authorized by state and federal law.

37     (18)(a) The department shall maintain investigation records and
38 conduct timely and periodic reviews of all founded cases of abuse and
39 neglect. The department shall maintain a log of screened-out
40 nonabusive cases.

1    (b) In the family assessment response, the department shall not
2   make a finding as to whether child abuse or neglect occurred. No one
3   shall be named as a perpetrator and no investigative finding shall be
4   entered in the department's child abuse or neglect database.

5    (19) The department shall use a risk assessment process when
6   investigating alleged child abuse and neglect referrals. The
7   department shall present the risk factors at all hearings in which
8   the placement of a dependent child is an issue. Substance abuse must
9   be a risk factor.

10   (20) Upon receipt of a report of alleged abuse or neglect the law
11  enforcement agency may arrange to interview the person making the
12  report and any collateral sources to determine if any malice is
13  involved in the reporting.

14   (21) Upon receiving a report of alleged abuse or neglect
15  involving a child under the court's jurisdiction under chapter 13.34
16  RCW, the department shall promptly notify the child's guardian ad
17  litem of the report's contents. The department shall also notify the
18  guardian ad litem of the disposition of the report. For purposes of
19  this subsection, "guardian ad litem" has the meaning provided in RCW
20  13.34.030.

21   (22) The department shall make efforts as soon as practicable to
22  determine the military status of parents whose children are subject
23  to abuse or neglect allegations. If the department determines that a
24  parent or guardian is in the military, the department shall notify a
25  department of defense family advocacy program that there is an
26  allegation of abuse and neglect that is screened in and open for
27  investigation that relates to that military parent or guardian.

28   (23) The department shall make available on its public website a
29  downloadable and printable poster that includes the reporting
30  requirements included in this section. The poster must be no smaller
31  than ((eight and one-half by eleven)) 8.5 by 11 inches with all
32  information on one side. The poster must be made available in both
33  the English and Spanish languages. Organizations that include
34  employees or volunteers subject to the reporting requirements of this
35  section must clearly display this poster in a common area. At a
36  minimum, this poster must include the following:

37   (a) Who is required to report child abuse and neglect;
38   (b) The standard of knowledge to justify a report;
39   (c) The definition of reportable crimes;
40   (d) Where to report suspected child abuse and neglect; and

1    (e) What should be included in a report and the appropriate
2 timing.

--- **END** ---

# Exhibit 2

CERTIFICATION OF ENROLLMENT

**SUBSTITUTE HOUSE BILL 1171**

69th Legislature
2025 Regular Session

Passed by the House April 17, 2025
  Yeas 95  Nays 1

_____

**Speaker of the House of
Representatives**

Passed by the Senate April 14, 2025
  Yeas 39  Nays 10

_____

**President of the Senate**

Approved

_____

**Governor of the State of Washington**

CERTIFICATE

I, Bernard Dean, Chief Clerk of the House of Representatives of the State of Washington, do hereby certify that the attached is **SUBSTITUTE HOUSE BILL 1171** as passed by the House of Representatives and the Senate on the dates hereon set forth.

_____

**Chief Clerk**

FILED

**Secretary of State
State of Washington**

## SUBSTITUTE HOUSE BILL 1171

AS AMENDED BY THE SENATE

Passed Legislature - 2025 Regular Session

**State of Washington        69th Legislature        2025 Regular Session**

**By** House Early Learning & Human Services (originally sponsored by Representatives Pollet and Goodman)

READ FIRST TIME 02/18/25.

1    AN ACT Relating to exempting attorney higher education employees
2  from mandated reporting of child abuse and neglect as it relates to
3  information gained in the course of providing legal representation to
4  a client; amending RCW 26.44.030; and creating a new section.

5  BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF WASHINGTON:

6    NEW SECTION.  **Sec. 1.**  The legislature finds that reporting of
7  abuse and neglect of children by employees, including student
8  employees, of academic, administrative, and athletic departments of
9  public and private institutions of higher education is vitally
10  important to prevent such abuse and neglect, and that such employees
11  in higher education may be in positions to observe and report abuse
12  that may not be readily observed by others.
13    The legislature also finds that the values underlying the duty of
14  lawyers to preserve the confidentiality of client information may be
15  inadvertently undermined and violated if attorney employees who
16  supervise law students in clinical practices where such students are
17  inadvertently required to disclose information related to the
18  representation of a client. If such information is not clearly
19  exempted from mandated reporting, clients will be denied adequate
20  representation by students and the attorney faculty or academic
21  employees supervising them in clinical programs.

