# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT TACOMA

| | |
|---|---|
| PAUL D. ETIENNE, *et al.*, <br><br> Plaintiffs, <br><br> vs. <br><br> ROBERT FERGUSON, in his official capacity as Governor of the State of Washington, *et al.*, <br><br> Defendants. <br><br> UNITED STATES OF AMERICA, <br><br> Proposed Plaintiff-Intervenor, <br><br> vs. <br><br> STATE OF WASHINGTON, <br><br> Defendant. | Case No. 3:25-cv-5461-DGE <br><br> **UNITED STATES' MOTION FOR PRELIMINARY INJUNCTION** <br><br> NOTE ON MOTION CALENDAR: <br> July 23, 2025 <br><br> ORAL ARGUMENT REQUESTED <br><br> REQUESTED HEARING DATE: <br> July 14, 2025 |

UNITED STATES' MOTION FOR PRELIMINARY INJUNCTION
Case No. 3:25-cv-5461-DGE
Page 1

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL RIGHTS DIVISION
HOUSING AND CIVIL ENFORCEMENT SECTION
950 Pennsylvania Ave. NW – 4CON
Washington, DC  20530
(202) 598-9726

The United States respectfully moves under Federal Rule of Procedure 65(a) to preliminarily enjoin enforcement of Washington State Senate Bill 5375 ("SB 5375") against Catholic priests concerning information they learn through Confession, as follows:

## I.    INTRODUCTION

The United States challenges SB 5375, which takes effect on July 27, 2025, as plainly unconstitutional.  SB 5375 violates the Equal Protection Clause of the Fourteenth Amendment, and is subject to strict scrutiny, on two grounds:

*First*, SB 5375 "infringes on fundamental rights protected by the Constitution," *Nunez v. City of San Diego*, 114 F.3d 935, 944 (9th Cir. 1997), namely, the right of Catholic priests, along with other "members of the clergy," to the free exercise of their religion under the First Amendment.  *See Johnson v. Robison*, 415 U.S. 361, 375 n.14 (1974) ("Unquestionably, the free exercise of religion is a fundamental constitutional right."); *Ashaheed v. Currington*, 7 F.4th 1236, 1250 (10th Cir. 2021) ("Mr. Ashaheed's equal protection claim triggers strict scrutiny because it alleged . . . a deprivation of free exercise, a fundamental right").  By compelling priests to choose between violating their religious beliefs and complying with state law, SB 5375 is the prototypical example of a Free Exercise violation.  *See Trinity Lutheran Church v. Comer*, 582 U.S. 449, 465-66 (2017).

*Second*, SB 5375 singles out "clergy" and treats them less favorably than non-religious actors by stripping them—and no one else—of their state legal privileges with respect to reporting suspected child abuse and neglect by persons they supervise.  Accordingly, SB 5375 by its terms disadvantages a suspect class—religion—and is subject to strict scrutiny.  *See Ball v. Massanari*, 254 F.3d 817, 823 (9th Cir. 2001).  In addition, at the same time it enacted SB 5375, Washington enacted another law, Special House Bill 1171 ("SHB 1171"), which *restores* legal privileges to a secular group of mandatory child abuse reporters, specifically attorneys and legal staff who happen to work for colleges and universities.  And while SHB 1171 continues to require attorneys to report abuse or neglect when necessary "to prevent reasonably certain death or substantial bodily harm," Washington rejected this same

UNITED STATES' MOTION FOR
PRELIMINARY INJUNCTION
Case No. 3:25-cv-5461-DGE
Page 2

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL RIGHTS DIVISION
HOUSING AND CIVIL ENFORCEMENT SECTION
950 Pennsylvania Ave. NW – 4CON
Washington, DC  20530
(202) 598-9726

compromise for clergy who learn of child abuse or neglect through Confessional communications. Washington's decision to enact SHB 1171 therefore undermines any claim that SB 5375 is based on a compelling governmental interest or is narrowly tailored to achieve that interest.

The significant constitutional interests at stake in this litigation are why the United States has a statutory right to intervene in these types of cases. *See* 42 U.S.C. § 2000h-2. The United States will not sit idly by while discrimination occurs on the basis of religion, in violation of the U.S. Constitution. The Court should not allow this unconstitutional statute to take effect and should enjoin its enforcement to preserve the status quo during this litigation.

## II.     BACKGROUND

### A.     SB 5375

SB 5375 was signed into law by Governor Robert Ferguson on May 2, 2025. Section 2 of SB 5375 amends Washington law mandating the reporting of child abuse or neglect in two ways, both of which are expressly targeted at religious actors.

