The Honorable David G. Estudillo

# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF WASHINGTON
# AT TACOMA

| | |
|---|---|
| PAUL D. ETIENNE, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>ROBERT W. FERGUSON, in his official capacity as Governor of Washington, et al.,<br><br>Defendants. | No. 3:25-cv-05461-DGE<br><br>[PROPOSED] BRIEF OF *AMICUS CURIAE* BISHOP ROBERT BARRON IN SUPPORT OF PLAINTIFFS' AND UNITED STATES' MOTIONS FOR PRELIMINARY INJUNCTION |

[PROPOSED] BRIEF OF *AMICUS CURIAE* BISHOP ROBERT BARRON
No. 3:25-cv-05461

**LAW OFFICE OF SCHÖEN PARNELL**
19705 Scriber Lake Rd. #102
Lynwood, WA 98036
Tel: (206) 619-2521

## INTEREST OF *AMICUS CURIAE*

The Most Reverend Robert Barron is Bishop of the Diocese of Winona-Rochester (Minnesota) and a prominent national teacher and leader of the Catholic faith through his Word on Fire Catholic Ministries. He is the former Rector of the University of St. Mary of the Lake / Mundelein Seminary and a former Auxiliary Bishop of Archdiocese of Los Angeles. As Auxiliary Bishop in 2019, Bishop Barron advocated against the adoption of California's proposed SB 360, which would have eliminated the clergy-penitent privilege exception from California's mandatory reporting law. Bishop Barron thus has unique insights into how such laws encroach upon sacred seal of Confession in the Catholic Church and threaten the First Amendment rights of all religious believers.

Bishop Barron also is a member of the United States Religious Liberty Commission, established by Executive Order ("EO") 14291 (May 1, 2025) and supported by the U.S. Department of Justice. The EO directs the Commission to "produce a comprehensive report on," among other things, "current threats to domestic religious liberty." EO 14291, Sec. 2(ii). And Commissioners are directed to consider, among other things, the "[s]pecific topic" of "the First Amendment rights of pastors, religious leaders, houses of worship, faith-based institution, and religious speakers." *Id.* at Sec. 2(iii).. Accordingly, Bishop Barron has a designated interest in ensuring the rights of priests and penitents are upheld in courts across the country. And he is well-suited to provide further insights to the Court about the theological underpinnings of the sacrament of Confession and to present the First Amendment's rich tapestry of protections against laws like SB 5375 that directly target a disfavored religious practice for special disabilities.

[PROPOSED] BRIEF OF *AMICUS CURIAE* BISHOP ROBERT BARRON
3:25-cv-05461-DGE -- Page 1 of 13

LAW OFFICE OF SCHÖEN PARNELL
19705 Scriber Lake Rd. #102
Lynwood, WA 98036
Tel: (206) 619-2521

**INTRODUCTION**

It is an axiom of the First Amendment's Free Exercise Clause that government may not "act in a manner that passes judgment upon or presupposes the illegitimacy of religious beliefs and practices." *Masterpiece Cakeshop Ltd. v. Colo. Civ. Rts. Comm'n*, 584 U.S. 617, 638 (2018) (citing *Church of Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520, 534 (1993)). Yet in adopting SB 5375, Washington made little attempt to hide its intolerance for the categorical seal of Confession—openly targeting this religious sacrament for special disabilities under Washington's mandatory reporting law and thereby trampling on our Constitution's promise of religious neutrality.

Few religious practices are more misunderstood than the sacred seal of Confession in the Catholic Church. Proceeding from Christ's words to His apostles ("[Jesus] breathed on them and said, . . . If you forgive anyone's sins, their sins are forgiven") (John 20:22-23), Catholics believe that through this sacramental encounter, a sinner accesses the healing and forgiving grace of Christ. In particular, the priest, Catholics believe, is operating in the very person of Christ, and, therefore, the penitent is speaking to and hearing from the Lord himself.

