The Honorable Chief Judge David G. Estudillo

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| PAUL D. ETIENNE, et al.,<br><br>         Plaintiffs,<br><br>    v.<br><br>ROBERT W. FERGUSON, et al.,<br><br>         Defendants. | NO. 3:25-cv-05461-DGE<br><br>**PLAINTIFFS' REPLY IN FURTHER SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**<br><br>NOTE ON MOTION CALENDAR:<br>July 14, 2025 at 10:00 a.m. |

PLAINTIFFS' REPLY ISO MOTION
FOR PRELIMINARY INJUNCTION
No. 3:25-cv-05461-DGE

- i -

CROWLEY LAW OFFICES, P.S.
600 University Street, Suite 1708 • Seattle, WA 98101
(206) 209-0456
www.crowleylawoffices.com

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................. 1

ARGUMENT .................................................................................................................... 2

    I.    Plaintiffs Have Standing to Challenge SB 5375 ..................................................... 2

        A.    Plaintiffs Intend to Engage in Conduct Affected with Constitutional Interest............................................................................................................. 3

        B.    Plaintiffs' Intended Conduct Is Proscribed by SB 5375 ............................ 4

        C.    The Threat of Enforcement Is Substantial ................................................. 4

    II.    Plaintiffs Are Likely to Succeed on the Merits of Their Religious Liberty Claims .................................................................................................................... 5

        A.    RCW § 26.44.030, as Amended by SB 5375, Impairs Plaintiffs' Free Exercise of Religion (First Cause) .............................................................. 5

            1.    RCW § 26.44.030, as Amended by SB 5375, Is not Generally Applicable ................................................................................... 5

            2.    RCW § 26.44.030, as Amended by SB 5375, Is not Neutral ........... 7

            3.    RCW § 26.44.030, as Amended by SB 5375, Does not Satisfy Strict Scrutiny as Applied to Roman Catholic Confession ............. 8

        B.    RCW § 26.44.030, as Amended by SB 5375, Violates Church Autonomy (Fourth Cause) ........................................................................ 9

            1.    SB 5375 Intrudes on Church Discipline ........................................ 9

            2.    SB 5375 Intrudes on Church Governance ..................................... 9

        C.    RCW § 26.44.030, as Amended by SB 5375, Commandeers Religious Practice (Sixth Cause) ................................................................................ 10

    III.    The Remaining Preliminary Injunction Factors Weigh in Favor of Injunctive Relief .................................................................................................................... 11

PLAINTIFFS' REPLY ISO MOTION
FOR PRELIMINARY INJUNCTION
No. 3:25-cv-05461-DGE

- ii -

CROWLEY LAW OFFICES, P.S.
600 University Street, Suite 1708 • Seattle, WA 98101
(206) 209-0456
www.crowleylawoffices.com

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*,
  508 U.S. 520 (1993)..................................................................................................8

*Cuviello v. City of Vallejo*,
  944 F.3d 816 (9th Cir. 2019) ....................................................................................11

*Fellowship of Christian Athletes v. San Jose Unified School District Board of Education*, 82 F.4th 664 (9th Cir. 2023)..............................................................12

*Firewalker-Fields v. Lee*,
  58 F.4th 104 (4th Cir. 2023) .....................................................................................10

*Guam v. Guerrero*,
  290 F.3d 1210 (9th Cir. 2002) ..................................................................................12

*Hilsenrath v. School District of Chathams*,
  136 F.4th 484 (3d Cir. 2025) ....................................................................................10

*Italian Colors Restaurant v. Becerra*,
  878 F.3d 1165 (9th Cir. 2018) ....................................................................................2

*Kedroff v. Saint Nicholas Cathedral*,
  344 U.S. 94 (1952)......................................................................................................9

*Kennedy v. Bremerton School District*,
  597 U.S. 507 (2022)..................................................................................................10

*Mahmoud v. Taylor*,
  No. 24-297, 2025 WL 1773627 (U.S. June 27, 2025)................................................2

*Maryland v. King*,
  567 U.S. 1301 (2012)................................................................................................12

*Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Commission*,
  584 U.S. 617 (2018)....................................................................................................8

*Matsumoto v. Labrador*,
  122 F.4th 787 (9th Cir. 2024) .....................................................................................4

*NetChoice, LLC v. Bonta*,
  692 F. Supp. 3d 924 (N.D. Cal. 2023) .....................................................................12

*Our Lady of Guadalupe School v. Morrissey-Berru*,
  591 U.S. 732 (2020)...............................................................................................9, 10

PLAINTIFFS' REPLY ISO MOTION
FOR PRELIMINARY INJUNCTION
No. 3:25-cv-05461-DGE

- iii -

CROWLEY LAW OFFICES, P.S.
600 University Street, Suite 1708 • Seattle, WA 98101
(206) 209-0456
www.crowleylawoffices.com

*Pacific Gas & Electric Co. v. State Energy Resources Conservation &*
    *Development Commission*, 461 U.S. 190 (1983) ................................................................ 11

*Peace Ranch, LLC v. Bonta*,
    93 F.4th 482 (9th Cir. 2024) ........................................................................................... 3

