UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

PAUL D. ETIENNE et al.,

               Plaintiffs,

     v.

ROBERT W. FERGUSON et al.,

               Defendants.

CASE NO. 3:25-cv-05461-DGE

QUESTIONS FOR HEARING

The Court will hold a hearing on Plaintiffs' motion for a preliminary injunction on Monday, July 14, 2025 at 10:00 AM. The parties shall be prepared to address the following questions at the hearing:

**<u>Questions for Both Parties</u>**

1) When evaluating whether Plaintiffs have pre-enforcement standing and if this case is ripe, should the Court apply the test articulated by the 9th Circuit in *Clark v. City of Seattle*, 899 F.3d 802, 813 (9th Cir. 2018), which requires a "genuine threat of imminent prosecution" before the Court can find constitutional ripeness? Or should we apply the test utilized by the Supreme Court in *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 161–164 (2014), which requires a "substantial" threat of enforcement? The Ninth Circuit acknowledges that it has "toggled" between these two tests. Does the result change

depending on which test the Court applies? Is there a fact pattern under which it would make more sense to apply one test but not the other?

2) It is correct to conclude that, as currently written, § 26.44.030(1)(a) does not cover the Plaintiffs but § 26.44.030(1)(b) does cover the Plaintiffs?  Does each Plaintiff not have "official supervisory capacity with a nonprofit or for-profit organization?"  Does each Plaintiff not oversee, direct, or manage another person who is employed by, contracted by, or volunteers with the nonprofit or for-profit organization and who has direct access to children?  (Doesn't each Parish have children programs run by employees and volunteers?)

3) If "yes" to question 2 above, is it correct that current § 26.44.030(1)(b) does in fact protect Plaintiffs' privileged communications, whereas SB 5375 completely eliminates the privilege exception as it may relate to mandatory reporting?

**Questions for Plaintiffs**

1) Plaintiffs argue SB 5375 is not generally applicable because it treats comparable secular activity more favorably than religious exercise. The activity in question here being reporting information received in the confessional.  However, the statute focuses on certain categories of professionals who the State claims frequently interact with children and are trained to recognize and address neglect and abuse. But doesn't the statute require these professionals to report abuse and neglect regardless of how they learn of it?

2) With respect to Plaintiffs' argument that SB 5375 violates Church autonomy, Plaintiffs appear to make the novel argument that the confessional is a matter of Church governance because the priest serves as a "judge" applying Church doctrine, determining culpability for sin and imposing penance. Doesn't the Church autonomy doctrine apply to matters of internal church governance? Isn't there a meaningful distinction between a Free Exercise claim and a church autonomy claim?  Can Plaintiffs cite any precedent for the proposition that the autonomy doctrine should apply to its parishioners in this way?

3) In *Trump v. CASA*, 606 U.S. ___(2025), the Supreme Court held that universal injunctions likely exceed the equitable authority granted to federal courts.  (Slip op at 2.)  The Court suggested that equitable relief must be no broader than necessary to provide complete relief to *each individual plaintiff with standing to sue*. (*Id*.)  Justice Kavanaugh suggested that plaintiffs who challenge the legality of a statute and request preliminary injunctive relief must accordingly proceed by class action to achieve "statewide," "regionwide," or "nationwide" relief.  (Kavanaugh, J. concurring at 2.)  In the wake of *Trump v. CASA*, is the relief this Court might grant limited to these individual Plaintiffs and not any other clergy in the State of Washington?  If not, how is the remedy you seek consistent with *CASA*?

## Questions for Defendants

1) Under your interpretation of the interaction between § 26.44.030(1)(a) and § 26.44.030(1)(b) as modified by SB 5375, isn't the phrase "[e]xcept for members of the clergy" in (1)(b) superfluous and otherwise adds nothing other than possibly supporting an inference of animus toward clergy?

2) Defendants argue Plaintiffs do not have pre-enforcement standing because they have not articulated a "concrete plan" to violate the law.   Defendants argue Plaintiffs have also not specified past instances where their conduct violated the law.  Given the obligations of Plaintiffs' faith, which "absolutely forbids" them from disclosing information learned in the confessional, and even forbids them from remembering confessions, how could Plaintiffs provide such information?

3) Under the pre-enforcement standing framework laid out in *Driehaus*, what would constitute a "substantial" threat of enforcement in this case? Does there need to be a "specific" threat of enforcement, or is it enough that Defendants will not disavow enforcement of SB 5375?  Is the Attorney General and all the County Prosecutors willing to disavow prosecution of Defendants under SB 5375?

