The Honorable Chief Judge David G. Estudillo

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT TACOMA

PAUL D. ETIENNE, et al.,

    Plaintiffs,

v.

ROBERT W. FERGUSON, et al.,

    Defendants.

NO. 3:25-cv-05461-DGE

**PLAINTIFFS' RESPONSE TO COURT'S QUESTIONS FOR HEARING**

PLAINTIFFS' RESPONSE TO COURT'S
QUESTIONS FOR HEARING
No. 3:25-cv-05461-DGE

CROWLEY LAW OFFICES, P.S.
600 University Street, Suite 1708 • Seattle, WA 98101
(206) 209-0456
www.crowleylawoffices.com

Plaintiffs respectfully submit this response to the Court's Questions for Hearing, dated July 11, 2025. Plaintiffs submit these responses in advance of the hearing to facilitate the Court's consideration of the relevant caselaw.

**QUESTIONS FOR BOTH PARTIES**

1) When evaluating whether Plaintiffs have pre-enforcement standing and if this case is ripe, should the Court apply the test articulated by the 9th Circuit in *Clark v. City of Seattle*, 899 F.3d 802, 813 (9th Cir. 2018), which requires a "genuine threat of imminent prosecution" before the Court can find constitutional ripeness? Or should we apply the test utilized by the Supreme Court in *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 161-164 (2014), which requires a "substantial threat" of enforcement? The Ninth Circuit acknowledges that it has "toggled" between these two tests. Does the result change depending on which test the Court applies? Is there a fact pattern under which it would make more sense to apply one test but not the other?

This Court should apply the test articulated by the Supreme Court in *Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014), which the Supreme Court recently reaffirmed in the context of a pre-enforcement First Amendment Free Exercise challenge. *See Mahmoud v. Talyor*, 606 U.S. ___, 2025 WL 1773627, at *20 (June 27, 2025) (finding that plaintiffs established "substantial risk that the harm will occur" (citing *Driehaus*)). As the Supreme Court explained, "when a deprivation of First Amendment rights is at stake, a plaintiff need not wait for damage to occur before filing suit." *Id.*; *accord Italian Colors Rest. v. Becerra*, 878 F.3d 1165, 1172 (9th Cir. 2018) ("[W]hen the threatened enforcement effort implicates First Amendment rights, the standing inquiry tilts dramatically toward a finding of standing." (cleaned up)). And the Ninth Circuit has itself most recently applied the Supreme Court's *Driehaus* framework in an analogous First Amendment Free Exercise challenge to a Washington state law. *See Seattle Pacific Univ. v. Ferguson*, 104 F.4th 50, 59-60 (9th Cir. 2024); *see also* Reply (Dkt. 192), at 3-4.

But, here, it is immaterial whether the risk that SB 5375 will be enforced against Plaintiffs is evaluated for "genuineness" or "substantiality." Both frameworks credit the following facts as strong evidence of a threat of enforcement: (1) Canon Law, and policies implementing Canon Law for the Church in Washington, requires that Plaintiffs keep secret, on pain of excommunication, what they hear in the Sacrament of Confession, Etienne Decl. (Dkt. 75) ¶ 20; (2) the Legislature

PLAINTIFFS' RESPONSE TO COURT'S QUESTIONS FOR HEARING
No. 3:25-cv-05461-DGE
- 1 -
CROWLEY LAW OFFICES, P.S.
600 University Street, Suite 1708 • Seattle, WA 98101
(206) 209-0456
www.crowleylawoffices.com

