Chief Judge David G. Estudillo

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| PAUL D. ETIENNE, JOSEPH J. TYSON, THOMAS A. DALY, FRANK R. SCHUSTER, EUSEBIO L. ELIZONDO, GARY F. LAZZERONI, GARY M. ZENDER, ROBERT PEARSON, LUTAKOMA NSUBUGA, JESUS MARISCAL, and MICHAEL KELLY,<br><br>Plaintiffs,<br><br>vs.<br><br>ROBERT FERGUSON, in his official capacity as Governor of the State of Washington, *et al*.,<br><br>Defendants.<br><br>UNITED STATES OF AMERICA,<br><br>Plaintiff-Intervenor,<br><br>vs.<br><br>STATE OF WASHINGTON,<br><br>Defendant. | Case No. 3:25-cv-5461-DGE<br><br>**UNITED STATES OF AMERICA'S COMPLAINT IN INTERVENTION** |

UNITED STATES' COMPLAINT IN INTERVENTION
Case No. 3:25-cv-5461-DGE
Page 1

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL RIGHTS DIVISION
HOUSING AND CIVIL ENFORCEMENT SECTION
950 Pennsylvania Ave. NW – 4CON
Washington, DC  20530
(202) 598-9726

The United States of America, by and through its undersigned counsel, brings this complaint in intervention for declaratory and injunctive relief, and alleges as follows:

# I.

# **PRELIMINARY STATEMENT**

1. This action challenges the constitutionality of a new Washington state law, known as "Senate Bill 5375" ("SB 5375"), which takes effect July 27, 2025. (*See* Exhibit 1.) This legislation, signed on May 2, 2025, by Washington State Governor Bob Ferguson, unlawfully targets clergy and, specifically, Catholic priests,[1] in violation of their fundamental right to freely exercise their religious beliefs guaranteed by the First and Fourteenth Amendments of the U.S. Constitution.

2. The Sacrament of Penance and Reconciliation, also known as Confession, is one of the seven Holy Sacraments of the Catholic Church. It is a sacred rite with roots that can be traced back to the origins of Catholicism.

3. During Confession, penitent Catholics confess aloud their sins to a Catholic priest, asking God for forgiveness, and as he performs his apostolic duties in hearing the Confession, the Catholic priest provides absolution to the penitent.

4. The seal of confidentiality is, therefore, the lifeblood of Confession. Without it, the free exercise of the Catholic religion, *i.e.*, the apostolic duties performed by the Catholic priest to the benefit of Catholic parishioners, cannot take place.

---

[1] SB 5375 has been widely criticized for attacking the sacred rite of Confession. *See* "Washington State Attacks the Seal of Confession," *National Catholic Register*, May 7, 2025, https://www.ncregister.com/commentaries/washington-state-attacks-the-seal-of-confession. It has also been reported that SB 5375 is "forcing priests to choose between ecclesial and secular authority, as Washington's bishops say that priests who violate the seal of confession will incur an automatic (latae sententiae) excommunication." *See* Connor Hartigan, "State laws require priests to disclose abuse revealed in confession," *America Magazine: The Jesuit Review of Law and Culture*, May 12, 2025, https://www.americamagazine.org/faith/2025/05/12/seal-confession-law-washington-separation-church-state-250618.

UNITED STATES' COMPLAINT IN INTERVENTION
Case No. 3:25-cv-5461-DGE
Page 2

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL RIGHTS DIVISION
HOUSING AND CIVIL ENFORCEMENT SECTION
950 Pennsylvania Ave. NW – 4CON
Washington, DC  20530
(202) 598-9726

5. By design, SB 5375 directly interferes with and substantially burdens this sacred rite. It adds "any member of the clergy," which expressly includes Catholic priests, as individuals who must report information relating to suspected child abuse or neglect to state officials or law enforcement. The failure to do so subjects priests to criminal penalties and civil liability. Although Washington, like every other state, recognizes a privilege for Confession and other confidential religious communications, SB 5375 strips Catholic priests of their ability to rely on this or any other legal privilege as a defense to reporting suspected abuse or neglect. Thus, to comply with SB 5375, Catholic priests must disclose information even when it has been obtained solely through the sacred rite of Confession.