1    Therefore, the legislature finds it is necessary to clarify that
2  the mandated reporting requirement for child abuse and neglect should
3  not override the obligation of attorneys to maintain confidentiality
4  of information relating to the representation of a client.

5    **Sec. 2.**   RCW 26.44.030 and 2024 c 298 s 6 are each amended to
6  read as follows:
7    (1)(a) When any practitioner, county coroner or medical examiner,
8  law enforcement officer, professional school personnel, registered or
9  licensed nurse, social service counselor, psychologist, pharmacist,
10 employee of the department of children, youth, and families, licensed
11 or certified child care providers or their employees, employee of the
12 department of social and health services, juvenile probation officer,
13 diversion unit staff, placement and liaison specialist, responsible
14 living skills program staff, HOPE center staff, state family and
15 children's ombuds or any volunteer in the ombuds' office, or host
16 home program has reasonable cause to believe that a child has
17 suffered abuse or neglect, he or she shall report such incident, or
18 cause a report to be made, to the proper law enforcement agency or to
19 the department as provided in RCW 26.44.040.
20   (b) When any person, in his or her official supervisory capacity
21 with a nonprofit or for-profit organization, has reasonable cause to
22 believe that a child has suffered abuse or neglect caused by a person
23 over whom he or she regularly exercises supervisory authority, he or
24 she shall report such incident, or cause a report to be made, to the
25 proper law enforcement agency, provided that the person alleged to
26 have caused the abuse or neglect is employed by, contracted by, or
27 volunteers with the organization and coaches, trains, educates, or
28 counsels a child or children or regularly has unsupervised access to
29 a child or children as part of the employment, contract, or voluntary
30 service. No one shall be required to report under this section when
31 he or she obtains the information solely as a result of a privileged
32 communication as provided in RCW 5.60.060.
33   Nothing in this subsection (1)(b) shall limit a person's duty to
34 report under (a) of this subsection.
35   For the purposes of this subsection, the following definitions
36 apply:
37   (i) "Official supervisory capacity" means a position, status, or
38 role created, recognized, or designated by any nonprofit or for-
39 profit organization, either for financial gain or without financial

1  gain, whose scope includes, but is not limited to, overseeing,
2  directing, or managing another person who is employed by, contracted
3  by, or volunteers with the nonprofit or for-profit organization.
4      (ii) "Organization" includes a sole proprietor, partnership,
5  corporation, limited liability company, trust, association, financial
6  institution, governmental entity, other than the federal government,
7  and any other individual or group engaged in a trade, occupation,
8  enterprise, governmental function, charitable function, or similar
9  activity in this state whether or not the entity is operated as a
10 nonprofit or for-profit entity.
11     (iii) "Reasonable cause" means a person witnesses or receives a
12 credible written or oral report alleging abuse, including sexual
13 contact, or neglect of a child.
14     (iv) "Regularly exercises supervisory authority" means to act in
15 his or her official supervisory capacity on an ongoing or continuing
16 basis with regards to a particular person.
17     (v) "Sexual contact" has the same meaning as in RCW 9A.44.010.
18     (c) The reporting requirement also applies to department of
19 corrections personnel who, in the course of their employment, observe
20 offenders or the children with whom the offenders are in contact. If,
21 as a result of observations or information received in the course of
22 his or her employment, any department of corrections personnel has
23 reasonable cause to believe that a child has suffered abuse or
24 neglect, he or she shall report the incident, or cause a report to be
25 made, to the proper law enforcement agency or to the department as
26 provided in RCW 26.44.040.
27     (d) The reporting requirement shall also apply to any adult who
28 has reasonable cause to believe that a child who resides with them,
29 has suffered severe abuse, and is able or capable of making a report.
30 For the purposes of this subsection, "severe abuse" means any of the
31 following: Any single act of abuse that causes physical trauma of
32 sufficient severity that, if left untreated, could cause death; any
33 single act of sexual abuse that causes significant bleeding, deep
34 bruising, or significant external or internal swelling; or more than
35 one act of physical abuse, each of which causes bleeding, deep
36 bruising, significant external or internal swelling, bone fracture,
37 or unconsciousness.
38     (e) The reporting requirement also applies to guardians ad litem,
39 including court-appointed special advocates, appointed under Titles
40 11 and 13 RCW and this title, who in the course of their