First, Section 2 adds "any member of the clergy" to the list of individuals who must report to law enforcement or the State any information that provides "reasonable cause to believe that a child has suffered abuse or neglect." *See* Wash. Rev. Code § 26.44.030(1)(a); United States' Proposed Complaint in Intervention ("Compl. in Intervention") Ex. 1, at 6:25, ECF No. 122-1. Section 1 defines "member of the clergy" to include "any . . . priest" who "perform[s] official duties that are recognized . . . under the discipline, tenets, doctrine, or custom of the person's church, religious denomination, [or] religious body[.]" Compl. in Intervention Ex. 1, at 4:27-36. As mandatory reporters, priests will be required to report suspected abuse or neglect "at the first opportunity, but in no case longer than" 48 hours after learning the information and include "the identity of the accused if known." Wash. Rev. Code § 26.44.030(1)(g). The failure to report is a "gross misdemeanor," *id*. § 26.44.080, punishable by up to 364 days in jail and/or a $5,000 fine. *Id*. § 9.92.020. It may also expose priests to civil liability. *See Beggs v. Dep't of Soc. and Health Servs.*, 247 P.3d 421, 425 (Wash. 2011). Although Washington

UNITED STATES' MOTION FOR
PRELIMINARY INJUNCTION
Case No. 3:25-cv-5461-DGE
Page 3

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL RIGHTS DIVISION
HOUSING AND CIVIL ENFORCEMENT SECTION
950 Pennsylvania Ave. NW – 4CON
Washington, DC  20530
(202) 598-9726

recognizes a privilege for any "confession or sacred confidence made to him or her in his or her professional character, in the course of discipline enjoined by the church to which he or she belongs," Wash. Rev. Code § 5.60.060(3), the mandatory reporting requirement "trumps the statutory privilege." *State v. Warner*, 889 P.2d 479, 486 (Wash. 1995).

Second, Section 2 strips "members of the clergy," and no one else, of the ability to rely on state-law privileges as a defense to reporting suspected abuse and neglect "caused by a person over whom he or she regularly exercises supervisory authority[.]" *See* Wash. Rev. Code § 26.44.030(1)(b). It does so by adding the clause, "Except for members of the clergy" before the phrase "no one shall be required to report under this section when he or she obtains the information solely as a result of a privileged communication" under state law. Compl. in Intervention Ex. 1, at 7:11.

B.   SHB 1171

On April 30, 2025, three days before signing SB 5375 into law, the Governor signed SHB 1171, which also amends Washington's mandatory reporting statute. *See* Compl. in Intervention Ex. 2. But while SB 5375 *broadened* the reporting requirements by adding "clergy" to the list of mandatory reporters, thus abrogating their state law privileges, SHB 1171 *narrowed* reporting requirements for child abuse and neglect by *restoring* legal privileges for attorneys who had been incidentally included as mandatory reporters. Although lawyers are not listed as mandatory reporters *per se*, they were nevertheless included as mandatory reporters if they happened to be "employees, including student employees, of institutions of higher education . . . and of private institutions of higher education." Wash. Rev. Code § 26.44.030(f). Thus, law professors, clinical law students and instructors, and in-house counsel at colleges and universities were required to report suspected child abuse and neglect even when learned through attorney-client communications that, just like confessional communications, were protected from disclosure under state law. *See id.* § 5.60.060(2) (establishing attorney-client privilege).

UNITED STATES' MOTION FOR
PRELIMINARY INJUNCTION
Case No. 3:25-cv-5461-DGE
Page 4

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL RIGHTS DIVISION
HOUSING AND CIVIL ENFORCEMENT SECTION
950 Pennsylvania Ave. NW – 4CON
Washington, DC  20530
(202) 598-9726

SHB 1171 fixed this problem by exempting attorneys who work for colleges and universities, along with those they supervise, from having to report suspected child abuse or neglect when "it relates to information related to the representation of a client." *See* Compl. in Intervention Ex. 2, at 4:9-21. SHB 1171 also adopted a narrow exception to this privilege recognized in the Rules of Professional Conduct, which allows disclosure when necessary "to prevent reasonably certain death or substantial bodily harm." *Id.*; *see also* Wash. R. Prof. Conduct 1.6(b)(1). A similar amendment was proposed for SB 5375, which would have allowed priests to maintain the confidentiality of Confession subject to substantially the same exception, but it was rejected. *See* Compl. in Intervention Ex. 3.

C. The "Sacramental Seal" of Confession

The Sacrament of Penance, known as Confession, is one of the seven Holy Sacraments of the Catholic Church. *Catechism of the Catholic Church* § 1210, https://www.vatican.va/archive/ENG0015/_INDEX.HTM. Under this sacrament, "the faithful . . . confess their sins to a legitimate minister," which "constitute the only ordinary means by which a member of the faithful . . . is reconciled with God and the Church." Codex Iuris Canonici c.959-60 (1983).[1] Catholics are required to go to Confession "at least once a year." *Id.* c.989. Priests must allow parishioners to confess anonymously by either using "confessionals with a fixed grate between the penitent and the confessor," or hearing them "outside of a confessional with a just cause." *Id.* c.964 §§ 2-3.