**Hence, absolutely nothing ought to stand in the way of a sinner who seeks this font of grace**. This gives rise to the indispensable importance of the seal: If a penitent is aware the priest might (let alone *must*) share with others what was given in the most sacred confidence, he or she would be reluctant indeed to ever approach Confession. The U.S. Court of Appeals for the Ninth Circuit has already recognized the same: "The sinner will not confess, nor will the priest receive his confession, if the veil of secrecy is removed." *Mockaitis v. Harcleroad*, 104 F.3d 1522, 1532 (9th Cir. 1997) (quoting *People v. Phillips*, N.Y.Ct.Gen.Sess. (1813)), *overruling on other grounds recognized by United States v. Burgess*, No. 15-30261, 2022 WL 3700844, at *1 (9th

[PROPOSED] BRIEF OF *AMICUS CURIAE* BISHOP ROBERT BARRON
3:25-cv-05461-DGE -- Page 2 of 13

LAW OFFICE OF SCHÖEN PARNELL
19705 Scriber Lake Rd. #102
Lynwood, WA 98036
Tel: (206) 619-2521

Cir. 2022) (unpublished). Unsurprisingly, therefore, "the history of the nation has shown uniform respect for the character of sacramental confession as inviolable by government agents . . . ." *Id.*

But SB 5375 is manifestly premised on a *disrespect* for the confessional seal in derogation of this venerable tradition—and thus of the First Amendment's bedrock protections against religious intolerance. This is clear from both the text of the statute and its background circumstances.

As to the text, while Washington's reporting requirement for supervisors generally *exempts* communications covered by Washington's evidentiary privileges—including for spousal, attorney-client, and clergy-penitent privileges—SB 5375 stunningly removes this exception solely for "members of the clergy." *See* SB 5375 (May 5, 2025), Sec. 2, RCW 26.44.030(1)(b) ("Except for members of the clergy, no one shall be required to report under this section when he or she obtains the information solely as a result of a privileged communication as provided in RCW 5.60.060.") (Underline in original.) Such overt religious discrimination easily raises "suspicion" that *all* of SB 5375's intrusions into the confessional "stem from animosity to religion or distrust of its practices" and thus triggers strict scrutiny. *Masterpiece*, 584 U.S. at 638-39.

SB 5375's background "circumstances" reveal the same defect. *Lukumi*, 508 U.S. at 534. From SB 5375's intentional omission of a clergy-penitent exception present in earlier versions of the bill,[1] to the sponsoring senator's multiple disparagements of Confession as the basis for refusing to "compromise" (including her closing floor debate statement that "[i]f religious doctrine puts members of clergy at odds with state law . . .[,] it is on that religious community to

---

[1] Wash. Senate Human Servs. Cmte. Hrg. (Jan 28, 2025), at 01:06:59-01:07:56, https://tvw.org/video/senate-human-services-2025011502/?eventID=2025011502; *see, e.g.*, HB 1098 (2023), at Sec. 2, RCW 26.440.030(g)(i), https://lawfilesext.leg.wa.gov/biennium/2023-24/Pdf/Bills/House%20Bills/1098.pdf?q=20230209143818/

[PROPOSED] BRIEF OF *AMICUS CURIAE* BISHOP ROBERT BARRON
3:25-cv-05461-DGE -- Page 3 of 13

LAW OFFICE OF SCHÖEN PARNELL
19705 Scriber Lake Rd. #102
Lynwood, WA 98036
Tel: (206) 619-2521

change their rules"),[2] SB 5375's underlying premise is, in essential part, that the confessional seal is "something insubstantial and even insincere." *Masterpiece*, 584 U.S. at 635. The First Amendment makes no room for such disparaging judgments. *See id.* at 639.

Justice O'Connor once opined that "few States would be so naïve as to enact a law directly . . . burdening a religious practice as such," *Employment Div, Dep't of Human Res. of Oregon v. Smith*, 494 U.S. 872, 894 (1990) (O'Connor, J., concurring). But Washington hardly played coy with SB 5375. Accordingly, SB 5375's intentional application to the seal of Confession must at minimum survive the strict scrutiny required of non-neutral burdens on religious exercise, which it easily fails for the reasons well-explained by Plaintiffs. *See* ECF No. 65 at 14-16. This Court should thus grant Plaintiffs' and the United States' motions for preliminary injunction. *See generally id.*

## DISCUSSION

**I.     SB 5375's Targeting of Confession Violates Religious Neutrality.**

The Supreme Court has long recognized that "[a] government policy will not qualify as neutral if it is 'specifically directed at . . . religious practice.'" *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 526 (2022) (quoting *Smith*, 494 U.S. at 878 (alteration in original)). And "[a] policy can fail this test if it 'discriminate[s] on its face,' or if a religious exercise is otherwise its 'object.'" *Id.* (quoting *Lukumi*, 508 U.S. at 533). SB 5375 contains both defects.