*People v. Philips*,
    Ct. of Gen. Sessions, City of N.Y. (June 14, 1813) ........................................................ 9

*Rodriguez-Vélez v. Pierluisi-Urrutia*,
    2021 WL 5072017 (D.P.R. Nov. 1, 2021) ..................................................................... 12

*Roman Catholic Diocese of Brooklyn v. Cuomo*,
    592 U.S. 14 (2020) ........................................................................................................... 8

*Seattle Pacific University v. Ferguson*,
    104 F.4th 50 (9th Cir. 2024) ................................................................................... 1, 3, 4

*Serbian E. Orthodox Diocese v. Milivojevich*,
    426 U.S. 696 (1976) ......................................................................................................... 9

*Shurtleff v. City of Boston*,
    596 U.S. 243 (2022) ....................................................................................................... 10

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014) ................................................................................................ 1, 2, 4

*Tandon v. Newsom*,
    593 U.S. 61 (2021) ................................................................................................. 5, 6, 8

*Tingley v. Ferguson*,
    47 F.4th 1055 (9th Cir. 2022) ......................................................................................... 4

*Union Gospel Mission of Yakima Washington v. Ferguson*,
    2024 WL 3755954 (9th Cir. Aug. 12, 2024) .......................................................... 1, 3, 4

*Watson v. Jones*,
    80 U.S. 679 (13 Wall.) (1872) ........................................................................................ 9

**STATUTES, RULES, AND REGULATIONS**

42 U.S.C. § 2000bb *et seq.* ........................................................................................................ 12

Okla. Stat. Ann. § 51-253 ........................................................................................................ 12

R.I. Gen. Laws § 42-80.1-3 ...................................................................................................... 12

RCW § 26.44.020 ........................................................................................................................ 6

RCW § 26.44.030 ............................................................................................................. *passim*

PLAINTIFFS' REPLY ISO MOTION
FOR PRELIMINARY INJUNCTION
No. 3:25-cv-05461-DGE

- iv -

CROWLEY LAW OFFICES, P.S.
600 University Street, Suite 1708 • Seattle, WA 98101
(206) 209-0456
www.crowleylawoffices.com

Tenn. Code Ann. § 4-1-407 ...........................................................................................................12

Tex. Civ. Prac. & Rem. Code Ann. § 110.003 ............................................................................12

U.S. Const. amend. V....................................................................................................................11

Wash. Const. Art. I, § 9.................................................................................................................11

W.V. Code § 35-1A-1....................................................................................................................12

**OTHER AUTHORITIES**

Code of Canon Law cc.978 § 2.......................................................................................................9

Code of Canon Law cc.983 § 1.......................................................................................................3

Michael W. McConnell, *Establishment and Disestablishment at the Founding,
    Part I: Establishment of Religion*, 44 Wm. & Mary L. Rev. 2105 (2003) ........................10

SB 5375, 2025 Wash. Sess. Laws ch. 197 ............................................................................ *passim*

Sub. H.B. 1171, 2025 Wash. Sess. Laws ch. 192, § 2....................................................................6

PLAINTIFFS' REPLY ISO MOTION
FOR PRELIMINARY INJUNCTION
No. 3:25-cv-05461-DGE

- v -

CROWLEY LAW OFFICES, P.S.
600 University Street, Suite 1708 • Seattle, WA 98101
(206) 209-0456
www.crowleylawoffices.com

# INTRODUCTION

Plaintiffs do not, as a general matter, object to Washington's new designation of clergy as mandatory reporters of child abuse and neglect. The Roman Catholic Church in Washington has long had policies requiring reporting that is, in most respects, more robust than what Washington requires. What Plaintiffs challenge is the new legal obligation to violate the sacramental seal and report information learned only in the Sacrament of Confession. The very first known religious liberty case in our nation's history protected a priest from having to violate the sacramental seal. Defendants incorrectly contend that "several" states now require reporting by clergy even as to information learned in the confessional, *see infra* at III, and, in any event, fail to identify a single court in the nation's history that has countenanced such an intrusion upon the sacramental seal. Defendants ask this Court to be the first. But their arguments in favor of such an extraordinary ruling are without merit.

*First*, Plaintiffs have established standing under the Supreme Court's test in *Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014). As the Ninth Circuit recently recognized, Plaintiffs' declarations that they, in administering the Sacrament of Confession, will disregard SB 5375's mandatory reporting requirement in favor of the Church's centuries-old teachings about the sacramental seal clearly establishes an "intention" to engage in constitutionally protected conduct that violates the challenged law. *See Seattle Pac. Univ. v. Ferguson*, 104 F.4th 50 (9th Cir. 2024) ("*SPU*"); *Union Gospel Mission of Yakima Wash. v. Ferguson*, 2024 WL 3755954 (9th Cir. Aug. 12, 2024) ("*YUGM*"). And Defendants' claim that Plaintiffs cannot show a substantial threat of enforcement is irreconcilable with Defendants' refusal to disavow enforcement and their insistence that invading the sacramental seal serves compelling public interests. Consequently, this case presents precisely the type of "circumstance[] under which plaintiffs may bring a preenforcement challenge consistent with Article III" of the Constitution. *Driehaus*, 573 U.S. at 159.