4) With respect to ripeness, the Supreme Court has endorsed a "hold your tongue and challenge now" approach rather than requiring litigants to speak first and take their chances with the consequences.  *Ariz. Right to Life Pol. Action Comm. v. Bayless*, 320 F.3d 1002, 1006 (9th Cir. 2003).  Why isn't that a relevant consideration here? Assuming Plaintiffs have standing, at what juncture **would** this case become ripe if not now? Is the expectation that they would need to refuse to report information learned in the confessional and then face charges when that refusal somehow came to light?

5) If SB 5375 is truly neutral in that it treats members of the clergy the same as other people deemed mandatory reporters, why has the State recently deemed certain attorneys, who are employees of institutions of higher education, to be mandatory reporters while exempting them from the reporting obligation when child abuse or neglect is "related to the representation of a client."?

6) How is SB 5375 the "least restrictive" means of addressing the State's concerns? Plaintiffs have acknowledged they are mandatory reporters in other circumstances – why not include an exemption for the confessional given its significance?

7) Doesn't the legislative history of SB 5375 suggest that it is not neutral with respect to the clergy? SB 5375's sponsor asserts that "[the State of Washington] can establish our laws, [the Church] can have their rules, and if they are in conflict, I believe [the Church] can change their rules, not insist that we change our state laws."  Would you agree it is not a simple proposition to direct or even ask the Catholic Church to change its view about the

place of the confessional in its belief system? Would it not be akin to asking the Church to change not only its rules, but its fundamental beliefs?

8) Plaintiffs argue SB 5375 commanders religious practice, namely the Sacrament of the Confessional, for state purposes. Isn't this true? Isn't the State effectively relying on the intimate and unique relationship between a priest and penitent to solicit information for its own purposes?

9) Assume the law went into effect, and that Catholics priests indicated they would obey the law. Would they be required to provide those confessors some sort of disclaimer before they confessed? In other words, would they need to inform their parishioners that anything they confessed would be held in confidence, except for any information concerning sexual abuse? If those confessing knew this information could be used against them, in criminal proceedings or otherwise, wouldn't they simply refuse to confess those crimes? Wouldn't that negate the purpose of the law?

**Questions for United States**

The statute that provides for the federal government's right to intervene in this case states: "In such action the United States shall be entitled to the same relief as if it had instituted the action." 42 U.S.C. § 2000h-2. § 2000h-2 "does not create an independent federal claim; it merely allows the United States Attorney General to intervene*." Sayman v. Nat'l Evaluation Sys., Inc.*, No. 02 C 2413, 2002 WL 598519, at *1 (N.D. Ill. Apr. 17, 2002).

1) Is the United States' proposed Complaint in Intervention (Dkt. No. 122-1) a complaint seeking relief independent of the relief Plaintiffs seek? If yes, what additional relief does it seek, if any? If not, why the need for a separate motion for a preliminary injunction versus simply intervening to assist in advancing Plaintiffs' interests?

2) Similarly, assuming the individual plaintiffs in this case don't have standing, how does the United States have a cause of action and standing to bring its own motion for a preliminary injunction? "[A]n intervenor of right must demonstrate Article III standing when it seeks additional relief beyond that which the plaintiff requests." *Town of Chester v. Laroe Estates, Inc*., 581 U.S. 433, 439 (2017). Likewise, the Supremacy Clause does not give rise to a cause of action that allows the federal government freewheeling authority to sue to vindicate sovereign interests. *Armstrong v. Exceptional Child Ctr., Inc.,* 575 U.S. 320, 325 (2015). As Justice Scalia explained in 2015, the Supremacy Clause "instructs courts what to do when state and federal law clash but is silent regarding *who* may enforce federal laws in court, and in what circumstances they may do so." *Id.* From where, then, would the federal government's cause of action to sue here arise? The Ninth Circuit has cast doubt on the applicability of the *Debs* doctrine in circumstances like this one. *United States v. Mattson*, 600 F.2d 1295, 1299–1300 (9th

Cir. 1979); *see also New York Times Co. v. United States* 403 U.S. 713, 718 (1971) (Black, J. concurring).

3) In the wake of the recent *Trump v. CASA* decision, do you agree any relief the United States seeks is limited to these individual Plaintiffs? If not, how do you circumvent *CASA*?

Dated this 11th day of July, 2025.



David G. Estudillo
United States District Judge