heard testimony from a penitent stating that she disclosed her abuse to a Catholic in the Sacrament of Confession and that the priest to whom she confessed did not report the abuse, Martens Decl. (Dkt. 66-1), Ex. 7 (1:16:55); (3) following that testimony, the Legislature enacted a bill that, by its terms is directed only at "members of the clergy," and requires Catholic priests to disclose what they hear in the Sacrament of Confession or be subject to criminal penalties or civil liability by affected members of the public, S.B. 5375 § 2; (4) the bill's sponsor, aware of the sacramental seal, stated that the Church "can change their rules," to comply with the bill, Martens Decl. (Dkt. 66-1), Ex. 1; (5) the Governor, when signing the bill, expressly acknowledged that the bill directly intrudes upon the sacramental seal, and that he believed that intrusion was "important," Martens Decl. (Dkt. 66-1), Ex. 6; (6) Plaintiffs have stated they will adhere to Canon Law and Church policy and not comply with the law by violating Canon Law and the sacramental seal, *see, e.g.*, Etienne Decl. (Dkt. 75) ¶ 17; (7) the Attorney General and his predecessor (now Governor) are actively investigating the Church for not reporting child abuse, Martens Decl. (Dkt. 208), Ex. 15; (8) the Attorney General has solicited further complaints against the Church as part of that investigation, *id.* Ex. 16; and, consistent with the ongoing investigation, (9) Defendants have refused to disavow they will enforce the law against Plaintiffs and other priests at whom the bill was targeted.

As recent Ninth Circuit case law makes clear, these facts are more than sufficient to establish standing to assert a pre-enforcement First Amendment Free Exercise challenge. *See Seattle Pacific University v. Ferguson*, 104 F.4th 50 (9th Cir. 2024) (finding pre-enforcement standing where: (1) plaintiffs pleaded intent to adhere to policy contrary to new law; (2) failing to adhere to policy would result in automatic disaffiliation of plaintiff from church; (3) defendants had not disavowed enforcement of new law; (4) defendants had launched an investigation of the conduct that was the subject of the policy; and (5) defendants had solicited additional complaints of conduct that was the subject of the policy); *Union Gospel Mission of Yakima Wash. v. Ferguson*, 2024 WL 3755954 (9th Cir. Aug. 12, 2024) (finding pre-enforcement standing where: (1) plaintiffs pleaded intent to adhere to policy contrary to new law; (2) defendants had not disavowed

PLAINTIFFS' RESPONSE TO COURT'S QUESTIONS FOR HEARING
No. 3:25-cv-05461-DGE
- 2 -
CROWLEY LAW OFFICES, P.S.
600 University Street, Suite 1708 • Seattle, WA 98101
(206) 209-0456
www.crowleylawoffices.com

enforcement of new law; and (3) the law could be enforced by both defendants and through civil suit brought by affected members of the public).

    2) Is it correct to conclude that, as currently written, § 26.44.030(1)(a) does not cover the Plaintiffs but § 26.44.030(1)(b) does cover the Plaintiffs? Does each Plaintiff not have "official supervisory capacity with a nonprofit or for-profit organization?" Does each Plaintiff not oversee, direct, or manage another person who is employed by, contracted by, or volunteers with the nonprofit or for-profit organization and who has direct access to children? (Doesn't each Parish have children programs run by employees and volunteers?)

Yes, that is correct. As currently written,[1] RCW § 26.44.030(1)(a) does not cover Plaintiffs but RCW § 26.44.030(1)(b) does cover at least some of Plaintiffs, specifically those that are in "a position, status, or role created, recognized, or designated by" the Church "whose scope includes, but is not limited to, overseeing, directing, or managing another person." RCW § 26.44.030(1)(b)(i).

    3) If "yes" to question to above, is it correct that current § 26.44.030(1)(b) does in fact protect Plaintiffs' privileged communications, whereas SB 5375 completely eliminates the privilege exception as it may relate to mandatory reporting?

Correct. As currently written, RCW § 26.44.030(1)(b) protects some of Plaintiffs' privileged communications. Such supervisors are expressly exempted from any reporting obligation with regard to information protected by, among other privileges, the priest-penitent privilege. RCW § 26.44.030(1)(b) ("No one shall be required to report under this section when he or she obtains the information solely as a result of a privileged communication as provided in RCW 5.60.060."); RCW § 5.60.060(3) (recognizing privilege for "members of the clergy" with regard to communications with "a person making the confession or sacred confidence"). With regard to members of the clergy, SB 5375 completely eliminates for mandatory reporting purposes not only the priest-penitent privilege but also every other privilege recognized in RCW § 5.60.060. What is more, RCW § 26.44.030(1)(a), as amended by SB 5375, will completely subsume RCW

---

[1] We understand that by "currently" the Court means prior to SB 5375 taking effect on July 27, 2025.