6. Yet complying with SB 5375 under these circumstances would place Catholic priests fundamentally at odds with the core tenets and beliefs of their religion, and even prohibit them from continuing to serve as priests in the Catholic church. Under Catholic canon law, priests are "prohibited completely from using knowledge acquired from confession to the detriment of the penitent even when any danger of revelation is excluded." Codex Iuris Canonici c.984 § 1 (1983).[2] Thus, "every priest who hears confessions is bound under very severe penalties to keep absolute secrecy regarding the sins that his penitents have confessed to him. He can make no use of knowledge that confession gives him about penitents' lives." *Catechism of the Catholic Church* § 1467.[3] The punishment for directly violating the sacramental seal of Confession is excommunication. Codes Iuris Canonici c.1386, § 1. A more direct burden on the exercise of religion would be difficult to imagine.

7. SB 5375 directly interferes with the fundamental right of Catholic priests to freely exercise their religion by forcing them to violate the sanctity and confidentiality of confessional communications. No other mandatory reporter is required to forego his or her fundamental rights under the Constitution in this manner. Furthermore, a second provision of this bill expressly strips "clergy," and no one else, from relying on *any* legal privileges, including the confessional privilege, as a defense

---

[2] *Available at*: https://www.vatican.va/archive/cod-iuris-canonici/cic_index_en.html.

[3] *Available at*: https://www.vatican.va/archive/ENG0015/_INDEX.HTM.

UNITED STATES' COMPLAINT IN INTERVENTION
Case No. 3:25-cv-5461-DGE
Page 3

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL RIGHTS DIVISION
HOUSING AND CIVIL ENFORCEMENT SECTION
950 Pennsylvania Ave. NW – 4CON
Washington, DC  20530
(202) 598-9726

to reporting child abuse and neglect. All non-religious "supervisors" may continue to rely on applicable state law privileges.

8. In addition, at about the same time SB 5375 was enacted to deprive Catholic priests of their privileges under state law, Governor Ferguson signed another bill into law, Substitute House Bill 1171 ("SHB 1171") (attached as Exhibit 2), which *restored* legal privileges to attorneys who are mandatory reporters because they happen to work for colleges and universities, including at law school clinics.

9. The United States does not challenge the inclusion of priests as mandatory reporters *per se*. Outside of Confession, Catholic priests are trained to be mandatory reporters and frequently report child abuse and neglect, including in their capacities as teachers, counselors, colleagues, and friends. For example, in testimony on SB 5375 before the Senate Human Services Committee, Bishop Frank Schuster of the Seattle Archdiocese testified that he was, in fact, a mandatory reporter for a minor who came to him for counseling regarding a relationship with an adult. Bishop Schuster testified that, after hearing the boy's story, he immediately called the police and the boy's parents. Bishop Schuster also referred to the Charter for the Protection of Children and Young People, otherwise known as the Dallas Charter, which was passed in response to the allegations of sexual abuse of minors by Catholic clergy. The Dallas Charter sets forth comprehensive measures to protect children from sexual abuse, including a requirement that priests report allegations of abuse to law enforcement, except when obtained through Confession.[4]

10. Preserving the sacramental seal of Confession does not inhibit a priest from promoting justice and safety. Confession is an opportunity for priests to encourage perpetrators to turn themselves

---

[4] *See* U.S. Conf. of Catholic Bishops, *Promise to Protect/Pledge to Heal: Charter for the Protection of Children and Young People* 10 (June 2018) ("Dioceses/eparchies are to report an allegation of sexual abuse of a person who is a minor to the public authorities with due regard for the Sacrament of Penance. Diocesan/eparchial personnel are to comply with all applicable civil laws with respect to the reporting of allegations of sexual abuse of minors to civil authorities and cooperate in their investigation in accord with the law of the jurisdiction in question."), *available at:* https://www.usccb.org/resources/Charter-for-the-Protection-of-Children-and-Young-People-2018-final%281%29.pdf.