1  representation of children in these actions have reasonable cause to
2  believe a child has been abused or neglected.
3      (f) The reporting requirement in (a) of this subsection also
4  applies to administrative and academic or athletic department
5  employees, including student employees, of institutions of higher
6  education, as defined in RCW 28B.10.016, and of private institutions
7  of higher education. Under this subsection, the reporting requirement
8  applies to:
9      (i) An attorney who is employed by an institution of higher
10 education, as defined in RCW 28B.10.016, or private institution of
11 higher education, unless it relates to information related to the
12 representation of a client; and
13     (ii) An employee working under the supervision or direction of an
14 attorney described in (f)(i) of this subsection, unless it relates to
15 information related to the representation of a client.
16     (g) Nothing in this subsection shall be interpreted to suspend or
17 supersede otherwise applicable disclosure standards as provided for
18 in the Washington rules of professional conduct regarding
19 confidentiality of information including but not limited to
20 disclosure to prevent reasonably certain death or substantial bodily
21 harm.
22     (h) The report must be made at the first opportunity, but in no
23 case longer than forty-eight hours after there is reasonable cause to
24 believe that the child has suffered abuse or neglect. The report must
25 include the identity of the accused if known.
26     (2) The reporting requirement of subsection (1) of this section
27 does not apply to the discovery of abuse or neglect that occurred
28 during childhood if it is discovered after the child has become an
29 adult. However, if there is reasonable cause to believe other
30 children are or may be at risk of abuse or neglect by the accused,
31 the reporting requirement of subsection (1) of this section does
32 apply.
33     (3) Any other person who has reasonable cause to believe that a
34 child has suffered abuse or neglect may report such incident to the
35 proper law enforcement agency or to the department as provided in RCW
36 26.44.040.
37     (4) The department, upon receiving a report of an incident of
38 alleged abuse or neglect pursuant to this chapter, involving a child
39 who has died or has had physical injury or injuries inflicted upon
40 him or her other than by accidental means or who has been subjected

1    to alleged sexual abuse, shall report such incident to the proper law
2    enforcement  agency,  including  military  law  enforcement,  if
3    appropriate.  In  emergency  cases,  where  the  child's  welfare  is
4    endangered,  the  department  shall  notify  the  proper  law  enforcement
5    agency  within  twenty-four  hours  after  a  report  is  received  by  the
6    department.  In  all  other  cases,  the  department  shall  notify  the  law
7    enforcement  agency  within  seventy-two  hours  after  a  report  is
8    received by the department. If the department makes an oral report, a
9    written report must also be made to the proper law enforcement agency
10   within five days thereafter.

11   (5) Any law enforcement agency receiving a report of an incident
12   of  alleged  abuse  or  neglect  pursuant  to  this  chapter,  involving  a
13   child  who  has  died  or  has  had  physical  injury  or  injuries  inflicted
14   upon  him  or  her  other  than  by  accidental  means,  or  who  has  been
15   subjected  to  alleged  sexual  abuse,  shall  report  such  incident  in
16   writing  as  provided  in  RCW  26.44.040  to  the  proper  county  prosecutor
17   or  city  attorney  for  appropriate  action  whenever  the  law  enforcement
18   agency's  investigation  reveals  that  a  crime  may  have  been  committed.
19   The  law  enforcement  agency  shall  also  notify  the  department  of  all
20   reports  received  and  the  law  enforcement  agency's  disposition  of
21   them.  In  emergency  cases,  where  the  child's  welfare  is  endangered,
22   the  law  enforcement  agency  shall  notify  the  department  within  twenty-
23   four  hours.  In  all  other  cases,  the  law  enforcement  agency  shall
24   notify  the  department  within  seventy-two  hours  after  a  report  is
25   received by the law enforcement agency.

26   (6)  Any  county  prosecutor  or  city  attorney  receiving  a  report
27   under  subsection  (5)  of  this  section  shall  notify  the  victim,  any
28   persons  the  victim  requests,  and  the  local  office  of  the  department,
29   of  the  decision  to  charge  or  decline  to  charge  a  crime,  within  five
30   days of making the decision.