A critical component of Confession is the "sacramental seal," which requires priests to maintain the confidentiality of Confession. *See Catechism* § 1467. "The sacramental seal is inviolable; therefore it is absolutely forbidden for a confessor [priest] to betray in any way a penitent in words or in any manner and for any reason." Codes Iuris Canonici c.983, § 1. Priests are "prohibited completely from using knowledge acquired from confession to the detriment of the penitent even when any danger of revelation is excluded." *Id.* c.984 § 1. Thus, "every priest who hears confessions is bound under very

---

[1] *Available at*: https://www.vatican.va/archive/cod-iuris-canonici/cic_index_en.html.

UNITED STATES' MOTION FOR
PRELIMINARY INJUNCTION
Case No. 3:25-cv-5461-DGE
Page 5

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL RIGHTS DIVISION
HOUSING AND CIVIL ENFORCEMENT SECTION
950 Pennsylvania Ave. NW – 4CON
Washington, DC 20530
(202) 598-9726

severe penalties to keep absolute secrecy regarding the sins that his penitents have confessed to him. He can make no use of knowledge that confession gives him about penitents' lives." *Catechism* § 1467. The punishment for directly violating the sacramental seal of Confession is excommunication. Codes Iuris Canonici c.1386, § 1. Reflecting this core belief, all states, including Washington, recognize a privilege for Confessional communications. *See* Appendix A (listing statutes).

This does not mean that priests who hear confessions of crimes are powerless to do anything about them. Priests can counsel parishioners to stop such behavior and/or turn themselves in to the authorities and may refuse absolution until they do so. A priest may also reveal to the authorities that a particular person may be in danger without revealing how or from whom he obtained this information. *See* Cathy Caridi, J.C.L., "Can Priests *Ever* Reveal What is Said in Confession," *Catholic Exch.* (Dec. 4, 2008), https://catholicexchange.com/can-priests-ever-reveal-what-is-said-in-confession.

### III.    ARGUMENT

When deciding whether to issue a preliminary injunction, courts consider whether the requesting party has shown "(1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest." *Envtl. Prot. Info. Ctr. v. Carlson*, 968 F.3d 985, 989 (9th Cir. 2020) (quoting *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20 (2008)).

   A.    *The United States is Likely to Succeed on its Equal Protection Claim*

SB 5375 violates the Equal Protection Clause, both by infringing on the fundamental rights of Catholic priests to the free exercise of religion under the First Amendment and by discriminating based on religion. As a result, SB 5375 is subject to strict scrutiny review, which it cannot survive because it is not narrowly tailored to achieve a compelling governmental interest.

UNITED STATES' MOTION FOR
PRELIMINARY INJUNCTION
Case No. 3:25-cv-5461-DGE
Page 6

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL RIGHTS DIVISION
HOUSING AND CIVIL ENFORCEMENT SECTION
950 Pennsylvania Ave. NW – 4CON
Washington, DC  20530
(202) 598-9726

1. *SB 5375 Violates the Equal Protection Clause Because it Infringes on the Fundamental Right of Catholic Priests to the Free Exercise of Religion*

Under the Fourteenth Amendment, "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. State law classifications that "impinge[] a 'fundamental right'" are subject to the Equal Protection Clause and evaluated under a strict scrutiny analysis. *Nunez*, 114 F.3d at 944 (quoting *Plyler v. Doe*, 457 U.S. 202, 216-17 (1982)); *see also Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992) (law triggers strict scrutiny under Equal Protection Clause either "because it jeopardizes exercise of a fundamental right or categorizes on the basis of an inherently suspect characteristic"); *Johnson*, 415 U.S. at 375 n.14 ("Unquestionably, the free exercise of religion is a fundamental constitutional right."). Thus, in *Nunez*, the Ninth Circuit held that a curfew ordinance for individuals under 18 triggered strict scrutiny under the Equal Protection Clause because the "ordinance infringes on fundamental rights protected by the Constitution: the right of free movement and the right to travel, as well as First Amendment rights . . ." *Id.*

Accordingly, state laws that infringe on the free exercise of religion are actionable and subject to strict scrutiny under the Equal Protection Clause. *Ashaheed*, 7 F.4th at 1250 ("Mr. Ashaheed's equal protection claim triggers strict scrutiny because it alleged . . . a deprivation of free exercise, a fundamental right"); *Calvary Chapel San Jose v. Cody*, No. 20-cv-03974-BLF, 2022 WL 827116, at *12 (N.D. Cal. Mar. 18, 2022) (denying motion to dismiss equal protection claim because "Plaintiffs have adequately alleged a violation of their rights under the Free Exercise Clause").