**A.  Facial discrimination.**

"[T]he minimum requirement of neutrality is that a law not discriminate on its face." *Lukumi*, 508 U.S. at 533. This means "[t]he Free Exercise Clause . . . subjects to the strictest

---

[2] Wash. Senate Floor Debate (Feb. 28, 2025), at 01:36:45, https://tvw.org/video/senate-floor-debate-february-28-2025021484/?eventID=2025021484.

[PROPOSED] BRIEF OF *AMICUS CURIAE* BISHOP ROBERT BARRON
3:25-cv-05461-DGE -- Page 4 of 13

LAW OFFICE OF SCHÖEN PARNELL
19705 Scriber Lake Rd. #102
Lynwood, WA 98036
Tel: (206) 619-2521

scrutiny laws that target the religious for 'special disabilities' based on their 'religious status.'" *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. 449, 458 (2017) (quoting *Lukumi*, 508 U.S. at 533). And, to be sure, "[s]tatus-based discrimination remains status based even if one of its goals or effects is" purportedly benign. *Espinoza v. Montana Dep't of Rev.*, 591 U.S. 464, 478 (2020).

SB 5375 expressly targets the confessional seal based on religious status. As noted, the very face of the statute excises "members of the clergy" (and *only* members of the clergy) from an otherwise existing exemption for privileged communications to Washington's mandatory reporting requirement for supervisors. *See* RCW 26.44.030(1)(b). Thus, while spouses, attorneys, "peer supporters," and "sexual assault advocates" (to name several) need not report otherwise covered information learned in their capacity as supervisors, *see id.* (citing RCW 5.60.060), "*members of the clergy*" must now report covered confidential confessions—despite the explicit evidentiary privilege for information received in a "confession or sacred confidence." RCW 5.60.060(3). In other words, SB 5375 "imposes a penalty on the free exercise of religion" based "solely" (and explicitly) on the "religious character" of clergy members, precisely because of their professional status as clergy. *Espinoza*, 591 U.S. at 475 (internal quotations omitted). Such "singl[ing] out" for "especially harsh treatment" quintessentially violates facial neutrality. *Roman Catholic Dioc. of Brooklyn v. Cuomo*, 592 U.S. 14, 17 (2020).

The facial targeting is all the more clear from subsection (1)(b)'s proviso that "[n]othing in this subsection . . . shall limit a person's duty to report under (a) of this subsection." In other words, the evidentiary privileges exception *already did not apply* where a person covered by that exception is also a mandatory reporter under subsection (1)(a). Here, Washington added "member of the clergy" to the mandatory reporter list in subsection (1)(a), *see infra*, and yet it *still* explicitly

[PROPOSED] BRIEF OF *AMICUS CURIAE* BISHOP ROBERT BARRON
3:25-cv-05461-DGE -- Page 5 of 13

LAW OFFICE OF SCHÖEN PARNELL
19705 Scriber Lake Rd. #102
Lynwood, WA 98036
Tel: (206) 619-2521

removed "members of the clergy" from the evidentiary privileges exception in subsection (1)(b). That amendment to subsection (1)(b) was entirely gratuitous—and further confirms SB 5375's blatant facial targeting of the seal of Confession.

SB 5375's express targeting undermines its religious neutrality more broadly. Specifically, while SB 5375 also adds "member[s] of the clergy" to a pre-existing list of mandatory reporters in subsection (1)(a) without mentioning the clergy-penitent privilege, the "Free Exercise Clause bars even 'subtle departures from neutrality' on matters of religion." *Masterpiece*, 584 U.S. at 638 (quoting *Lukumi*, 508 U.S. at 534). Indeed, the Supreme Court has made clear that a law burdening religious exercise must undergo heightened scrutiny "upon even *slight* suspicion" that it "stems from animosity to religion or distrust of its practices." *Id.* at 638-39 (emphasis added). Here, SB 5375's explicit repeal of clergy-penitent exemption to the supervisor reporting requirement in subsection (1)(b) raises glaring "suspicion" that its amendment to subsection (1)(a) without an exception for the clergy-penitent privilege similarly lacks religious neutrality.