*Second*, nothing in Defendants' Opposition suggests Plaintiffs are not likely to succeed on the merits of the three causes of action argued in their Motion. Defendants' argument that SB

PLAINTIFFS' REPLY ISO MOTION
FOR PRELIMINARY INJUNCTION
No. 3:25-cv-05461-DGE

- 1 -

CROWLEY LAW OFFICES, P.S.
600 University Street, Suite 1708 • Seattle, WA 98101
(206) 209-0456
www.crowleylawoffices.com

5375 is generally applicable and neutral fundamentally misconstrues Supreme Court precedent. A law is not generally applicable because it treats religious *persons* comparably to secular persons. The law must treat religious *activity* comparably to secular *activity*. But SB 5375 treats reporting of information learned in the confidence of the Sacrament of Confession differently to the reporting of information learned in secular confidences. Defendants' argument that SB 5375 does not "use the [Catholic Church] to carry out civil functions" ignores reality: SB 5375 presses priests into the service of the state in violation of the Establishment Clause by commandeering an exclusively religious activity in service of the State's police power. Finally, SB 5375 violates church autonomy by purporting to rewrite the doctrinal rules governing the administration of the Sacrament of Confession, namely the requirement of confidentiality.

For these reasons, and those set forth below and in Plaintiffs' Motion, Plaintiffs are entitled to a preliminary injunction.

## ARGUMENT

### I.  Plaintiffs Have Standing to Challenge SB 5375

Defendants challenge only the presence of standing's injury-in-fact prong, which, in the pre-enforcement context, requires: (1) "an intention to engage in a course of conduct arguably affected with a constitutional interest," (2) that the conduct is "arguably ... proscribed by" the challenged law, and (3) that the threat of future enforcement is "substantial." *Driehaus*, 573 U.S. at 161-62. "[W]hen the threatened enforcement effort implicates First Amendment rights, the standing inquiry tilts dramatically toward a finding of standing." *Italian Colors Rest. v. Becerra*, 878 F.3d 1165, 1172 (9th Cir. 2018) (cleaned up); *Mahmoud v. Taylor*, No. 24-297, 2025 WL 1773627, at *4 (U.S. June 27, 2025) ("[W]hen a deprivation of First Amendment rights is at stake, a plaintiff need not wait for the damage to occur before filing suit."). Ripeness "coincides squarely with," and may therefore be analyzed alongside, "standing's injury in fact prong." Opp'n 8.[1]

---

[1] To be clear, Plaintiffs have satisfied both the *Driehaus* factors and the Ninth Circuit's slightly different formulation of those factors in *Bonta*.

PLAINTIFFS' REPLY ISO MOTION  
FOR PRELIMINARY INJUNCTION  
No. 3:25-cv-05461-DGE

- 2 -

CROWLEY LAW OFFICES, P.S.  
600 University Street, Suite 1708 • Seattle, WA 98101  
(206) 209-0456  
www.crowleylawoffices.com

### A. Plaintiffs Intend to Engage in Conduct Affected with Constitutional Interest

Plaintiffs have established *Driehaus*'s first factor because they intend to "engage in a course of conduct arguably affected with a constitutional interest." *Peace Ranch, LLC v. Bonta*, 93 F.4th 482, 488 (9th Cir. 2024). Every Plaintiff has declared that he will continue to adhere to the Church's longstanding prohibition against disclosing information learned in the confession, even after SB 5375 takes effect, and each Plaintiff Bishop has declared that he will ensure that priests in his diocese adhere to this prohibition. *See* Mot. 9. Defendants do not challenge these declarations, which establish conclusively Plaintiffs' intent to adhere to religious practices proscribed by SB 5375's reporting requirement. *See* Compl. ¶53 (Canon Law cc.983 § 1 provides that the sacramental seal "absolutely forbid[s]" a priest from "betray[ing] in any way a penitent").

Defendants wrongly argue that Plaintiffs must also allege (i) "when" and "where" they will refuse to disclose reportable information learned in the confession; or (ii) past circumstances in which "they have ever heard and failed to report information in confession that would arguably trigger the reporting duty." Opp'n 9-10. But it would be perverse to require Plaintiffs to establish standing by violating the same sacramental seal they seek to protect in this litigation.[2] Indeed, the Ninth Circuit rejected Plaintiffs' exact argument in two other First Amendment cases where, as here, the State of Washington faulted plaintiffs for failing to allege detailed descriptions of violative conduct to establish standing. Appellee's Answering Brief at 25, *SPU*, No. 22-35986 (9th Cir. June 2, 2023), Dkt. 29 (arguing no "allegation by SPU of how it plans to" violate anti-discrimination law or whether it "has violated the law in the past"); Appellee's Answering Brief at 2, *YUGM*, No. 23-2606 (9th Cir. Jan. 22, 2024), Dkt. 33 (similar). In both cases, the Ninth Circuit held that, even absent allegations of past or future violations, plaintiffs had satisfied *Driehaus*'s first factor by declaring their continued adherence to longstanding policies that contravened state law. *SPU*, 104 F.4th at 59-60; *YUGM*, 2024 WL 3755954, at *1. Just as those plaintiffs' adherence to longstanding practices "suffice[d] to meet the requirements of 'an intention to engage in a course

---

[2] Defendants assert that plaintiffs in other cases disclosed "past violations" "without intruding on their clients' or patients' confidentiality," Opp'n 10, but in this case, Plaintiffs are bound by their faith not to remember, let alone disclose in any way, such information.