PLAINTIFFS' RESPONSE TO COURT'S QUESTIONS FOR HEARING
No. 3:25-cv-05461-DGE
- 3 -
CROWLEY LAW OFFICES, P.S.
600 University Street, Suite 1708 • Seattle, WA 98101
(206) 209-0456
www.crowleylawoffices.com

§ 26.44.030(1)(b) with regard to members of the clergy, as it will require members of the clergy to report whether or not they are supervisors and without regard to any privileges.

**QUESTIONS FOR PLAINTIFFS**

1) Plaintiffs argue SB 5375 is not generally applicable because it treats comparable secular activity more favorably than religious exercise. The activity in question here being reporting information received in the confessional. However, the statute focuses on certain categories of professionals who the State claims frequently interact with children and are trained to recognize and address neglect and abuse. But doesn't the statute require these professionals to report abuse and neglect regardless of how they learn it?

The precise religious activity at issue here is Plaintiffs' holding in confidence information disclosed by penitents that gives rise to "reasonable cause to believe that a child has suffered abuse or neglect." RCW § 26.44.030(1)(a). The comparable secular activity would be other members of the public holding in confidence information that gives rise to such reasonable cause to believe that a child has suffered abuse or neglect.

RCW § 26.44.030(1)(a), as amended by SB 5375, does require some groups of individuals other than members of the clergy to report—groups of people whom Defendants characterize as "categories of professionals who frequently interact with children and are trained to recognize and address neglect and abuse." But the relevant comparison for the neutral applicability analysis is not to other *people* whom the law makes mandatory reporters. Rather, the relevant comparison is other instances (by whomever performed) in which information giving rise to reasonable cause to believe that a child has suffered abuse or neglect is not required to be reported. That is because not reporting information that gives rise to reasonable cause to believe that a child has suffered abuse or neglect presents the same risk (i.e., continued abuse or neglect) regardless of who is aware of that information without reporting it. *See Tandon v. Newsom*, 141 S. Ct. 1294, 1296 (2021) (per curiam) ("Comparability is concerned with the risks various activities pose, not the reasons why people gather."). Or to use the language of the Supreme Court, comparability is concerned with the risk of holding information learned in confidence without reporting it, not the reasons why people learned it. *See id.* And there is no dispute that Washington state law does not impose a

PLAINTIFFS' RESPONSE TO COURT'S QUESTIONS FOR HEARING
No. 3:25-cv-05461-DGE

- 4 -

CROWLEY LAW OFFICES, P.S.
600 University Street, Suite 1708 • Seattle, WA 98101
(206) 209-0456
www.crowleylawoffices.com

general reporting obligation on all persons who have information giving rise to "reasonable cause to believe that a child has suffered abuse or neglect." *See* RCW § 26-44-030(1)(a).

To be sure, the law requires that some groups of people other than clergy report. But as the Supreme Court has explained the comparable secular activity inquiry, "[i]t is no answer that a State treats some comparable secular businesses or other activities as poorly or even less favorably than the religious exercise." *Tandon*, 141 S. Ct. at 1296. What makes the law not generally applicable is that there is no general legal obligation for all members of the public to report when they have reasonable cause to believe that a child has suffered abuse or neglect.

> 2) With respect to Plaintiffs' argument that SB 5375 violates Church autonomy, Plaintiffs appear to make the novel argument that the confessional is a matter of Church governance because the priest serves as a "judge" applying Church doctrine, determining culpability for sin and imposing penance. Doesn't the Church autonomy doctrine apply to matters of internal church governance? Isn't there a meaningful distinction between a Free Exercise claim and a church autonomy claim? Can Plaintiffs cite any precedent for the proposition that the autonomy doctrine should apply to parishioners in this way?