UNITED STATES' COMPLAINT IN INTERVENTION
Case No. 3:25-cv-5461-DGE
Page 4

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL RIGHTS DIVISION
HOUSING AND CIVIL ENFORCEMENT SECTION
950 Pennsylvania Ave. NW – 4CON
Washington, DC  20530
(202) 598-9726

in, and to counsel victims on finding a safe adult to whom to report. Confession may also allow priests to provide referrals or assistance to parents or caregivers who confess to circumstances amounting to "neglect" that arise from, for example, the lack of adequate child care, food, or medical assistance in the home. SB 5375 will therefore have a chilling effect on thousands of Catholic priests and parishioners alike, who may be uncertain as to whether administering and adhering to the mandatory Sacrament of Penance will subject them to criminal penalties, child welfare investigations, civil liability, or excommunication. Given these new risks, penitents will be less likely to express themselves during Confession, preventing them from securing assistance for their families.

11. As described in more detail herein, SB 5375 violates the Equal Protection Clause of the Fourteenth Amendment, as follows:

a. *First*, SB 5375 deprives Catholic priests of their fundamental right to freely exercise their religious beliefs, as guaranteed under the First Amendment. It does so by conditioning compliance on forcing priests to betray their sacred duty to maintain the confidentiality of confessional communications and thereby face excommunication from the Catholic Church. SB 5375 is not neutral or generally applicable because it expressly targets religious actors and, by design, compels Catholic priests to reveal information obtained through Confession. Although other mandatory reporters must also reveal privileged communications, they do not face this significant violation of their fundamental rights and liberties protected under the Constitution.

b. *Second*, SB 5375 treats members of the clergy, including Catholic priests, less favorably than other individuals. It does so by revoking state legal privileges for "members of the clergy," and no one else, with respect to reporting abuse committed by individuals they supervide. At the same time, SHB 1171 *restores* legal privileges to secular mandatory reporters, *i.e.*, attorneys who work for colleges and universities.

UNITED STATES' COMPLAINT IN INTERVENTION
Case No. 3:25-cv-5461-DGE
Page 5

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL RIGHTS DIVISION
HOUSING AND CIVIL ENFORCEMENT SECTION
950 Pennsylvania Ave. NW – 4CON
Washington, DC  20530
(202) 598-9726

12. Because SB 5375 violates fundamental rights and discriminates based on a suspect class, *i.e.*, religion, it is subject to strict scrutiny, which it cannot survive because it is not narrowly tailored to achieve a compelling governmental interest.

13. The United States accordingly files this Complaint in Intervention to vindicate its sovereign and other interests in enforcing the Constitution's guarantee of equal protection of the laws with respect to religion.

## II.

## JURISDICTION AND VENUE

14. This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345.

15. This case seeks relief from the denial of equal protection of the laws under the Fourteenth Amendment on account of religion. *See* Compl. ¶¶ 151-153, ECF No. 1. The Attorney General of the United States has certified that this case is of general public importance. *See* U.S. Mot. Intervene Ex. 2. Accordingly, the United States may intervene as of right in this action under 42 U.S.C. § 2000h-2 and Federal Rule of Civil Procedure 24(a)(1). The United States may also intervene as of right under Federal Rule of Civil Procedure 24(a)(2).

16. Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the acts or omissions giving rise to this action occurred within this district.

17. The Court may issue declaratory relief under 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57, and injunctive relief under 28 U.S.C. § 2202 and Federal Rule of Civil Procedure 65.

## III.

## PARTIES

18. Plaintiff-Intervenor is the United States of America.

19. Defendant, the State of Washington, is a State of the United States of America. The State of Washington includes all of its officers, employees, and agents responsible for enforcing SB 5375, including the state's Governor, Bob Ferguson.