31   (7)  The  department  may  conduct  ongoing  case  planning  and
32   consultation  with  those  persons  or  agencies  required  to  report  under
33   this  section,  with  consultants  designated  by  the  department,  and  with
34   designated  representatives  of  Washington  Indian  tribes  if  the  client
35   information  exchanged  is  pertinent  to  cases  currently  receiving  child
36   protective  services.  Upon  request,  the  department  shall  conduct  such
37   planning  and  consultation  with  those  persons  required  to  report  under
38   this  section  if  the  department  determines  it  is  in  the  best  interests
39   of  the  child.  Information  considered  privileged  by  statute  and  not

1 directly related to reports required by this section must not be
2 divulged without a valid written waiver of the privilege.

3 (8) Any case referred to the department by a physician licensed
4 under chapter 18.57 or 18.71 RCW on the basis of an expert medical
5 opinion that child abuse, neglect, or sexual assault has occurred and
6 that the child's safety will be seriously endangered if returned
7 home, the department shall file a dependency petition unless a second
8 licensed physician of the parents' choice believes that such expert
9 medical opinion is incorrect. If the parents fail to designate a
10 second physician, the department may make the selection. If a
11 physician finds that a child has suffered abuse or neglect but that
12 such abuse or neglect does not constitute imminent danger to the
13 child's health or safety, and the department agrees with the
14 physician's assessment, the child may be left in the parents' home
15 while the department proceeds with reasonable efforts to remedy
16 parenting deficiencies.

17 (9) Persons or agencies exchanging information under subsection
18 (7) of this section shall not further disseminate or release the
19 information except as authorized by state or federal statute.
20 Violation of this subsection is a misdemeanor.

21 (10) Upon receiving a report that a child is a candidate for
22 foster care as defined in RCW 26.44.020, the department may provide
23 prevention and family services and programs to the child's parents,
24 guardian, or caregiver. The department may not be held civilly liable
25 for the decision regarding whether to provide prevention and family
26 services and programs, or for the provision of those services and
27 programs, for a child determined to be a candidate for foster care.

28 (11) Upon receiving a report of alleged abuse or neglect, the
29 department shall make reasonable efforts to learn the name, address,
30 and telephone number of each person making a report of abuse or
31 neglect under this section. The department shall provide assurances
32 of appropriate confidentiality of the identification of persons
33 reporting under this section. If the department is unable to learn
34 the information required under this subsection, the department shall
35 only investigate cases in which:

36 (a) The department believes there is a serious threat of
37 substantial harm to the child;

38 (b) The report indicates conduct involving a criminal offense
39 that has, or is about to occur, in which the child is the victim; or

1    (c) The department has a prior founded report of abuse or neglect
2    with regard to a member of the household that is within three years
3    of receipt of the referral.

4    (12)(a) Upon receiving a report of alleged abuse or neglect, the
5    department shall use one of the following discrete responses to
6    reports of child abuse or neglect that are screened in and accepted
7    for departmental response:

8    (i) Investigation; or

9    (ii) Family assessment.

10    (b) In making the response in (a) of this subsection the
11    department shall:

12    (i) Use a method by which to assign cases to investigation or
13    family assessment which are based on an array of factors that may
14    include the presence of: Imminent danger, level of risk, number of
15    previous child abuse or neglect reports, or other presenting case
16    characteristics, such as the type of alleged maltreatment and the age
17    of the alleged victim. Age of the alleged victim shall not be used as
18    the sole criterion for determining case assignment;

19    (ii) Allow for a change in response assignment based on new
20    information that alters risk or safety level;

21    (iii) Allow families assigned to family assessment to choose to
22    receive an investigation rather than a family assessment;

23    (iv) Provide a full investigation if a family refuses the initial
24    family assessment;

25    (v) Provide voluntary services to families based on the results
26    of the initial family assessment. If a family refuses voluntary
27    services, and the department cannot identify specific facts related
28    to risk or safety that warrant assignment to investigation under this
29    chapter, and there is not a history of reports of child abuse or
30    neglect related to the family, then the department must close the
31    family assessment response case. However, if at any time the
32    department identifies risk or safety factors that warrant an
33    investigation under this chapter, then the family assessment response
34    case must be reassigned to investigation;

35    (vi) Conduct an investigation, and not a family assessment, in
36    response to an allegation that, the department determines based on
37    the intake assessment:

38    (A) Indicates a child's health, safety, and welfare will be
39    seriously endangered if not taken into custody for reasons including,

1  but not limited to, sexual abuse and sexual exploitation of the child
2  as defined in this chapter;
3      (B) Poses a serious threat of substantial harm to a child;
4      (C) Constitutes conduct involving a criminal offense that has, or
5  is about to occur, in which the child is the victim;
6      (D) The child is an abandoned child as defined in RCW 13.34.030;
7      (E) The child is an adjudicated dependent child as defined in RCW
8  13.34.030, or the child is in a facility that is licensed, operated,
9  or certified for care of children by the department under chapter
10  74.15 RCW.
11      (c)  In addition, the department may use a family assessment
12  response to assess for and provide prevention and family services and
13  programs, as defined in RCW 26.44.020, for the following children and
14  their families, consistent with requirements under the federal family
15  first prevention services act and this section:
16      (i) A child who is a candidate for foster care, as defined in RCW
17  26.44.020; and
18      (ii) A child who is in foster care and who is pregnant,
19  parenting, or both.
20      (d)  The department may not be held civilly liable for the
21  decision to respond to an allegation of child abuse or neglect by
22  using the family assessment response under this section unless the
23  state or its officers, agents, or employees acted with reckless
24  disregard.
25      (13)(a) For reports of alleged abuse or neglect that are accepted
26  for investigation by the department, the investigation shall be
27  conducted within time frames established by the department in rule.
28  In no case shall the investigation extend longer than ninety days
29  from the date the report is received, unless the investigation is
30  being conducted under a written protocol pursuant to RCW 26.44.180
31  and a law enforcement agency or prosecuting attorney has determined
32  that a longer investigation period is necessary. At the completion of
33  the investigation, the department shall make a finding that the
34  report of child abuse or neglect is founded or unfounded.
35      (b) If a court in a civil or criminal proceeding, considering the
36  same facts or circumstances as are contained in the report being
37  investigated by the department, makes a judicial finding by a
38  preponderance of the evidence or higher that the subject of the
39  pending investigation has abused or neglected the child, the
40  department shall adopt the finding in its investigation.

1     (14) For reports of alleged abuse or neglect that are responded
2     to through family assessment response, the department shall:

3     (a) Provide the family with a written explanation of the
4     procedure for assessment of the child and the family and its
5     purposes;

6     (b) Collaborate with the family to identify family strengths,
7     resources, and service needs, and develop a service plan with the
8     goal of reducing risk of harm to the child and improving or restoring
9     family well-being;

10    (c) Complete the family assessment response within forty-five
11    days of receiving the report except as follows:

12    (i) Upon parental agreement, the family assessment response
13    period may be extended up to one hundred twenty days. The
14    department's extension of the family assessment response period must
15    be operated within the department's appropriations;

16    (ii) For cases in which the department elects to use a family
17    assessment response as authorized under subsection (12)(c) of this
18    section, and upon agreement of the child's parent, legal guardian,
19    legal custodian, or relative placement, the family assessment
20    response period may be extended up to one year. The department's
21    extension of the family assessment response must be operated within
22    the department's appropriations;

23    (d) Offer services to the family in a manner that makes it clear
24    that acceptance of the services is voluntary;

25    (e) Implement the family assessment response in a consistent and
26    cooperative manner;

27    (f) Have the parent or guardian agree to participate in services
28    before services are initiated. The department shall inform the
29    parents of their rights under family assessment response, all of
30    their options, and the options the department has if the parents do
31    not agree to participate in services.

32    (15)(a) In conducting an investigation or family assessment of
33    alleged abuse or neglect, the department or law enforcement agency:

34    (i) May interview children. If the department determines that the
35    response to the allegation will be family assessment response, the
36    preferred practice is to request a parent's, guardian's, or
37    custodian's permission to interview the child before conducting the
38    child interview unless doing so would compromise the safety of the
39    child or the integrity of the assessment. The interviews may be
40    conducted on school premises, at day-care facilities, at the child's

1 home, or at other suitable locations outside of the presence of
2 parents. If the allegation is investigated, parental notification of
3 the interview must occur at the earliest possible point in the
4 investigation that will not jeopardize the safety or protection of
5 the child or the course of the investigation. Prior to commencing the
6 interview the department or law enforcement agency shall determine
7 whether the child wishes a third party to be present for the
8 interview and, if so, shall make reasonable efforts to accommodate
9 the child's wishes. Unless the child objects, the department or law
10 enforcement agency shall make reasonable efforts to include a third
11 party in any interview so long as the presence of the third party
12 will not jeopardize the course of the investigation; and

13     (ii) Shall have access to all relevant records of the child in
14 the possession of mandated reporters and their employees.