SB 5375 infringes on the free exercise of religion by requiring "clergy" who are Catholic priests to violate the sacramental seal of Confession, a central tenet of the Catholic faith. Furthermore, because SB 5375's terms specifically target and regulate "any member of the clergy," it is not "neutral and generally applicable." *See Fulton v. City of Phila.*, 593 U.S. 522, 533-34 (2021); *accord Emp't Div. v. Smith*, 494 U.S. 872, 878 (1990) (First Amendment not violated by "the incidental effect of a generally

UNITED STATES' MOTION FOR PRELIMINARY INJUNCTION
Case No. 3:25-cv-5461-DGE
Page 7

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL RIGHTS DIVISION
HOUSING AND CIVIL ENFORCEMENT SECTION
950 Pennsylvania Ave. NW – 4CON
Washington, DC  20530
(202) 598-9726

applicable and otherwise valid provision" of law). SB 5375 therefore creates a classification that is subject to strict scrutiny under the Equal Protection Clause. *See Ashaheed*, 7 F.4th at 1250.

That SB 5375 burdens the religious exercise of Catholic priests is not subject to any reasonable dispute. By design, SB 5375 forces priests to disclose information they hear in Confession. The law therefore compels priests "to choose between following the precepts of [their] religion" and potentially violating state law, or "abandoning one of the precepts of [their] religion" to comply with SB 5375's mandatory reporting requirements. *Sherbert v. Verner*, 374 U.S. 398, 404 (1963); *accord Burwell v. Hobby Lobby Stores*, 573 U.S. 682, 719-20 (2014) (holding under the Religious Freedom Restoration Act that requiring plaintiffs to violate their religious beliefs by including birth control coverage in employee health insurance plans or face severe "economic consequences" was a substantial burden on religious exercise).

Nor is SB 5375 "both neutral and generally applicable." *See Bacon v. Woodward*, 104 F.4th 744, 750 (9th Cir. 2024). It is not "neutral" because it singles out "clergy" and is therefore "specifically directed at . . . religious practice." *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 526 (2022) (quoting *Smith*, *supra*). And it is not "generally applicable" because regulating religious communications, including Confessional communications, is SB 5375's "object." *See Church of the Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520, 533 (1993). Indeed, by its terms, SB 5375's "supervisor" provision "discriminate[s] on its face" because it strips religious and not secular actors of their state-law privilege defense to mandatory reporting. *See id.* And when read in tandem with SHB 1171, which *restores* privilege defenses to secular mandatory reporters, SB 5375 "prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way." *Fulton*, 593 U.S. at 534; *accord Fellowship of Christian Athletes v. San Jose Unified Sch. Dist.*, 82 F.4th 664, 687 (9th Cir. 2023) ("[R]egulations are not neutral and generally applicable . . . whenever they treat *any* comparable secular activity more favorably than religious exercise.") (quoting *Tandon v. Newsom*, 593 U.S. 61, 62 (2021)) (emphasis in original).

UNITED STATES' MOTION FOR
PRELIMINARY INJUNCTION
Case No. 3:25-cv-5461-DGE
Page 8

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL RIGHTS DIVISION
HOUSING AND CIVIL ENFORCEMENT SECTION
950 Pennsylvania Ave. NW – 4CON
Washington, DC  20530
(202) 598-9726

Washington may argue that SB 5375 is "neutral" and "generally applicable" because it merely adds "clergy" to an existing list of secular mandatory reporters who similarly may not rely on state-law privileges as a defense. This would be without merit, however, because the legislative history leaves no doubt that SB 5375's purpose and intent was to compel Catholic priests and other clergy to disclose confidential religious communications, including, specifically, information heard during Confession. During the January 28, 2025 Senate hearing on SB 5375, both the Bill's sponsor, Senator Noelle Frame, and numerous witnesses testified that SB 5375 would require Catholic priests to report information heard in Confession.[2] The legislature was therefore fully aware that, in abrogating the privilege for Confessional communications, Washington would be infringing on a fundamental tenet of the Catholic religion. Where "the object of a law is to infringe upon or restrict practices because of their religious motivation, the law is not neutral . . ." *Church of the Lukumi Babalu Aye*, 508 U.S. at 533. This would be the case even if SB 5375's terms were facially neutral (which they are not), because "[o]fficial action that targets religious conduct for distinctive treatment cannot be shielded by mere compliance with the requirement of facial neutrality." *Id.* at 534; *see also Pac. Shores Props. v. City of Newport Beach*, 730 F.3d 1142, 1163 (9th Cir. 2013) (holding that facially-neutral law is invalid if its "primary purpose" is discriminatory).