The applicable state-law legal framework provides telling context. The Washington Supreme Court has held that RCW § 26.44.030's mandatory reporting requirements generally "trump" Washington's evidentiary privileges statutes. *See State v. Warner*, 125 Wash.2d 876, 889 P.2d 479 (1995). This Court has accordingly acknowledged the same. *See Hyder v. Glebe*, No. C13-5424 RBL-KLS, 2014 WL 229331, at *7 (W.D. Wash. Jan. 17, 2014) ("*Warner* recognized the existence of statutory privileges" but "simply held that the mandatory reporting requirement of RCW 26.44.030 'trumps' any such privilege") (internal quotations omitted).

Thus, SB 5375's addition of "member[s] of the clergy" to the mandatory reporting requirement of RCW § 26.44.030(1)(a), without any exception for communications protected by

[PROPOSED] BRIEF OF *AMICUS CURIAE* BISHOP ROBERT BARRON
3:25-cv-05461-DGE -- Page 6 of 13

LAW OFFICE OF SCHÖEN PARNELL
19705 Scriber Lake Rd. #102
Lynwood, WA 98036
Tel: (206) 619-2521

the clergy-penitent privilege, directly burdens the seal of Confession under Washington's pre-existing legal framework. While subsection (1)(a) doesn't say anything about the clergy-penitent privilege, subsection (1)(b)'s express *removal* of that privilege from the supervisor reporting requirement casts significant doubt on the neutrality of adding "member[s] of the clergy" to subsection (1)(a), as applied to the seal of Confession. *Accord Lukumi*, 508 U.S. at 534-35 (finding the words "sacrifice" and "ritual" in the challenged ordinance evinced a lack of neutrality where the ordinance's separate recitals expressly revealed a discriminatory purpose).

Therefore, SB 5375's text alone demonstrates its "target[ing]" of "religious conduct for distinctive treatment." *Lukumi*, 508 U.S. at 546. Its application to the seal of Confession accordingly must undergo "the strictest scrutiny," *Trinity Lutheran*, 582 U.S. at 458 (internal quotations omitted), and this is not one of the "rare cases" in which it survives, *Lukumi*, 508 U.S. at 546. *See* ECF No. 65 at 14-16; *cf. Free Speech Coal., Inc. v. Paxton*, No. 23-1122, 2025 WL 1773625, at *11 (U.S. June 27, 2025) (noting that "[i]n the First Amendment context," the Supreme Court has "only once" held that a law survived strict scrutiny).

**B. Discriminatory purpose.**

Because the "Free Exercise Clause protects against governmental hostility which is masked, as well as overt," courts also "must survey meticulously the circumstances of governmental categories to eliminate, as it were, religious gerrymanders." *Lukumi*, 508 U.S. at 534 (internal quotations omitted). Relevant circumstances include "the specific series of events leading to the enactment or official policy in question, and the legislative [ ] history, including contemporaneous statements made by members of the decisionmaking body." *Masterpiece*, 584 U.S. at 638. To be sure, *Masterpiece* noted prior disagreement on the Supreme Court about "whether statements made by lawmakers may properly be taken into account." *Id.* at 636. More

[PROPOSED] BRIEF OF *AMICUS CURIAE* BISHOP ROBERT BARRON
3:25-cv-05461-DGE -- Page 7 of 13

LAW OFFICE OF SCHÖEN PARNELL
19705 Scriber Lake Rd. #102
Lynwood, WA 98036
Tel: (206) 619-2521

recently, however, the Court clarified that a "plaintiff may also prove a free exercise violation by showing that 'official expressions of hostility' to religion accompany *laws* or policies burdening religious exercise." *Kennedy*, 597 U.S. at 525 (emphasis added) (quoting *Masterpiece*, 584 U.S. at 639). Thus, legislators' expressions of hostility are indeed apposite here.