PLAINTIFFS' REPLY ISO MOTION
FOR PRELIMINARY INJUNCTION
No. 3:25-cv-05461-DGE

- 3 -

CROWLEY LAW OFFICES, P.S.
600 University Street, Suite 1708 • Seattle, WA 98101
(206) 209-0456
www.crowleylawoffices.com

of conduct that intersects with the claimed First Amendment interest," *SPU*, 104 F.4th at 60; *YUGM*, 2024 WL 3755954, at *2, so too does Plaintiffs' adherence to Canon Law regarding the absolute inviolability of the sacramental seal satisfy *Driehaus*'s first factor.

### B. Plaintiffs' Intended Conduct Is Proscribed by SB 5375

Defendants do not, and cannot, dispute that Plaintiffs meet *Driehaus*'s second factor. SB 5375 "sweeps broadly and covers the subject matter of" Plaintiffs' intended religious exercise, *Driehaus*, 573 U.S. at 162, because Plaintiffs cannot divulge what they hear in the Sacrament of Confession without incurring automatic excommunication—and thus, on the Catholic understanding, eternal damnation. Mot. 4, 9. That is enough for Plaintiffs' conduct to be "arguably proscribed." *Driehaus*, 573 U.S. at 162.

### C. The Threat of Enforcement Is Substantial

Defendants incorrectly assert that Plaintiffs must allege that the State sent them a "specific warning or threat." Opp'n 10. In fact, state legislators said the goal of SB 5375 is to "change" the "rules" on confession. Mot. 19. But even absent a specific warning, "the government's failure to disavow enforcement of the law" itself establishes a substantial threat of enforcement. *Tingley*, 47 F.4th at 1068; *Matsumoto v. Labrador*, 122 F.4th 787, 797-98 (9th Cir. 2024) ("In challenging a new law[,] … a 'failure to *disavow* enforcement' is sufficient to establish a credible threat of prosecution in pre-enforcement challenge" (citation omitted)). Far from disavowing enforcement, Defendants suggest that SB 5375 is necessary to "combat [a] scourge" that they characterize as "lasting and pervasive." Opp'n 1. It is difficult to imagine a more imminent threat to the Sacrament of Confession than SB 5375, which added *only* members of the clergy to the list of mandatory reporters and consciously intruded upon the sacramental seal.

PLAINTIFFS' REPLY ISO MOTION
FOR PRELIMINARY INJUNCTION
No. 3:25-cv-05461-DGE

- 4 -

CROWLEY LAW OFFICES, P.S.
600 University Street, Suite 1708 • Seattle, WA 98101
(206) 209-0456
www.crowleylawoffices.com

## II. Plaintiffs Are Likely to Succeed on the Merits of Their Religious Liberty Claims

### A. RCW § 26.44.030, as Amended by SB 5375, Impairs Plaintiffs' Free Exercise of Religion (First Cause)

#### 1. RCW § 26.44.030, as Amended by SB 5375, Is not Generally Applicable

Defendants contend that RCW § 26.44.030 is generally applicable because designating clergy as mandatory reporters "treats them exactly the same as other professions the Legislature has deemed to be uniquely positioned to report suspected abuse." Opp'n 12. But this argument misstates the test for assessing general applicability and, in any event, fails on its own terms.

*First*, the general applicability test asks not whether clergy are comparable to those whom the "Legislature has deemed to be uniquely positioned to identify and report suspected child abuse," Opp'n 12, but rather whether the government has "treat[ed] … comparable secular *activity* more favorably than religious exercise," *Tandon v. Newsom*, 593 U.S. 61, 62 (2021) (emphasis added). And "whether two activities are comparable … must be judged against the asserted government interest that justifies the regulation at issue," not against *who* the Legislature unilaterally decides serves that interest. *Id.* ("It is no answer that the States treats some comparable secular businesses or other activities as poorly or even less favorably than the religious exercise.").

Here, the activity at issue is reporting information learned in the confessional that gives "reasonable cause to believe that a child has suffered abuse or neglect." RCW § 26.44.030(1)(a). The comparable secular activity is reporting information not learned in the confessional. But the law does not treat those two activities the same. RCW § 26.44.030 creates no general obligation to report credible allegations of child abuse or neglect learned in all secular contexts. To the contrary, the law excludes from the mandatory reporting obligation information learned in numerous contexts—such as family observations or communications, attorney-client communications, etc.—the reporting of which would serve Washington's claimed interest in eradicating such abuse and neglect. *See* Mot. 13. Thus, the law's obligation to report credible allegations of child abuse is not generally applicable.