The church autonomy doctrine applies to matters of church governance, which includes matters of church discipline. *See Watson v. Jones*, 80 U.S. 679 (13 Wall.) 727, 733 (1872); *Serbian E. Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 716 (1976) ("church discipline" is "at the core of ecclesiastical concern"). *Paul v. Watchtower Bible and Tract Society of New York, Inc.*, 819 F.2d 875, 883 (9th Cir. 1987) ("Churches are afforded great latitude when they impose discipline on members or former members."); *O'Connor v. Diocese of Honolulu*, 885 P.2d 361 (Haw. 1994) (ecclesiastical abstention doctrine precludes judicial review of excommunication). Here, the State is attempting to regulate the procedures by which the Church exercises its discipline of its members, stripping the Sacrament of Confession of the confidentiality that Church doctrine mandates. This implicates the church autonomy doctrine, which affords even more vigorous protection than does a typical Free Exercise claim. *See Paul*, 819 F.2d at 883. Moreover, the church autonomy doctrine is rooted in both the Free Exercise Clause and the Establishment Clause. *See, e.g., Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 591 U.S. 732, 746 (2020) ("State interference in that sphere would obviously violate the free exercise of religion, and any attempt

PLAINTIFFS' RESPONSE TO COURT'S QUESTIONS FOR HEARING
No. 3:25-cv-05461-DGE

- 5 -

CROWLEY LAW OFFICES, P.S.
600 University Street, Suite 1708 • Seattle, WA 98101
(206) 209-0456
www.crowleylawoffices.com

by government to dictate or even to influence such matters would constitute one of the central attributes of an establishment of religion."). Thus the analysis of a church autonomy claim is by definition different than a standalone Free Exercise claim. Indeed, *Our Lady* treated "supervision of clergy" as at the core of the "general principle of church autonomy." *Our Lady*, 591 U.S. at 747. That is precisely what Plaintiff Bishops are charged by Church law with doing and precisely what Defendants seek to interfere with.

> 3) In *Trump v. CASA*, 606 U.S. ___ (2025), the Supreme Court held that universal injunctions likely exceed the equitable authority granted to federal courts. (Slip op at 2.) The Court suggested that equitable relief must be no broader than necessary to provide complete relief to each individual plaintiff with standing to sue. (*Id.*) Justice Kavanaugh suggested that plaintiffs who challenge the legality of a statute and request preliminary injunctive relief must accordingly proceed by class action to achieve "statewide," "regionwide," or "nationwide" relief. (Kavanaugh, J. concurring at 2.) In the wake of *Trump v. CASA*, is the relief this Court might grant limited to these individual Plaintiffs and not any other clergy in the State of Washington? If not, how is the remedy you seek consistent with *CASA*?

Plaintiffs are not seeking a universal injunction, nor have Plaintiff sought an injunction applicable to faith traditions other than their own. Plaintiffs have sought an injunction only so broad as necessary to afford Plaintiffs complete relief. As *CASA* recognized, the equitable power of this Court allows for "an injunction that will offer complete relief to the plaintiffs before the court." Slip. Op. at 17. Here, Plaintiff Etienne is the Archbishop of the Seattle and Plaintiffs Daly and Tyson are the bishops of the Spokane and Yakima dioceses, respectively. As such, they have responsibility for the administration of the sacraments across their dioceses and the discipline of priests within their dioceses, including ensuring the sacramental seal is maintained by the priests in their dioceses. *See* Etienne Decl. (Dkt. 75) ¶¶ 3, 17-18; Daly Decl. (Dkt. 77) ¶¶ 3, 17-18; Tyson Decl. (Dkt. 72) ¶¶ 3, 17-18. Absent an injunction that applies to the administration of the Sacrament of Confession statewide, Plaintiffs Etienne, Daly, and Tyson cannot fulfill their religious obligations of ensuring that the priests within their dioceses maintain the sacramental seal. Moreover, the criminal prosecution and potential imprisonment of priests within their dioceses for failure to maintain the sacramental seal would impair the ability of Plaintiffs Etienne, Daly, and Tyson to ensure the faithful within their dioceses have access to the Sacrament of