UNITED STATES' COMPLAINT IN INTERVENTION
Case No. 3:25-cv-5461-DGE
Page 6

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL RIGHTS DIVISION
HOUSING AND CIVIL ENFORCEMENT SECTION
950 Pennsylvania Ave. NW – 4CON
Washington, DC 20530
(202) 598-9726

# IV.

# **FACTUAL BACKGROUND**

# **THE CATHOLIC SACRAMENT OF PENANCE AND RECONCILIATION**

20. The Sacrament of Penance and Reconciliation, commonly referred to as Confession, is one of the seven Holy Sacraments of the Catholic religion and, therefore, a critical practice of religious exercise. Under this sacrament, "the faithful … confess their sins to a legitimate minister," which "constitute the only ordinary means by which a member of the faithful … is reconciled with God and the Church." Codex Iuris Canonici c.959-60.

21. According to Catechism, "[t]he Sacrament of Penance involves a conversion of our hearts to God, a confession of sins to a priest, the forgiveness of our sins, a penance to make some amends for sin, and reconciliation with God and the Church." U.S. Conf. of Catholic Bishops, *U.S. Catholic Catechism for Adults* 264 (2006).

22. The sacrament of Confession can be traced back to the origins of the Catholic Church and is rooted in scripture. *See e.g., 1 John* 1:9 (New American Bible) ("But if we acknowledge our sins, he who is just can be trusted to forgive our sins and cleanse us from every wrong."); *see also John* 20:21–23 (New American Bible, St. Joseph Ed.) ("As the Father has sent me, so I send you. . . . Receive the Holy Spirit. If you forgive men's sins, they are forgiven them; *if you hold them bound, they are held bound.*") (emphasis added).

23. Catholics are required to go to Confession "at least once a year." Codex Iuris Canonici c.989. Priests must allow parishioners to confess anonymously by either using "confessionals with a fixed grate between the penitent and the confessor," or hearing them "outside of a confessional with a just cause." *Id.* c.964 §§ 2-3.

24. Strict confidentiality between the Catholic priest and the penitent during Confession is essential for the full expression of this rite, during which the priest may impose a penance and offer the absolution of sin.

UNITED STATES' COMPLAINT IN INTERVENTION  
Case No. 3:25-cv-5461-DGE  
Page 7

UNITED STATES DEPARTMENT OF JUSTICE  
CIVIL RIGHTS DIVISION  
HOUSING AND CIVIL ENFORCEMENT SECTION  
950 Pennsylvania Ave. NW – 4CON  
Washington, DC  20530  
(202) 598-9726

25. "The sacramental seal is inviolable; therefore, it is absolutely forbidden for a confessor [priest] to betray in any way a penitent in words or in any manner and for any reason." *Id.* c.983, § 1. Priests are "prohibited completely from using knowledge acquired from confession to the detriment of the penitent even when any danger of revelation is excluded." *Id.* c.984 § 1. Thus, "every priest who hears confessions is bound under very severe penalties to keep absolute secrecy regarding the sins that his penitents have confessed to him. He can make no use of knowledge that confession gives him about penitents' lives." *Catechism of the Catholic Church* § 1467.

26. The *automatic* penalty for violating confidentiality of Confession is excommunication from the Catholic Church. "A confessor who directly violates the seal of confession incurs an automatic (*latae sententiae*) excommunication reserved to the Apostolic See." Codes Iuris Canonici c.1386, § 1.

27. Accordingly, if a Catholic priest reveals information he learns during Confession, he is no longer a Catholic priest, he is removed from the Catholic Church, and he is excluded from participating in the sacraments of the Catholic Church.