15     (b) The Washington state school directors' association shall
16 adopt a model policy addressing protocols when an interview, as
17 authorized by this subsection, is conducted on school premises. In
18 formulating its policy, the association shall consult with the
19 department and the Washington association of sheriffs and police
20 chiefs.

21     (16) If a report of alleged abuse or neglect is founded and
22 constitutes the third founded report received by the department
23 within the last twelve months involving the same child or family, the
24 department shall promptly notify the office of the family and
25 children's ombuds of the contents of the report. The department shall
26 also notify the ombuds of the disposition of the report.

27     (17) In investigating and responding to allegations of child
28 abuse and neglect, the department may conduct background checks as
29 authorized by state and federal law.

30     (18)(a) The department shall maintain investigation records and
31 conduct timely and periodic reviews of all founded cases of abuse and
32 neglect. The department shall maintain a log of screened-out
33 nonabusive cases.

34     (b) In the family assessment response, the department shall not
35 make a finding as to whether child abuse or neglect occurred. No one
36 shall be named as a perpetrator and no investigative finding shall be
37 entered in the department's child abuse or neglect database.

38     (19) The department shall use a risk assessment process when
39 investigating alleged child abuse and neglect referrals. The
40 department shall present the risk factors at all hearings in which

1   the placement of a dependent child is an issue. Substance abuse must
2   be a risk factor.

3       (20) Upon receipt of a report of alleged abuse or neglect the law
4   enforcement agency may arrange to interview the person making the
5   report and any collateral sources to determine if any malice is
6   involved in the reporting.

7       (21) Upon receiving a report of alleged abuse or neglect
8   involving a child under the court's jurisdiction under chapter 13.34
9   RCW, the department shall promptly notify the child's guardian ad
10  litem of the report's contents. The department shall also notify the
11  guardian ad litem of the disposition of the report. For purposes of
12  this subsection, "guardian ad litem" has the meaning provided in RCW
13  13.34.030.

14      (22) The department shall make efforts as soon as practicable to
15  determine the military status of parents whose children are subject
16  to abuse or neglect allegations. If the department determines that a
17  parent or guardian is in the military, the department shall notify a
18  department of defense family advocacy program that there is an
19  allegation of abuse and neglect that is screened in and open for
20  investigation that relates to that military parent or guardian.

21      (23) The department shall make available on its public website a
22  downloadable and printable poster that includes the reporting
23  requirements included in this section. The poster must be no smaller
24  than eight and one-half by eleven inches with all information on one
25  side. The poster must be made available in both the English and
26  Spanish languages. Organizations that include employees or volunteers
27  subject to the reporting requirements of this section must clearly
28  display this poster in a common area. At a minimum, this poster must
29  include the following:

30      (a) Who is required to report child abuse and neglect;

31      (b) The standard of knowledge to justify a report;

32      (c) The definition of reportable crimes;

33      (d) Where to report suspected child abuse and neglect; and

34      (e) What should be included in a report and the appropriate
35  timing.

--- END ---

# Exhibit 3

5375 AMS CHRI S1972.3

**SB 5375** - S AMD **71**
By Senator Christian

                                        **NOT ADOPTED 02/28/2025**


1    On page 7, line 11, after "service." strike "((No)) <u>Except for</u>
2    <u>members of the clergy, no</u>" and insert "No"

3    On page 7, line 14, after "RCW 5.60.060." insert "<u>A member of the</u>
4    <u>clergy, to the extent the member of the clergy believes necessary,</u>
5    <u>shall reveal information relating to a privileged communication under</u>
6    <u>RCW 5.60.060 from a penitent to prevent reasonably certain death or</u>
7    <u>substantial bodily harm.</u>"


    <u>EFFECT:</u> Strikes the privileged communication exception for
members of the clergy and restores current law. A member of the
clergy, to the extent the member of the clergy believes necessary,
shall reveal information relating to a privileged communication from
a penitent to prevent reasonably certain death or substantial bodily
harm.


                        **--- END ---**