        2. *SB 5375 Violates the Equal Protection Clause Because it Disadvantages Individuals Based on Religion, a Suspect Class*

SB 5375 also violates the Equal Protection Clause because it expressly discriminates based on religion. Where a statute "employs a suspect class (such as race, religion, or national origin) or burdens the exercise of a constitutional right, then courts must apply strict scrutiny, and ask whether the statute is

---

[2] For example, Bishop Frank Schuster of the Seattle Archdiocese testified that he learned that a child he was counseling had been abused and reported this abuse to the authorities. Senator Frame responded, "And you recognize that the exact story you're telling, had he told you in Confession rather than counseling, you wouldn't be telling that story today, you would not be patting yourself on the back for saving that young man, because you wouldn't have told them [the authorities]." Bishop Schuster responded that he would have advised the boy to meet with him afterwards, at which time he would have been a mandatory reporter. Wash. S. Human Servs. Comm. Hr'g at 1:42:43—1:43:10 (Jan. 28, 2025), *available at:* https://tvw.org/video/senate-human-services-2025011502/?eventID=2025011502.

UNITED STATES' MOTION FOR PRELIMINARY INJUNCTION
Case No. 3:25-cv-5461-DGE
Page 9

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL RIGHTS DIVISION
HOUSING AND CIVIL ENFORCEMENT SECTION
950 Pennsylvania Ave. NW – 4CON
Washington, DC  20530
(202) 598-9726

narrowly tailored to serve a compelling governmental interest." *Ball v. Massanari*, 254 F.3d 817, 823 (9th Cir. 2001); *accord Al-Saud v. Days*, 50 F.4th 705, 710 (9th Cir. 2022) ("Religion is a suspect class."); *Shakur v. Schiro*, 514 F.3d 878, 891 (9th Cir. 2008) (applying strict scrutiny to prison's differential treatment of Muslim and Jewish inmates on the basis of equal protection); *Martinez v. Clark Cnty.*, 846 F. Supp. 2d 1131, 1146-47 (D. Nev. 2012) (denying motion to dismiss equal protection claim against state law limiting certificates to solemnize marriage to individuals affiliated with religious organizations).

SB 5375 discriminates based on religion in two ways. First, SB 5375's "supervisor" provision prohibits "clergy," and no one else, from relying on state law privileges as a defense to mandatory reporting. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 447 (1985) ("The constitutional issue is clearly posed" by the city requiring a permit for homes for people with disabilities but not for similar non-disabled housing). Second, although Washington's mandatory reporting law also prohibits some secular mandatory reporters from relying on state law privileges, SB 5375 expressly adds priests as mandatory reporters, which newly strips them of previously applicable legal privileges. Yet at the same time, Washington *restored* the state law privileges of certain secular mandatory reporters, specifcially lawyers employed by universities, by enacting SHB 1171. Washington also declined to extend to clergy the same narrowing provision contained in SHB 1171, namely, to require disclosure of privileged information only when necessary to prevent imminent harm. Viewed against this legislative background, Washington's decision to enact SB 5375 "treat[s] comparable secular activities more favorably than religious exercise," in violation of the Equal Protection Clause. *See Omar Islamic Ctr. v. City of Meriden*, 633 F. Supp. 3d 600, 624 (D. Conn. 2022).

   3.  *SB 5375 Cannot Survive Strict Scrutiny*

"A government policy can survive strict scrutiny only if it advances 'interests of the highest order' and is narrowly tailored to achieve those interests." *Fulton*, 593 U.S. at 541 (quoting *Lukumi*, 508 U.S. at 546). Thus, if the State can identify such an interest, the court should assess whether this interest

UNITED STATES' MOTION FOR PRELIMINARY INJUNCTION
Case No. 3:25-cv-5461-DGE
Page 10

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL RIGHTS DIVISION
HOUSING AND CIVIL ENFORCEMENT SECTION
950 Pennsylvania Ave. NW – 4CON
Washington, DC  20530
(202) 598-9726

"could be achieved by [a] narrower [regulation] that burdened religion to a far lesser degree." *Lukumi*, 508 U.S. at 546. "Put another way, so long as the government can achieve its interests in a manner that does not burden religion, it must do so." *Fulton*, 593 U.S. at 541.

SB 5375 fails both prongs of the strict scrutiny analysis. First, although Washington may claim that it has a general interest in preventing child abuse and neglect, a government may not rely on "broadly formulated interests" to satisfy the "compelling interest" prong of strict scrutiny. *Id.* (quoting *Gonzales v. O Centro Espírita Beneficente União do Vegetal*, 546 U.S. 418, 431 (2006)). Instead, "courts must 'scrutinize[] the asserted harm of granting specific exemptions to particular religious claimants.'" *Id.* (quoting *Gonzales*, 546 U.S. at 431). Thus, Washington cannot satisfy this prong by claiming that it has a general interest in preventing child abuse and neglect, and must instead demonstrate specifically that it has a compelling interest in requiring Catholic priests to disclose information on child abuse and neglect learned through Confession. *See id.* Washington cannot meet this burden, because the legislative record lacks evidence that disclosing Confessional communications would further the prevention of child abuse and neglect, *i.e.*, that a significant amount of child abuse or neglect goes unreported because it is being disclosed in Confession.