Regarding the events leading to SB 5375's adoption, the bill's development across three legislative sessions confirms the final product's lack of neutrality. The 2023 version would have added a subsection making clergy mandatory reporters while expressly exempting information "obtained solely as a result of a confession made pursuant to the clergy-penitent privilege as provided in RCW 5.60.060(3)."[3] The 2024 version contained a similar subsection but with a duty to warn of "imminent risk of" child abuse or neglect if based on "information obtained in part as a result of a penitential communication."[4] But that bill "fell apart" after legislators learned the Washington Attorney General had opened an "investigat[ion]" into "three separate archdioceses [sic] of the Catholic Church."[5] In reality, the investigation by then-Attorney General, and now-Governor, Bob Ferguson was over whether the Catholic dioceses used "charitable funds to cover up allegations of child sex abuse by clergy,"[6] and it has since been stymied in court.[7] Nonetheless,

---

[3] House Bill 1098 (2023), Sec. 2, RCW 26.44.030(1)(g)(i), https://lawfilesext.leg.wa.gov/biennium/2023-24/Pdf/Bills/House%20Bills/1098.pdf?q=20230209143818.

[4] Senate Bill 6298 (2024), Sec. 2, RCW 36.44.030(g)(i), (vi), https://lawfilesext.leg.wa.gov/biennium/2023-24/Pdf/Bills/Senate%20Bills/6298.pdf?q=20250630093015; *see also* Jerry Cornfield, "Washington Senate strikes 'delicate' balance on rules for clergy reporting child abuse," Washington State Standard, Feb. 8, 2024, https://washingtonstatestandard.com/2024/02/08/washington-senate-strikes-delicate-balance-on-rules-for-clergy-reporting-child-abuse/.

[5] Wash. Senate Human Servs. Cmte. Hrg. (Jan 28, 2025), at 01:07:01, *supra* n.1; *see also* SB 6298 – 2023-24, https://app.leg.wa.gov/billsummary?BillNumber=6298&Initiative=false&Year=2023.

[6] Office of Attorney General, "Attorney General Ferguson announces investigation," May 9, 2024, https://www.atg.wa.gov/news/news-releases/attorney-general-ferguson-announces-investigation-catholic-church-s-handling.

[7] Gene Johnson, "Judge rejects effort by WA AG's office to get records from Catholic Church," Fox 13 Seattle, July 13, 2024, https://www.fox13seattle.com/news/judge-rejects-effort-wa-ags-office-get-records-from-catholic-church.

[PROPOSED] BRIEF OF *AMICUS CURIAE* BISHOP ROBERT BARRON
3:25-cv-05461-DGE -- Page 8 of 13

LAW OFFICE OF SCHÖEN PARNELL
19705 Scriber Lake Rd. #102
Lynwood, WA 98036
Tel: (206) 619-2521

Senator Frame explained that because of that investigation and the 2024 bill's ultimate demise, "I don't feel like I can make a compromise [on the confessional seal] anymore."[8]

In other words, the Washington Legislature advanced SB 5375 without an exemption for the clergy-penitent privilege precisely because of the "three separate archdioceses [sic] of the Catholic Church."[9] The Supreme Court rejected similarly open hostility in *Lukumi*, where the city outlawed the practice of Santeria animal sacrifices while exempting numerous forms of other animal killings, and where "it [could not] be maintained" that "city officials had in mind a religion other than Santeria." 508 U.S. at 535. While Senator Frame said SB 5375's prior iterations were in response to a report by Investigate West regarding the Jehovah's Witnesses,[10] it simply "cannot be maintained" that Washington legislators "had in mind a religion other than" the Catholic Church in removing *the clergy-penitent exception* from the final bill. *See id*.