PLAINTIFFS' REPLY ISO MOTION FOR PRELIMINARY INJUNCTION
No. 3:25-cv-05461-DGE

- 5 -

CROWLEY LAW OFFICES, P.S.
600 University Street, Suite 1708 • Seattle, WA 98101
(206) 209-0456
www.crowleylawoffices.com

It is no rejoinder that "professionals with frequent and primary contact with children" are not comparable with those who are not professionals with frequent and primary contact with children. Opp'n 15. The comparability analysis is between secular and religious "activity," *Tandon*, 593 U.S. at 62, not groups of people. The *activity* regulated by the statute is the reporting, not contact with children. RCW § 26.44.030(1)(a). And the law does not impose the same reporting obligation on information learned by clergy in the confessional and information learned in secular contexts.[3]

For the same reason, Defendants' attempt (Opp'n 15-17) to distinguish people who are "formally trained to detect child abuse" from those who are not is beside the point. Nothing in the law's reporting obligation turns on training. Indeed, Defendants nowhere explain what "training" to identify child abuse or neglect is received by, for example, a "pharmacist," a state licensed practitioner of "optometry", or administrative and academic employees of institutions of higher education. RCW §§ 26.44.030(1)(a), (f); 26.44.020(21). And there are numerous supervisors within organizations whose employees have direct access to children who *do* receive training to identify abuse but nevertheless have no universal reporting obligation. *See, e.g.*, Martens Decl., Ex. 8. In any event, even people with no training to identify abuse or neglect learn of credible allegations of child abuse or neglect in secular contexts, and yet the law imposes no general reporting obligation on them.

***Second***, even if the test was that clergy need only be treated the same as the other persons deemed mandatory reporters by the Legislature, RCW § 26.44.030, as amended by SB 5375 and SB 1171, does not do so. The Legislature has deemed employees of institutions of higher education to be mandatory reporters. Opp'n 17; *see also* RCW § 26.44.030(1)(f). But beginning July 27, 2025, the statute will exempt *all* attorneys employed by such institutions from the reporting obligation when child abuse or neglect is "related to the representation of a client." Sub. H.B. 1171, 2025 Wash. Sess. Laws ch. 192, § 2.

---

[3] For similar reasons, it is no answer to say that household members have different and purportedly "stronger legal duties to protect their children" or that attorneys have a different reporting obligation. Opp'n 16-17.

PLAINTIFFS' REPLY ISO MOTION
FOR PRELIMINARY INJUNCTION
No. 3:25-cv-05461-DGE

- 6 -

CROWLEY LAW OFFICES, P.S.
600 University Street, Suite 1708 • Seattle, WA 98101
(206) 209-0456
www.crowleylawoffices.com

Defendants attempt to explain the reporting exemption for university attorneys by asserting, without evidentiary support, that (1) "attorney faculty overseeing legal clinics" "are not likely to have frequent access to children"; and (2) the Legislature determined that "the interest originally served by making higher education employees mandated reporters was not compromised by allowing legal clinics to continue to provide critically needed services for underserved communities." Opp'n 17-18. The former assertion is demonstrably untrue: the University of Washington and the Gonzaga University law schools have clinics that work on "children's rights" and represent "young people seeking Special Juvenile Immigrant Status." Martens Decl., Exs. 9-11. The second assertion is irrelevant: the exemption for university attorneys applies to all in-house university attorneys. And as the Pennsylvania State University scandal demonstrates, those attorneys are in a position to learn about abuse. *See id.* Ex. 12.

Similarly, the Legislature has deemed supervisors of employees with regular access to children to be mandatory reporters. RCW § 26.44.030(1)(b). But RCW § 26.44.030(1)(b) exempts those mandatory reporters from disclosing any information that they learn through an otherwise privileged communication. And that exemption applies notwithstanding that supervisors need only report conduct of an employee or volunteer who "coaches, trains, educates, or counsels a child or children or regularly has unsupervised access to a child or children as part of the employment, contract, or voluntary service." RCW § 26.44.030(1)(b). In other words, the Legislature *did* bring within the scope of mandatory reporters those supervisors in organizations "who are likely to have frequent and direct contact with children." But, like attorneys at institutions of higher education, those supervisors are afforded an exemption that clergy are not.

### 2. RCW § 26.44.030, as Amended by SB 5375, Is not Neutral

Unable to escape that SB 5375 targets only "clergy," Defendants argue that: (1) SB 5375 "does not, *in effect*, impose any obligation on clergy not already imposed on all other mandated reporters" (emphasis added); and (2) the legislative history does not "show religious animus" but rather "stray remarks" about how arguments opposing violating the sacramental seal "made her feel" as a child abuse survivor. Opp'n 18-19. But SB 5375 *does* impose obligations on clergy not

imposed on other mandatory reporters—for example, attorneys employed by institutions of higher education and supervisors of employees or volunteers with regular access to children. *See supra* II.A.1; *see also Roman Cath. Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 17 (2020) ("[R]egulations cannot be viewed as neutral because they single out houses of worship for especially harsh treatment."). Moreover, merely because Senator Frame's remarks "describe how opposing arguments made her feel" does not cleanse those statements of any import: they betray a disdain for any accommodation for the sacramental seal. Senator Frame's statements are also not "stray" remarks. As Defendants' citations make clear, Senator Frame made *repeated* statements in different contexts. *See* Opp'n 18 (citing three separate transcripts). Statements by legislators are relevant to assessing neutrality. *See Masterpiece Cakeshop, Ltd. v. Colo. C.R. Comm'n*, 584 U.S. 617, 638 (2018) (factors relevant to neutrality include "contemporaneous statements made by members of the decisionmaking body"); *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 541 (1993) (considering statements by members of city council to conclude law not neutral).