PLAINTIFFS' RESPONSE TO COURT'S QUESTIONS FOR HEARING
No. 3:25-cv-05461-DGE
- 6 -
CROWLEY LAW OFFICES, P.S.
600 University Street, Suite 1708 • Seattle, WA 98101
(206) 209-0456
www.crowleylawoffices.com

1  Confession. Thus, complete relief for Plaintiffs Etienne, Daly, and Tyson requires a statewide
2  injunction precluding Defendants from enforcing SB 5375 as to the Sacrament of Confession.
3
4  Dated: July 13, 2025                    Respectfully submitted,
5
6                                          */s/ William J. Crowley*
7                                          William J. Crowley
                                            CROWLEY LAW OFFICES, P.S.
8                                          600 University Street
                                            Suite 1708
9                                          Seattle, WA 98101
                                            Tel: (206) 224-7069
10                                         will@crowleylawoffices.com
11
                                            Matthew T. Martens (*pro hac vice*)
12                                         Siddharth Velamoor, WSBA # 40965
                                            Donna Farag (*pro hac vice*)
13                                         Zachary Halpern (*pro hac vice*)
                                            WILMER CUTLER PICKERING HALE AND
14                                            DORR LLP
                                            2100 Pennsylvania Avenue, NW
15                                         Washington, DC 20037
                                            Tel: (202) 663-6000
16                                         Fax: (202) 663-6363
                                            matthew.martens@wilmerhale.com
17                                         siddharth.velamoor@wilmerhale.com
                                            donna.farag@wilmerhale.com
18                                         zac.halpern@wilmerhale.com
19
20                                         Leah M. Fugere (*pro hac vice*)
                                            WILMER CUTLER PICKERING HALE AND
21                                            DORR LLP
                                            350 South Grand Avenue
22                                         Suite 2400
                                            Los Angeles, CA 90071
23                                         Tel: (213) 443-5300
                                            Fax: (213) 443-5400
24                                         leah.fugere@wilmerhale.com
25
26
27

Robert Kingsley Smith (*pro hac vice*)
WILMER CUTLER PICKERING HALE AND
  DORR LLP
60 State Street
Boston, MA 02109
Tel: (617) 526-6000
Fax: (617) 526-5000
robert.smith@wilmerhale.com

Mark L. Rienzi (*pro hac vice*)
Eric C. Rassbach (*pro hac vice*)
William J. Haun (*pro hac vice*)
Laura Wolk Slavis (*pro hac vice*)
BECKET FUND FOR RELIGIOUS LIBERTY
1919 Pennsylvania Ave NW, Suite 400
Washington, D.C. 20006
Tel: (202) 955-0095
mrienzi@becketfund.org
erassbach@becketfund.org
whaun@becketfund.org
lslavis@becketfund.org

Hiram S. Sasser, III (*pro hac vice*)
Jeremy Dys (*pro hac vice*)
Chris Motz (*pro hac vice*)
FIRST LIBERTY INSTITUTE
2001 W. Plano Pkwy., Ste. 1600
Plano, Texas 75075
Tel: (972) 941-4444
Fax: (972) 941-4457
hsasser@firstliberty.org
jdys@firstliberty.org
cmotz@firstliberty.org

*Attorneys for Plaintiffs*

PLAINTIFFS' RESPONSE TO COURT'S
QUESTIONS FOR HEARING
No. 3:25-cv-05461-DGE

- 8 -

CROWLEY LAW OFFICES, P.S.
600 University Street, Suite 1708 • Seattle, WA 98101
(206) 209-0456
www.crowleylawoffices.com

**CERTIFICATE OF SERVICE**

I certify under penalty of perjury that on July 13, 2025, I caused to be electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send a notification of the filing to the email addresses indicated on the Court's Electronic Mail Notice List.

Dated: July 13, 2025

                                                  */s/ Siddharth Velamoor*
                                                  Siddharth Velamoor

PLAINTIFFS' RESPONSE TO COURT'S QUESTIONS FOR HEARING
No. 3:25-cv-05461-DGE

- 9 -

CROWLEY LAW OFFICES, P.S.
600 University Street, Suite 1708 • Seattle, WA 98101
(206) 209-0456
www.crowleylawoffices.com