## WASHINGTON STATE SENATE BILL 5375

28. SB 5375 is an amendment to Washington's mandatory reporting law for suspected child abuse and neglect. *See* Wash. Rev. Code § 26.44.030. Section 1 of SB 5375 adds a definition of "member of the clergy" that expressly includes "any … priest" who "perform[s] official duties that are recognized … under the discipline, tenets, doctrine, or custom of the person's church, religious denomination, [or] religious body[.]" Section 2 adds "members of the clergy" to the law's existing list of mandatory reporters. *See* Wash. Rev. Code § 26.44.030(1)(a).

29. Adding Catholic priests as mandatory reporters imposes significant legal obligations and consequences on them. They must report any suspected child abuse and neglect, regardless of the source, "at the first opportunity, but in no case longer than" 48 hours after learning the information and include "the identity of the accused if known." *Id*. § 26.44.030(1)(g). A priest who fails to report suspected abuse or neglect within this time frame is guilty of a "gross misdemeanor," *id*. § 26.44.080,

UNITED STATES' COMPLAINT IN INTERVENTION
Case No. 3:25-cv-5461-DGE
Page 8

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL RIGHTS DIVISION
HOUSING AND CIVIL ENFORCEMENT SECTION
950 Pennsylvania Ave. NW – 4CON
Washington, DC  20530
(202) 598-9726

which is punishable by up to 364 days in jail and/or a $5,000 fine. *Id.* § 9.92.020. Catholic priests who fail to comply with their mandatory reporting duties may also be exposed to civil liability.

30. Washington, like every other state, recognizes a privilege for confidential religious communications, including communications made during Confession. *Id.* § 5.60.060(3). However, as mandatory reporters under Section § 26.44.030(1)(a), Catholic priests may not rely on this privilege as a defense to failure to report. They must therefore disclose any information they receive in Confession that provides "reasonable cause" of abuse or neglect.

31. This was not inadvertent but was, in fact, SB 5375's express design and intent. Senator Noel Frame, who introduced the bill, stated, "The Legislature has a duty to act and end the cycles of abuse that can repeat generation after generation. When kids ask for help, we need to be sure that they get help. It's time to pass this bill once and for all."[5]

32. Senator Leonard Christian introduced an amendment to SB 5375 that would have exempted statements made during Confession. Under this amendment, "[a] member of the clergy, to the extent the member of the clergy believes necessary, shall reveal information relating to a privileged communication from a penitent to prevent reasonably certain death or substantial bodily harm." *See* S. Amend. 71 to SB 5375 (attached as Exhibit 3).

33. Senator Christian's amendment mirrored the language of SHB 1171, which the Governor signed into law only three days before signing SB 5375. Unlike SB 5375, which stripped clergy of their legal privileges, SHB 1171 *restored* legal privileges for attorneys who were mandatory reporters of child abuse and neglect because of their employment with colleges and universities. Although attorneys are not mandatory reporters *per se*, law professors, clinical law instructors or students, or in-house counsel at colleges and universities were covered as mandatory reporters as "employees" of "institutions of

---

[5] *See* Mitchell Roland, "Bill to Designate Clergy as Mandatory Reporters of Abuse Clears Washington Senate," *The Spokesman-Review* (Mar. 21, 2025), https://www.spokesman.com/stories/2025/mar/04/bill-to-designate-clergy-as-mandatory-reporters-of.

UNITED STATES' COMPLAINT IN INTERVENTION
Case No. 3:25-cv-5461-DGE
Page 9

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL RIGHTS DIVISION
HOUSING AND CIVIL ENFORCEMENT SECTION
950 Pennsylvania Ave. NW – 4CON
Washington, DC  20530
(202) 598-9726

higher education." *See* Wash. Rev. Code § 26.44.030(1)(f). They were therefore required to report child abuse and neglect even when learned through privileged attorney-client communications. SHB 1171 corrected this problem by exempting attorneys from having to report any "information related to the representation of a client," except when necessary to "prevent reasonably certain death or substantial bodily harm."

34. The Legislature enacted SHB 1171's reporting exemption for attorneys based on legal privileges, but voted down Senator Christian's substantially identical exception for Catholic priests and other clergy.