Second, even if Washington could show a compelling interest in disclosing these communications, SB 5375 is not "narrowly tailored" to achieve this interest. Laws are not "narrowly tailored if [they are] either underinclusive or overinclusive in scope." *Bacon*, 104 F.4th at 753 (quoting *IMDb.com Inc. v. Becerra*, 962 F.3d 1111, 1125 (9th Cir. 2020)). SB 5375 is both "underinclusive" and "overinclusive." It is "underinclusive" because it targets only clergy with respect to revealing *any* information on abuse and neglect obtained through privileged communications. At the same time, the State exempted another group—lawyers who work in higher education—from reporting privileged information on child abuse and neglect, except in the narrow circumstance when disclosure would prevent imminent harm. *See id.* ("A law is underinclusive when it 'plac[es] strict limits on' certain activities while allowing other activities that 'create the same problem.'") (quoting *Reed v. Town of*

UNITED STATES' MOTION FOR
PRELIMINARY INJUNCTION
Case No. 3:25-cv-5461-DGE
Page 11

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL RIGHTS DIVISION
HOUSING AND CIVIL ENFORCEMENT SECTION
950 Pennsylvania Ave. NW – 4CON
Washington, DC  20530
(202) 598-9726

*Gilbert*, 576 U.S. 155, 172 (2015) (alteration in original)). Indeed, a proposed amendment to SB 5375 would have effectively treated clergy the same as attorneys, namely, by allowing them to rely on the Confessional privilege except when disclosure is necessary "to prevent reasonably certain death or harm." *See* Compl. in Intervention Ex. 3. This amendment was voted down. *See Nunez*, 114 F.3d at 948 (in holding that a curfew ordinance was not narrowly tailored, court held that it was "significant that San Diego rejected a proposal to tailor the ordinance more narrowly by adopting the broader exceptions used in" an ordinance previously upheld as constitutional).

Conversely, SB 5375 is overinclusive because the legislative record is devoid of any evidence that requiring priests to disclose information *specifically obtained through Confession* is necessary to prevent child abuse or neglect. Furthermore, although much of the debate over SB 5375 centered on preventing physical or sexual abuse of children, SB 5375's scope and impact is much broader. Under Washington's mandatory reporting law, "abuse and neglect" includes "negligent treatment or maltreatment of a child" by a parent or caregiver. Wash. Rev. Code § 26.44.020(1). "Negligent treatment or maltreatment," in turn, "means an act or a failure to act, or the cumulative effects of a pattern of conduct, behavior, or inaction, that evidences a serious disregard of consequences of such magnitude as to constitute a clear and present danger to a child's health, welfare, or safety[.]" *Id.* § 26.44.020(19).

A priest's reporting duties under SB 5375 therefore extend well beyond suspicion of physical or sexual abuse of a minor.[3] For example, if a parent confessed that they were unable to provide their child with "adequate food, clothing, and shelter," this may trigger a duty to report. *See* Wash. Atty. Gen. Legal Op. 1976 No. 77, 1976 WL 168497, *3 (Dec. 21, 1976).[4] Likewise, if a parent confessed that

---

[3] Nationally, in 2022, 62% of children entering foster care did so because of "neglect," compared to 13% for "physical abuse" and 4% for "sexual abuse." U.S. Dep't of Health and Human Servs., Admin. for Children and Families, *The AFCARS Report* 3 (May 9, 2023), https://acf.gov/sites/default/files/documents/cb/afcars-report-30.pdf.

[4] The Legislature later amended the law to clarify that "[p]overty" and "experiencing homelessness" are not "negligent treatment or maltreatment *in and of itself*." Wash. Rev. Code § 26.44.020(19) (emphasis added).

UNITED STATES' MOTION FOR
PRELIMINARY INJUNCTION
Case No. 3:25-cv-5461-DGE
Page 12

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL RIGHTS DIVISION
HOUSING AND CIVIL ENFORCEMENT SECTION
950 Pennsylvania Ave. NW – 4CON
Washington, DC  20530
(202) 598-9726

they failed to obtain emergency medical treatment for her child, a priest may also have a duty to report. *See Brown v. Dep't of Soc. Servs.*, 360 P.3d 875 (Wash. Ct. App. 2015). A parent's confession of illegal drug use might similarly trigger reporting obligations. *See State v. Pressler*, 188 Wash. App. 1031 (Wash. Ct. App. 2015). Yet doing so would inhibit priests from assisting parishioners in these circumstances, such as counseling and referring them to social services agencies. It would also deter many parishioners from going to Confession. Such scenarios were clearly not the focus of SB 5375's enactment, although they would potentially fall within its scope.