Additionally, Senator Frame's official statements regarding Confession remove any doubt. During the Senate Human Services Committee Hearing in January, she equated support for a clergy-penitent exception to the belief that "religious freedom [is] more important than preventing the . . . sexual abuse of children," and that it is "traumatizing" to promote the same.[11] It goes without saying that characterizing proponents of the time-honored seal of Confession as thereby supporting child sexual abuse "is inappropriate" for a Legislature "charged with the solemn responsibility of fair and neutral" adoption of Washington's laws. *Masterpiece*, 584 U.S. at 635 (saying same of commissioner's "compar[ing] Phillips' invocation of his sincerely held

---

[8] Wash. Senate Human Servs. Cmte. Hrg. (Jan 28, 2025), at 01:07:01-07:58, *supra* n.1.
[9] *See supra* n.5.
[10] *Ibid*. at 01:06:23-06:53; *see also* https://www.investigatewest.org/investigatewest-reports/jehovahs-witnesses-covered-up-child-sexual-abuse-in-washington-state-for-decades-lawsuit-alleges-17692697.
[11] *Ibid*. at 01:07:16; 01:43:54-44:14.

| [PROPOSED] BRIEF OF *AMICUS CURIAE* BISHOP ROBERT BARRON 3:25-cv-05461-DGE -- Page 9 of 13 | LAW OFFICE OF SCHÖEN PARNELL 19705 Scriber Lake Rd. #102 Lynwood, WA 98036 Tel: (206) 619-2521 |
|---|---|

religious beliefs to defenses of slavery and the Holocaust" despite duty to fairly enforce Colorado law).

During the Senate Floor Debate on February 28, Senator Frame stated that any exception for the clergy-penitent privilege would create a "*loophole* that would allow the *coverup* of the abuse and neglect of children."[12] But to characterize the seal of Confession as a "coverup" is plainly "disparag[ing]" to those who sincerely believe in the sacred inviolability of Confession and is "neither tolerant nor respectful of [t]his religious belief[]." *Masterpiece*, 584 U.S. at 635, 639. And, as noted, Senator Frame's closing remark that "[i]f religious doctrine put members of clergy at odds with state law . . . , it is on that religious community to change their rules,"[13] likewise "disparages" religion by presuming belief in the seal of Confession to be "insubstantial" or "insincere." *Id.* at 635. And it is blackletter law that the First Amendment protects religious practice even if not "acceptable" or "comprehensible to others"—including lawmakers. *Thomas v. Rev. Bd. of Indiana Emp. Sec. Div.*, 450 U.S. 707, 714 (1981).

That Senator Frame made her comments as SB 5375's lead sponsor is significant. The Supreme Court has previously recognized that "a statement of one of the legislation's sponsors . . . deserves to be accorded substantial weight in interpreting the statute." *Fed. Energy Admin. v. Algonquin SNG, Inc.*, 426 U.S. 548, 564 (1976). *See also State v. Evans*, 177 Wash.2d 186, 192 (2013) ("The purpose of statutory interpretation is to . . . give effect to the *intent* of the legislature.") (Emphasis added.)  Further, the vast majority of senators "show[ed] no objection to these comments." *Masterpiece*, 584 U.S. at 636.

---

[12] *See supra* n.2, at 01:19:30 (emphasis added); *see also id.* at 01:13:30—01:16:10 (remarks by Sens. Christiansen and Frame regarding Amendment #71 protecting the confessional seal except "to prevent reasonably certain death or substantial bodily harm"); *see* Amendment #71, https://lawfilesext.leg.wa.gov/biennium/2025-26/Pdf/Amendments/Senate/5375%20AMS%20CHRI%20S1972.3.pdf.

[13] *See supra.* n.2

| [PROPOSED] BRIEF OF *AMICUS CURIAE* BISHOP ROBERT BARRON 3:25-cv-05461-DGE -- Page 10 of 13 | **LAW OFFICE OF SCHÖEN PARNELL** 19705 Scriber Lake Rd. #102 Lynwood, WA 98036 Tel: (206) 619-2521 |
|---|---|

   Senator Frame's disparaging words also reflected the greater weight of testimony to the Senate Human Resources Committee in support of SB 5375. *See* Senate Bill Rep., Senate Cmte. on Human Servs., SB 5375, at 3-4 (As Passed Senate, Feb. 28, 2025).[14] Testimony to the House Early Learning & Human Services Committee struck a similar note. *See* House Bill Rep., House Cmte. on Early Learning & Human Servs., SB 5375 at 3-5 (As Passed House, April 11, 2025).[15] Notably, the Washington Supreme Court has relied on such witness testimony in discerning a law's ultimate intent—including comments by the "[t]he initial proponent of the bill." *See Evans*, 177 Wash.2d at 201-202. And members of the U.S. Supreme Court have cited similar evidence in finding a violation of religious neutrality. *See Lukumi*, 508 U.S. at 540-42 (plurality) (relying on "evidence [of] significant hostility exhibited by residents, members of the city council, and other city officials toward the Santeria religion and its practice of animal sacrifice"). The public hostility towards the seal of Confession manifested in these comments is simply inescapable.