### 3. RCW § 26.44.030, as Amended by SB 5375, Does not Satisfy Strict Scrutiny as Applied to Roman Catholic Confession

Strict scrutiny can be satisfied "only in rare cases," *Lukumi*, 508 U.S. at 541, when "the government [] show[s] that measures less restrictive of the First Amendment activity could not address its interest," *Tandon*, 593 U.S. at 63. Defendants' sole argument that RCW § 26.44.030 is narrowly tailored is that no "mandatory reporter has the benefit of a privilege" such that the law is neither "overbroad [n]or underinclusive in substantial respects." Opp'n 20. But as explained above, this is simply untrue. Certain mandatory reporters—attorneys at institutions of higher education and supervisors of employees or volunteers with access to children—*do* have the benefit of privileges not afforded to clergy. *See supra* II.A.1. And Plaintiffs have offered no reason—let alone proof—why the State's interest in "reporting of child abuse by those best equipped to identify and report it" could not be achieved by affording Roman Catholic priests a privilege for information learned exclusively in the Sacrament of Confession. *See Tandon*, 593 U.S. at 63.

PLAINTIFFS' REPLY ISO MOTION FOR PRELIMINARY INJUNCTION No. 3:25-cv-05461-DGE

- 8 -

CROWLEY LAW OFFICES, P.S.
600 University Street, Suite 1708 • Seattle, WA 98101
(206) 209-0456
www.crowleylawoffices.com

Because the government affords some mandatory reporters certain reporting exemptions, it must show that affording an exemption to clergy is more dangerous than the exemptions afforded other mandatory reporters. Defendants have not done so.

### B. RCW § 26.44.030, as Amended by SB 5375, Violates Church Autonomy (Fourth Cause)

#### 1. SB 5375 Intrudes on Church Discipline

The Sacrament of Confession is a core matter of Church discipline during which the priest in confession serves partly as a "judge," applying Church "doctrine" to determine culpability for sin and "impose salutary and suitable penances." Etienne Decl. ¶¶7-8; Compl. ¶50 (quoting Code of Canon Law cc.978 § 2, 979-980). Pressuring the Church to vitiate the confessional seal would subject this sacramental act of Church discipline to "secular control or manipulation"—exactly what church autonomy prohibits. *Kedroff v. Saint Nicholas Cathedral*, 344 U.S. 94, 116 (1952); *see also* Mot. 17-19.

Defendants claim that the church autonomy doctrine is "limited" to matters of "governance, faith, or doctrine." Opp'n 22. But discipline is an aspect of governance, and thus civil governments have "no jurisdiction" to alter "church discipline." *Watson v. Jones*, 80 U.S. 679 (13 Wall.) 727, 733 (1872); *Serbian E. Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 716 (1976) ("church discipline" is "at the core of ecclesiastical concern"). Furthermore, the decision in *Our Lady of Guadalupe School v. Morrissey-Berru*, confirms that other "component[s]" of church autonomy are determined by "practices" of church-state relations that "the founding generation sought to prevent a repetition of … in our country." 591 U.S. 732, 748 (2020). Such practices include the denial of the confessional seal, which American courts have protected the confessional seal from the earliest days of the Republic. Mot. 18 (citing *People v. Philips*, Ct. of Gen. Sessions, City of N.Y. (June 14, 1813)). SB 5375 breaks with that longstanding tradition.

#### 2. SB 5375 Intrudes on Church Governance

Further, the Church has "independent authority" over the administration of her sacraments, as they are "essential to [her] central mission." *Our Lady*, 591 U.S. at 746-47; Mot. 19. SB 5375

PLAINTIFFS' REPLY ISO MOTION
FOR PRELIMINARY INJUNCTION
No. 3:25-cv-05461-DGE

- 9 -

CROWLEY LAW OFFICES, P.S.
600 University Street, Suite 1708 • Seattle, WA 98101
(206) 209-0456
www.crowleylawoffices.com

directly interferes with that authority because it would require—indeed, was intended to force—the Church to "change [its] rules" regarding the sacramental seal.  Compl. ¶86 (quoting Senator Frame and similar legislative statements).  In response, Defendants claim that SB 5375 does not violate the Catholic Church's governance because it only "burdens the application of religious doctrine."  Opp'n 22.  But that argument misunderstands the church autonomy doctrine, which does not turn on how severely a "religious doctrine" is "burden[ed]" by government action.  *Id.*  Rather the church autonomy doctrine holds that religious freedom is violated simply by "[s]tate interference in th[e] sphere" of "'church government.'"  *Our Lady*, 591 U.S. at 746.  Because Defendants do not, and cannot, dispute that SB 5375 interferes with the Catholic Church's control over the Sacrament of Confession, SB 5375 violates the church autonomy doctrine.