35. Another provision of SB 5375 strips "members of the clergy," and no one else, of the ability to rely on state-law privileges as a defense to reporting suspected abuse and neglect "caused by a person over whom he or she regularly exercises supervisory authority[.]" *See* Wash. Rev. Code § 26.44.030(1)(b). It does so by adding the clause, "Except for members of the clergy" before the phrase "no one shall be required to report under this section when he or she obtains the information solely as a result of a privileged communication" under state law. *See id.*

36. These privileges include not only the confessional privilege in Wash. Rev. Code § 5.60.060(3), but also any other state-law privileges that might apply to priests in their roles as supervisors. Thus, for example, if a priest learned of possible abuse or neglect of a child through an investigation conducted by the church's legal counsel, this information would trigger the priest's mandatory reporting obligations even though the information would otherwise be protected by attorney-client privilege. By contrast, a supervisor who is not a "member of the clergy" may continue to rely on such privileges as a defense to mandatory reporting.

37. Accordingly, SB 5375 by its terms treats individuals differently based on their religion by removing applicable legal protections only for "clergy."

38. Requiring Catholic priests to break the confidentiality of Confession creates a chilling effect on both priests and adherents in their willingness to adhere to the sacred rite of Confession.

UNITED STATES' COMPLAINT IN INTERVENTION
Case No. 3:25-cv-5461-DGE
Page 10

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL RIGHTS DIVISION
HOUSING AND CIVIL ENFORCEMENT SECTION
950 Pennsylvania Ave. NW – 4CON
Washington, DC  20530
(202) 598-9726

Although much of the debate over SB 5375 centered on preventing physical or sexual abuse of children, its scope is much broader. Under Washington's mandatory reporting law, "abuse and neglect" includes "negligent treatment or maltreatment of a child" by a parent or caregiver. Wash. Rev. Code § 26.44.020(1). "Negligent treatment or maltreatment," in turn, "means an act or a failure to act, or the cumulative effects of a pattern of conduct, behavior, or inaction, that evidences a serious disregard of consequences of such magnitude as to constitute a clear and present danger to a child's health, welfare, or safety[.]" *Id.* § 26.44.020(19). SB 5375's chilling effect may therefore extend to all Catholics based on their fear and uncertainty that any confession that revealed, for example, a lack of adequate child care or medical care could, in practice, be interpreted by priests to constitute "neglect" and result in a child welfare investigation and potential dependency action.

## V.

## CAUSE OF ACTION

### Violation of the Equal Protection Clause of the U.S. Constitution, Amendment XIV

39. The United States re-pleads the preceding paragraphs and incorporates them herein by reference.

40. Section 1 of the Fourteenth Amendment provides, *inter alia*, that States shall not "deny to any person within its jurisdiction the equal protection of the laws."

41. The Equal Protection Clause prohibits States from making or enacting classifications that "invade or restrain" the fundamental rights and liberties of its citizens, including the free exercise of religion under the First Amendment, unless such classifications are narrowly tailored to achieving a compelling governmental interest. *See Harper v. Va. State Bd. of Elections*, 383 U.S. 663, 670 (1966); *Plyler v. Doe*, 457 U.S. 202, 216-17 (1982) (under Equal Protection Clause, classifications "that impinge upon the exercise of a fundamental right" are "presumptively invidious"); *Nunez v. City of San Diego*, 114 F.3d 935, 944 (9th Cir. 1997) (same). "Unquestionably, the free exercise of religion is a fundamental constitutional right." *Johnson v. Robison*, 415 U.S. 361, 375 n.14 (1974); *accord Ashaheed*

UNITED STATES' COMPLAINT IN INTERVENTION
Case No. 3:25-cv-5461-DGE
Page 11

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL RIGHTS DIVISION
HOUSING AND CIVIL ENFORCEMENT SECTION
950 Pennsylvania Ave. NW – 4CON
Washington, DC  20530
(202) 598-9726

*v. Currington*, 7 F.4th 1236, 1250 (10th Cir. 2021) (finding "equal protection claim trigger[ed] strict scrutiny because it alleged . . . a deprivation of free exercise, a fundamental right").