      B.      SB 5375 Will Cause Irreparable Harm Absent an Injunction

"It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)); *accord Fellowship of Christian Athletes*, 82 F.4th at 694 ("It is axiomatic that '[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'") (quoting *Roman Catholic Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 19 (2020) (alteration in original)). Thus, to satisfy this element, a plaintiff "need only demonstrate the existence of a colorable First Amendment claim." *Cal. Chamber of Commerce v. Council for Educ. and Research on Toxics*, 29 F.4th 468, 482 (9th Cir. 2022) (quoting *Brown v. Cal. Dep't of Transp.*, 321 F.3d 1217, 1225 (9th Cir. 2003)). In addition, statutes that violate the Equal Protection Clause based on suspect classifications give rise to a presumption of irreparable injury. *See Monterey Mech. Co. v. Wilson*, 125 F.3d 702, 715 (9th Cir. 1997); *Hecox v. Little*, 479 F. Supp. 3d 930, 987 (D. Idaho 2020).

At a minimum, the United States has stated "colorable" claims for violations of fundamental rights under the First and Fourteenth Amendments. *See Cal. Chamber of Commerce*, 29 F.4th at 482. Furthermore, the potential injuries to priests posed by SB 5375, which include violating the sacramental seal of Confession and excommunication from the Catholic church, indisputably lack an adequate legal remedy. *See Ariz. Dream Act Coalition v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014) ("[I]ntangible injuries generally lack an adequate legal remedy" and therefore may "qualify as irreparable harm.")

UNITED STATES' MOTION FOR
PRELIMINARY INJUNCTION
Case No. 3:25-cv-5461-DGE
Page 13

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL RIGHTS DIVISION
HOUSING AND CIVIL ENFORCEMENT SECTION
950 Pennsylvania Ave. NW – 4CON
Washington, DC  20530
(202) 598-9726

(citations and internal quotations omitted).  SB 5375 also poses irreparable injury to parishioners who may be deterred from practicing the sacrament of Confession due to the risk that it may lead to reporting of child abuse or neglect.  Accordingly, the United States has demonstrated irreparable injury absent a preliminary injunction.

      C.      *The Balancing of Equities and the Public Interest Favor an Injunction*

The final two factors for issuing preliminary relief—the balancing of equities and the public interest—merge when the federal government is a party.  *Nken v. Holder*, 556 U.S. 418, 435 (2009); *Fellowship of Christian Athletes*, 82 F.4th at 695.  Here, these factors manifestly favor the United States, because the public has a strong, legitimate interest in ensuring that states uphold their obligations under the Constitution, including its guarantees of equal protection and the free exercise of religion.  *See Melendres*, 695 F.3d at 1002 ("[I]t is always in the public interest to prevent the violation of a party's constitutional rights.") (quoting *Sammartano v. 1st Jud. Cir. Ct.*, 303 F.3d 959, 974 (9th Cir. 2002)); *Poe v. Labrador*, 709 F. Supp. 3d 1169, 1199 (D. Idaho 2023) ("[B]ecause plaintiffs have shown a likelihood that a state law violates the Constitution, they have also established that both the public interest and the balance of equities favors a preliminary injunction").

By contrast, temporarily preserving the confidentiality of Confessional communications pending final resolution of this case would not significantly impact the State's interests.  First, as explained above, the legislative record is devoid of evidence that requiring disclosure of Confessional communications would significantly further the prevention of child abuse and neglect.  Second, the requested injunction would merely preserve the longstanding *status quo* under Washington law, which has not previously required Catholic priests to report suspected child abuse or neglect learned in Confession.  Under these circumstances, courts have generally found that the balancing of equities favors granting the injunction.  *See Fellowship of Christian Athletes*, 82 F.4th at 695 (where a club had existed "for nearly two decades without any objection . . . the record suggests that the harm to the District by the grant of injunctive relief is minimal"); *Doe #1 v. Trump*, 957 F.3d 1050, 1068 (9th Cir.

UNITED STATES' MOTION FOR
PRELIMINARY INJUNCTION
Case No. 3:25-cv-5461-DGE
Page 14

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL RIGHTS DIVISION
HOUSING AND CIVIL ENFORCEMENT SECTION
950 Pennsylvania Ave. NW – 4CON
Washington, DC  20530
(202) 598-9726

2020) ("[T]he public interest lies with maintaining the *status quo*" because "[f]or countless decades" a statutory scheme existed without the provision sought to be enjoined).

## IV. CONCLUSION

For the foregoing reasons, the Court should grant the United States' motion for a preliminary injunction.