   At minimum, SB 5375's background circumstances confirm its purpose to target the seal of Confession for special disfavor. By intentionally removing an exception for the clergy-penitent privilege contained in prior versions of the bill—and doing so because of "the three archdioceses [sic] of the Catholic Church"—the record evinces an anti-religious hostility "odious to our Constitution." *Trinity Lutheran*, 582 U.S. at 467.

   So significant are the First Amendment's safeguards against anti-religious intolerance by government that the Supreme Court has said "in cases like [this,] we have 'set aside' such policies

---

[14] https://lawfilesext.leg.wa.gov/biennium/2025-26/Pdf/Bill%20Reports/Senate/5375%20SBR%20APS%2025.pdf?q=20250630112753.

[15] https://lawfilesext.leg.wa.gov/biennium/2025-26/Pdf/Bill%20Reports/House/5375%20HBR%20APH%2025.pdf?q=20250630113518.

[PROPOSED] BRIEF OF *AMICUS CURIAE* BISHOP ROBERT BARRON
3:25-cv-05461-DGE -- Page 11 of 13

**LAW OFFICE OF SCHÖEN PARNELL**
19705 Scriber Lake Rd. #102
Lynwood, WA 98036
Tel: (206) 619-2521

without further inquiry." *Kennedy*, 597 U.S. at 525 (quoting *Masterpiece*, 584 U.S. at 625). This Court should do the same with respect to SB 5375's intrusion into the seal of Confession.

## CONCLUSION

Respect in the law for the confessional seal is of a piece with James Madison's timeless recognition that "man's 'duty towards the Creator . . . is precedent, both in order of time and in degree of obligation, to the claims of Civil Society.'" *Catholic Charities Bureau, Inc. v. Wisc. Labor & Indus. Rev. Comm'n*, 145 S. Ct. 1583, 1597 (2025) (Thomas, J., concurring) (quoting Memorial and Remonstrance Against Religious Assessments (1785)). Our Founders understood that man and woman's prior duty to God is, as a general rule, not in conflict with the good of society—but constitutive of it. Hence, the First Amendment's promise of religious neutrality against the imposition of special disabilities by the State—particularly those premised on a disparaging view of the burdened religious practice. SB 5375's text and context squarely violate these principles. This Court should accordingly grant Plaintiffs' and the United States' motions for preliminary injunction.

Respectfully submitted,

/s/ Schöen Parnell
Schöen Parnell, WSBA No. 32450
Law Office of Schoen Parnell
19705 Scriber Lake Rd, Suite 102
Lynnwood, WA 98036
Tel: (425) 744-1500
schoen@parnelldefense.com

Peter Breen*
Michael G. McHale*
THOMAS MORE SOCIETY
309 W. Washington St., Ste. 1250
Chicago, IL 60606
(312) 782-1680
pbreen@thomasmoresociety.org
mmchale@thomasmoresociety.org
*pro hac vice forthcoming

[PROPOSED] BRIEF OF *AMICUS CURIAE* BISHOP ROBERT BARRON
3:25-cv-05461-DGE -- Page 12 of 13

LAW OFFICE OF SCHÖEN PARNELL
19705 Scriber Lake Rd. #102
Lynwood, WA 98036
Tel: (206) 619-2521

*Attorneys for Amicus Curiae*

Dated: July 4, 2025.

## CERTIFICATE OF SERVICE

I hereby certify that on July 4, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to those attorneys of record registered on the CM/ECF system.

DATED this <u>4th</u> day of July, 2025

<u>/s/ Schöen Parnell</u>
Schöen Parnell

[PROPOSED] BRIEF OF *AMICUS CURIAE* BISHOP ROBERT BARRON
3:25-cv-05461-DGE -- Page 13 of 13

LAW OFFICE OF SCHÖEN PARNELL
19705 Scriber Lake Rd. #102
Lynwood, WA 98036
Tel: (206) 619-2521