### C. RCW § 26.44.030, as Amended by SB 5375, Commandeers Religious Practice (Sixth Cause)

A law violates the Establishment Clause when it bears any of the "hallmarks of religious establishments [that] the framers sought to prohibit."  *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 537 (2022); *see also Hilsenrath v. Sch. Dist. of Chathams*, 136 F.4th 484, 491 (3d Cir. 2025) (discussing hallmarks); *Firewalker-Fields v. Lee*, 58 F.4th 104, 122 n.7 (4th Cir. 2023) (same); Mot. 19-20.  Defendants do not dispute this.  Opp'n 21.  Nor do they dispute that one of these hallmarks is present when the government "use[s] the established church to carry out certain civil functions," Opp'n 21 (quoting *Shurtleff v. City of Boston*, 596 U.S. 243, 286 (2022) (Gorsuch, J., concurring)), including when it commandeers the Church to "prosecut[e] moral offenses," *id.* (quoting Michael W. McConnell, *Establishment and Disestablishment at the Founding, Part I: Establishment of Religion*, 44 Wm. & Mary L. Rev. 2105, 2169 (2003)); *see* Mot. 20.  Nor do Defendants "question Plaintiffs' explanation of the Sacrament of Confession or the requirements of canon law."  Opp'n 22.  Finally, Defendants do not dispute that SB 5375 requires priests to disclose what is said within this tribunal of mercy to civil authority under penalty of criminal and civil sanctions, including imprisonment.  Yet despite conceding all this, Defendants insist that SB 5375 does not violate the Establishment Clause because it "does not use the Catholic Church to

PLAINTIFFS' REPLY ISO MOTION
FOR PRELIMINARY INJUNCTION
No. 3:25-cv-05461-DGE
- 10 -
CROWLEY LAW OFFICES, P.S.
600 University Street, Suite 1708 • Seattle, WA 98101
(206) 209-0456
www.crowleylawoffices.com

1  carry out civil functions" by "merg[ing] the functions of the state with those of the church."  Opp'n
2  21.  This is incorrect.

3  Were the Sacrament not divinely instituted and ministered by the Church, a penitent would
4  be under no obligation to disclose what it is they confess to their priest.  As a direct result of SB
5  5375, the State is commandeering the Sacrament and the penitent's disclosures for its own—
6  exclusively secular—purposes.  It presses the Church into the service of the State's police power,
7  requiring the Church to gather for the State information disclosed by penitents for the unique and
8  exclusively religious purpose of seeking mercy and reconciliation with Christ and His Church.
9  Worse, SB 5375 leverages the Church's Sacrament—including both its disciplinary and
10 eschatological teaching—to gather for the State that which the State itself is precluded from
11 gathering itself.  *See* U.S. Const. amend. V (self-incrimination); Wash. Const. Art. I, § 9 ("No
12 person shall be compelled in any criminal case to give evidence against himself.").

13 **III.  The Remaining Preliminary Injunction Factors Weigh in Favor of Injunctive Relief**

14 Defendants' argument that no irreparable injury has occurred largely rehashes their
15 argument that there is no injury-in-fact for standing purposes, Opp'n 24, and fails for the same
16 reasons.  Plaintiffs need not wait for a statute to become effective "to obtain preventive relief,"
17 *Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 201
18 (1983); *Cuviello v. City of Vallejo*, 944 F.3d 816, 833 (9th Cir. 2019), and being forced to choose
19 between criminal prosecution and excommunication is plainly an irreparable violation of
20 Plaintiffs' constitutional rights, *see supra* I.A.  Plaintiffs' further argument that there can be no
21 irreparable harm because laws in other states purportedly infringe on the sacramental seal in a
22 similar manner, Opp'n 24, is misguided: not only does it rely on a cursory summary of mandatory
23 reporting laws that ignores other protective legislation or local circumstances that do not exist in
24 Washington, but, even if Defendants' summary was correct, the callous assertion that other states
25 are *also* infringing upon the constitutional rights of Catholic priests hardly proves that priests in
26
27

PLAINTIFFS' REPLY ISO MOTION
FOR PRELIMINARY INJUNCTION
No. 3:25-cv-05461-DGE

- 11 -

CROWLEY LAW OFFICES, P.S.
600 University Street, Suite 1708 • Seattle, WA 98101
(206) 209-0456
www.crowleylawoffices.com

1   Washington will not suffer irreparable harm.[4]  Finally, Defendants fail to address the chilling effect
2   SB 5375 has on priests' ability to hear confession.  This alone constitutes irreparable injury.
3   *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 694-95
4   (9th Cir. 2023) (en banc).
5          The only harm to the public interest Defendants identify is the harm purportedly inherent
6   in the temporary inability to enforce a statute.  Opp'n 24 (citing *Maryland v. King*, 567 U.S. 1301,
7   1303 (2012)).  But this interest "has no application" in a preliminary injunction determination
8   where the State "has not made a showing that the challenged statute passes constitutional muster."
9   *NetChoice, LLC v. Bonta*, 692 F. Supp. 3d 924, 965 (N.D. Cal. 2023), *affirmed in part, vacated in*
10  *part on other grounds*, 113 F.4th 1101 (9th Cir. 2024).