42. SB 5375 targets, invades, restrains, and substantially burdens the fundamental rights of Catholic priests to freely exercise their religion, as protected by the First Amendment's Free Exercise Clause, by forcing them to violate their sacred vow of confidentiality for information learned through Confession.

43. SB 5375 specifically targets members of the clergy and is not a neutral, generally applicable law that incidentally burdens religion.

44. The Equal Protection Clause also prohibits States from enacting classifications that are based on a suspect class, including religious classifications, unless they are narrowly tailored to achieving a compelling governmental interest. *See Ball v. Massanari*, 254 F.3d 817, 823 (9th Cir. 2001); *Al Saud v. Days*, 50 F.4th 705, 709–10 (9th Cir. 2022).

45. SB 5375 treats religious actors, including, in particular, Catholic priests, less favorably than non-religious actors.

46. Because SB 5375 both infringes upon fundamental rights and is based on a suspect classification, it is subject to strict scrutiny.

47. SB 5375 cannot survive strict scrutiny because it is not narrowly tailored or substantially related to achieving a compelling governmental interest.

48. SB 5375 accordingly violates the Equal Protection Clause.

49. Legal remedies are inadequate to protect the United States' interests in preventing the constitutional violations described above, thereby rendering equitable relief appropriate.

UNITED STATES' COMPLAINT IN INTERVENTION
Case No. 3:25-cv-5461-DGE
Page 12

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL RIGHTS DIVISION
HOUSING AND CIVIL ENFORCEMENT SECTION
950 Pennsylvania Ave. NW – 4CON
Washington, DC  20530
(202) 598-9726

# VI.

# **PRAYER FOR RELIEF**

WHEREFORE, the United States respectfully requests the following relief:

a. A declaration that SB 5375 violates the rights of Catholic priests who are bound by the Sacramental Seal of Confession under the Equal Protection Clause of the Fourteenth Amendment as stated above;

b. Preliminary and permanently enjoin the State of Washington, including all of its officers, employees, agents, and anyone working on their behalf, from enforcing SB 5375 against Catholic priests, who, consistent with their religious exercise and beliefs, refuse to disclose information obtained during the Sacramental Seal of Confession that would otherwise be required to be reported under SB 5375; and

c. All other relief as the needs of justice may require.

UNITED STATES' COMPLAINT IN INTERVENTION
Case No. 3:25-cv-5461-DGE
Page 13

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL RIGHTS DIVISION
HOUSING AND CIVIL ENFORCEMENT SECTION
950 Pennsylvania Ave. NW – 4CON
Washington, DC  20530
(202) 598-9726

Dated: July 15, 2025

Respectfully submitted,

PAMELA BONDI
Attorney General

HARMEET K. DHILLON
Assistant Attorney General
Civil Rights Division

s/ Michael E. Gates
MICHAEL E. GATES
Deputy Assistant Attorney General
Civil Rights Division

CARRIE PAGNUCCO
Chief

s/ Max Lapertosa
AMIE S. MURPHY
Deputy Chief
MAX LAPERTOSA
Trial Attorney
United States Department of Justice
Housing and Civil Enforcement Section
Civil Rights Division
950 Pennsylvania Avenue NW—4CON
Washington, DC  20530
Tel: (202) 598-9726
Fax: (202) 514-1116
Max.Lapertosa@usdoj.gov

UNITED STATES' COMPLAINT IN INTERVENTION
Case No. 3:25-cv-5461-DGE
Page 14

UNITED STATES DEPARTMENT OF JUSTICE
CIVIL RIGHTS DIVISION
HOUSING AND CIVIL ENFORCEMENT SECTION
950 Pennsylvania Ave. NW – 4CON
Washington, DC  20530
(202) 598-9726