Dated: June 25, 2025

        Respectfully submitted,

        HARMEET K. DHILLON
        Assistant Attorney General

        s/ Michael E. Gates
        MICHAEL E. GATES
        Deputy Assistant Attorney General

        s/ Max Lapertosa
        CARRIE PAGNUCCO
        Chief
        AMIE S. MURPHY
        Deputy Chief
        MAX LAPERTOSA
        Trial Attorney
        United States Department of Justice
        Housing and Civil Enforcement Section
        Civil Rights Division
        950 Pennsylvania Avenue NW—4CON
        Washington, DC  20530
        Tel: (202) 598-9726
        Fax: (202) 514-1116
        Max.Lapertosa@usdoj.gov

## CERTIFICATE OF COMPLIANCE WITH WORD COUNT

Pursuant to Local Civil Rule 7(e)(6), I certify that this memorandum contains 4,771 words, in compliance with the Civil Local Rules.

        s/ Max Lapertosa

UNITED STATES' MOTION FOR PRELIMINARY INJUNCTION
Case No. 3:25-cv-5461-DGE
Page 15

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL RIGHTS DIVISION
HOUSING AND CIVIL ENFORCEMENT SECTION
950 Pennsylvania Ave. NW – 4CON
Washington, DC  20530
(202) 598-9726

# APPENDIX A

# STATE PRIVILEGES FOR RELIGIOUS COMMUNICATIONS

| State | Privilege |
|---|---|
| Alabama | Ala. Code § 12-21-166 |
| Alaska | Alaska R. Evid. 506 |
| Arizona | Ariz. Rev. Stat. §§ 12-2233 (civil), 13-4062.3 (criminal) |
| Arkansas | Ark. R. Evid. 505 |
| California | Cal. Evid. Code § 1034 |
| Colorado | Colo. Rev. Stat. § 13-90-107(1)(c) |
| Connecticut | Conn. Gen. Stat. § 52-146b |
| Delaware | Del. R. Evid. 505 |
| District of Columbia | D.C. Code § 14-309 |
| Florida | Fla. Stat. § 90.505 |
| Georgia | Ga. Code Ann. § 24-5-502 |
| Hawaii | Haw. R. Evid. 506 |
| Idaho | Idaho Code § 9-203(3) |
| Illinois | 735 Ill. Comp. Stat. § 5/8-803 |
| Indiana | Ind. Code § 34-46-3-1(3) |
| Iowa | Iowa Code § 622.10.1 |
| Kansas | Kan. Stat. Ann. § 60-429 |
| Kentucky | Ky. R. Evid. 505 |
| Louisiana | La. Stat. Ann art. 511 |
| Maine | Me. R. Evid. 505 |
| Maryland | Md. Code Ann., Cts. & Jud. Proc. § 9-111 |
| Massachusetts | Mass. Gen. Laws ch. 233, § 20A |
| Michigan | Mich. Comp. Laws § 767.5a(2) |
| Minnesota | Minn. Stat. § 595.02.1(c) |
| Mississippi | Miss. Code Ann. § 13-1-22 |
| Missouri | Mo. Ann. Stat. § 491.060(4) |
| Montana | Mont. Code Ann. § 491.060(4) |
| Nebraska | Neb. Rev. Stat. § 27-506 |
| Nevada | Nev. Rev. Stat. § 49.255 |
| New Hampshire | N.H. Rev. Stat. Ann. § 516:35 |
| New Jersey | N.J. Stat. Ann. § 2A:84A-23 |
| New Mexico | N.M. Stat. Ann. R. 11-506 |
| New York | N.Y. C.P.L.R. 4505 |
| North Carolina | N.C. Gen. Stat. § 8-53.2 |
| North Dakota | N.D. R. Evid. 505 |
| Ohio | Ohio Rev. Code Ann. § 2317.02(C) |
| Oklahoma | Okla. Stat. Ann. tit. 12, § 2505 |
| Oregon | Or. Rev. Stat. § 40.260 |

UNITED STATES' MOTION FOR PRELIMINARY INJUNCTION
Case No. 3:25-cv-5461-DGE
Page 16

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL RIGHTS DIVISION
HOUSING AND CIVIL ENFORCEMENT SECTION
950 Pennsylvania Ave. NW – 4CON
Washington, DC  20530
(202) 598-9726

| State | Privilege |
|---|---|
| Pennsylvania | 42 Pa. Cons. Stat. § 5943 |
| Rhode Island | R.I. Gen. Laws § 9-17-23 |
| South Carolina | S.C. Code Ann. § 19-11-90 |
| South Dakota | S.D. Codified Laws § 19-19-505 |
| Tennessee | Tenn. Code Ann. § 24-1-206 |
| Texas | Tex. R. Evid. 505 |
| Utah | Utah R. Evid. 503 |
| Vermont | Vt. Stat. Ann. tit. 12, § 1607 |
| Virginia | Va. Code Ann. § 8.01-400 |
| Washington | Wash. Rev. Code § 5.60.060(3) |
| West Virginia | W. Va. Code § 57-3-9 |
| Wisconsin | Wis. Stat. § 905.06 |
| Wyoming | Wyo. Stat. Ann. § 1-12-101 |

UNITED STATES' MOTION FOR PRELIMINARY INJUNCTION
Case No. 3:25-cv-5461-DGE
Page 17

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL RIGHTS DIVISION
HOUSING AND CIVIL ENFORCEMENT SECTION
950 Pennsylvania Ave. NW – 4CON
Washington, DC  20530
(202) 598-9726