---

[4] Texas, Oklahoma, West Virginia, Tennessee, and Rhode Island have all enacted religious freedom laws that, unlike in Washington, exempt religious adherents from otherwise applicable statutory obligations.  *See* Tex. Civ. Prac. & Rem. Code Ann. § 110.003; Okla. Stat. Ann. § 51-253; W.V. Code § 35-1A-1; Tenn. Code Ann. § 4-1-407; R.I. Gen. Laws § 42-80.1-3.  The territories of Guam and Puerto Rico are likewise subject to the federal Religious Freedom Restoration Act, 42 U.S.C. § 2000bb *et seq.  See Guam v. Guerrero*, 290 F.3d 1210, 1221-22 (9th Cir. 2002); *Rodriguez-Vélez v. Pierluisi-Urrutia*, 2021 WL 5072017, at *23 (D.P.R. Nov. 1, 2021).  Finally, despite entering into a deferred prosecution agreement with the Church in New Hampshire requiring review of Church policies, the New Hampshire Attorney General has not objected to Church policies exempting from the reporting obligation information covered by the confessional seal.  Martens Decl., Exs. 13-14.

PLAINTIFFS' REPLY ISO MOTION
FOR PRELIMINARY INJUNCTION
No. 3:25-cv-05461-DGE
- 12 -
CROWLEY LAW OFFICES, P.S.
600 University Street, Suite 1708 • Seattle, WA 98101
(206) 209-0456
www.crowleylawoffices.com

The undersigned certified that this motion contains 4,181 words, in compliance with Local Civil Rule 7(e)(6).

Dated: July 7, 2025

Respectfully submitted,

*/s/ William J. Crowley*

William J. Crowley, WSBA #18499
CROWLEY LAW OFFICES, P.S.
600 University Street
Suite 1708
Seattle, WA 98101
Tel: (206) 224-7069
will@crowleylawoffices.com

Matthew T. Martens (*pro hac vice*)
Siddharth Velamoor, WSBA # 40965
Donna Farag (*pro hac vice*)
Zachary Halpern (*pro hac vice*)
WILMER CUTLER PICKERING HALE AND
    DORR LLP
2100 Pennsylvania Avenue, NW
Washington, DC 20037
Tel: (202) 663-6000
Fax: (202) 663-6363
matthew.martens@wilmerhale.com
siddharth.velamoor@wilmerhale.com
donna.farag@wilmerhale.com
zac.halpern@wilmerhale.com

Leah M. Fugere (*pro hac vice*)
WILMER CUTLER PICKERING HALE AND
    DORR LLP
350 South Grand Avenue
Suite 2400
Los Angeles, CA 90071
Tel: (213) 443-5300
Fax: (213) 443-5400
leah.fugere@wilmerhale.com

PLAINTIFFS' REPLY ISO MOTION
FOR PRELIMINARY INJUNCTION
No. 3:25-cv-05461-DGE

- 13 -

CROWLEY LAW OFFICES, P.S.
600 University Street, Suite 1708 • Seattle, WA 98101
(206) 209-0456
www.crowleylawoffices.com

Robert Kingsley Smith (*pro hac vice*)
WILMER CUTLER PICKERING HALE AND
    DORR LLP
60 State Street
Boston, MA 02109
Tel: (617) 526-6000
Fax: (617) 526-5000
robert.smith@wilmerhale.com

Mark L. Rienzi (*pro hac vice*)
Eric C. Rassbach (*pro hac vice*)
William J. Haun (*pro hac vice*)
Laura Wolk Slavis (*pro hac vice*)
BECKET FUND FOR RELIGIOUS LIBERTY
1919 Pennsylvania Ave NW, Suite 400
Washington, D.C. 20006
Tel: (202) 955-0095
mrienzi@becketfund.org
erassbach@becketfund.org
whaun@becketfund.org
lslavis@becketfund.org

Hiram S. Sasser, III (*pro hac vice*)
Jeremy Dys (*pro hac vice*)
Chris Motz (*pro hac vice*)
FIRST LIBERTY INSTITUTE
2001 W. Plano Pkwy., Ste. 1600
Plano, Texas 75075
Tel: (972) 941-4444
Fax: (972) 941-4457
hsasser@firstliberty.org
jdys@firstliberty.org
cmotz@firstliberty.org

*Attorneys for Plaintiffs*

PLAINTIFFS' REPLY ISO MOTION
FOR PRELIMINARY INJUNCTION
No. 3:25-cv-05461-DGE

- 14 -

CROWLEY LAW OFFICES, P.S.
600 University Street, Suite 1708 • Seattle, WA 98101
(206) 209-0456
www.crowleylawoffices.com

## **CERTIFICATE OF SERVICE**

I certify under penalty of perjury that on July 7, 2025, I caused to be electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send a notification of the filing to the email addresses indicated on the Court's Electronic Mail Notice List.

Dated: July 7, 2025

*/s/ Siddharth Velamoor*
Siddharth Velamoor

PLAINTIFFS' REPLY ISO MOTION
FOR PRELIMINARY INJUNCTION
No. 3:25-cv-05461-DGE

- 15 -

CROWLEY LAW OFFICES, P.S.
600 University Street, Suite 1708 • Seattle, WA 98101
(206) 209-0456
www.crowleylawoffices.com