# Exhibit 1

S-0471.1

_____

### SENATE BILL 5375

_____

**State of Washington**        **69th Legislature**        **2025 Regular Session**

**By** Senators Frame, C. Wilson, Bateman, Dhingra, Nobles, and Valdez

Read first time 01/20/25.  Referred to Committee on Human Services.

AN ACT Relating to the duty of clergy to report child abuse and neglect; and amending RCW 26.44.020 and 26.44.030.

BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF WASHINGTON:

**Sec. 1.**  RCW 26.44.020 and 2024 c 298 s 5 are each amended to read as follows:

The definitions in this section apply throughout this chapter unless the context clearly requires otherwise.

(1) "Abuse or neglect" means sexual abuse, sexual exploitation, female genital mutilation as defined in RCW 18.130.460, trafficking as described in RCW 9A.40.100, sex trafficking or severe forms of trafficking in persons under the trafficking victims protection act of 2000, 22 U.S.C. Sec. 7101 et seq., or injury of a child by any person under circumstances which cause harm to the child's health, welfare, or safety, excluding conduct permitted under RCW 9A.16.100; or the negligent treatment or maltreatment of a child by a person responsible for or providing care to the child. An abused child is a child who has been subjected to child abuse or neglect as defined in this section.

(2) "Child" or "children" means any person under the age of ((eighteen)) 18 years of age.

(3) "Child forensic interview" means a developmentally sensitive and legally sound method of gathering factual information regarding allegations of child abuse, child neglect, or exposure to violence. This interview is conducted by a competently trained, neutral professional utilizing techniques informed by research and best practice as part of a larger investigative process.

(4) "Child protective services" means those services provided by the department designed to protect children from child abuse and neglect and safeguard such children from future abuse and neglect, and conduct investigations of child abuse and neglect reports. Investigations may be conducted regardless of the location of the alleged abuse or neglect. Child protective services includes referral to services to ameliorate conditions that endanger the welfare of children, the coordination of necessary programs and services relevant to the prevention, intervention, and treatment of child abuse and neglect, and services to children to ensure that each child has a permanent home. In determining whether protective services should be provided, the department shall not decline to provide such services solely because of the child's unwillingness or developmental inability to describe the nature and severity of the abuse or neglect.

(5) "Child protective services section" means the child protective services section of the department.

(6) "Child who is a candidate for foster care" means a child who the department identifies as being at imminent risk of entering foster care but who can remain safely in the child's home or in a kinship placement as long as services or programs that are necessary to prevent entry of the child into foster care are provided, and includes but is not limited to a child whose adoption or guardianship arrangement is at risk of a disruption or dissolution that would result in a foster care placement. The term includes a child for whom there is reasonable cause to believe that any of the following circumstances exist:

(a) The child has been abandoned by the parent as defined in RCW 13.34.030 and the child's health, safety, and welfare is seriously endangered as a result;

(b) The child has been abused or neglected as defined in this chapter and the child's health, safety, and welfare is seriously endangered as a result;

(c) There is no parent capable of meeting the child's needs such that the child is in circumstances that constitute a serious danger to the child's development;

(d) The child is otherwise at imminent risk of harm.

(7) "Children's advocacy center" means a child-focused facility in good standing with the state chapter for children's advocacy centers and that coordinates a multidisciplinary process for the investigation, prosecution, and treatment of sexual and other types of child abuse. Children's advocacy centers provide a location for forensic interviews and coordinate access to services such as, but not limited to, medical evaluations, advocacy, therapy, and case review by multidisciplinary teams within the context of county protocols as defined in RCW 26.44.180 and 26.44.185.

(8) (("Clergy" means any regularly licensed or ordained minister, priest, or rabbi of any church or religious denomination, whether acting in an individual capacity or as an employee or agent of any public or private organization or institution.

(9))) "Court" means the superior court of the state of Washington, juvenile department.

(((10))) (9) "Department" means the department of children, youth, and families.

(((11))) (10) "Experiencing homelessness" means lacking a fixed, regular, and adequate nighttime residence, including circumstances such as sharing the housing of other persons due to loss of housing, economic hardship, fleeing domestic violence, or a similar reason as described in the federal McKinney-Vento homeless assistance act (Title 42 U.S.C., chapter 119, subchapter I) as it existed on January 1, 2021.

(((12))) (11) "Family assessment" means a comprehensive assessment of child safety, risk of subsequent child abuse or neglect, and family strengths and needs that is applied to a child abuse or neglect report. Family assessment does not include a determination as to whether child abuse or neglect occurred, but does determine the need for services to address the safety of the child and the risk of subsequent maltreatment.

(((13))) (12) "Family assessment response" means a way of responding to certain reports of child abuse or neglect made under this chapter using a differential response approach to child protective services. The family assessment response shall focus on the safety of the child, the integrity and preservation of the

family, and shall assess the status of the child and the family in terms of risk of abuse and neglect including the parent's or guardian's or other caretaker's capacity and willingness to protect the child and, if necessary, plan and arrange the provision of services to reduce the risk and otherwise support the family. No one is named as a perpetrator, and no investigative finding is entered in the record as a result of a family assessment.

((~~(14)~~)) (13) "Founded" means the determination following an investigation by the department that, based on available information, it is more likely than not that child abuse or neglect did occur.

((~~(15)~~)) (14) "Inconclusive" means the determination following an investigation by the department of social and health services, prior to October 1, 2008, that based on available information a decision cannot be made that more likely than not, child abuse or neglect did or did not occur.

((~~(16)~~)) (15) "Institution" means a private or public hospital or any other facility providing medical diagnosis, treatment, or care.

((~~(17)~~)) (16) "Law enforcement agency" means the police department, the prosecuting attorney, the state patrol, the director of public safety, or the office of the sheriff.

((~~(18)~~)) (17) "Malice" or "maliciously" means an intent, wish, or design to intimidate, annoy, or injure another person. Such malice may be inferred from an act done in willful disregard of the rights of another, or an act wrongfully done without just cause or excuse, or an act or omission of duty betraying a willful disregard of social duty.

(18) "Member of the clergy" means any regularly licensed, accredited, or ordained minister, priest, rabbi, imam, elder, or similarly situated religious or spiritual leader of any church, religious denomination, religious body, spiritual community, or sect, or person performing official duties that are recognized as the duties of a member of the clergy under the discipline, tenets, doctrine, or custom of the person's church, religious denomination, religious body, spiritual community, or sect, whether acting in an individual capacity or as an employee, agent, or official of any public or private organization or institution.

(19) "Negligent treatment or maltreatment" means an act or a failure to act, or the cumulative effects of a pattern of conduct, behavior, or inaction, that evidences a serious disregard of consequences of such magnitude as to constitute a clear and present

danger to a child's health, welfare, or safety, including but not limited to conduct prohibited under RCW 9A.42.100. When considering whether a clear and present danger exists, evidence of a parent's substance abuse as a contributing factor to negligent treatment or maltreatment shall be given great weight. The fact that siblings share a bedroom is not, in and of itself, negligent treatment or maltreatment. Poverty, experiencing homelessness, or exposure to domestic violence as defined in RCW 7.105.010 that is perpetrated against someone other than the child does not constitute negligent treatment or maltreatment in and of itself.

(20) "Pharmacist" means any registered pharmacist under chapter 18.64 RCW, whether acting in an individual capacity or as an employee or agent of any public or private organization or institution.

(21) "Practitioner of the healing arts" or "practitioner" means a person licensed by this state to practice podiatric medicine and surgery, optometry, chiropractic, nursing, dentistry, osteopathic medicine and surgery, or medicine and surgery or to provide other health services. The term "practitioner" includes a duly accredited Christian Science practitioner. A person who is being furnished Christian Science treatment by a duly accredited Christian Science practitioner will not be considered, for that reason alone, a neglected person for the purposes of this chapter.

(22) "Prevention and family services and programs" means specific mental health prevention and treatment services, substance abuse prevention and treatment services, and in-home parent skill-based programs that qualify for federal funding under the federal family first prevention services act, P.L. 115-123. For purposes of this chapter, prevention and family services and programs are not remedial services or family reunification services as described in RCW 13.34.025(2).

(23) "Professional school personnel" include, but are not limited to, teachers, counselors, administrators, child care facility personnel, and school nurses.

(24) "Psychologist" means any person licensed to practice psychology under chapter 18.83 RCW, whether acting in an individual capacity or as an employee or agent of any public or private organization or institution.

(25) "Screened-out report" means a report of alleged child abuse or neglect that the department has determined does not rise to the

level of a credible report of abuse or neglect and is not referred for investigation.

(26) "Sexual exploitation" includes: (a) Allowing, permitting, or encouraging a child to engage in prostitution by any person; or (b) allowing, permitting, encouraging, or engaging in the obscene or pornographic photographing, filming, or depicting of a child by any person.

(27) "Sexually aggressive youth" means a child who is defined in RCW 74.13.075(1)(b) as being a sexually aggressive youth.

(28) "Social service counselor" means anyone engaged in a professional capacity during the regular course of employment in encouraging or promoting the health, welfare, support, or education of children, or providing social services to adults or families, including mental health, drug and alcohol treatment, and domestic violence programs, whether in an individual capacity, or as an employee or agent of any public or private organization or institution.

(29) "Unfounded" means the determination following an investigation by the department that available information indicates that, more likely than not, child abuse or neglect did not occur, or that there is insufficient evidence for the department to determine whether the alleged child abuse did or did not occur.

**Sec. 2.**   RCW 26.44.030 and 2024 c 298 s 6 are each amended to read as follows:

(1)(a) When any member of the clergy, practitioner, county coroner or medical examiner, law enforcement officer, professional school personnel, registered or licensed nurse, social service counselor, psychologist, pharmacist, employee of the department of children, youth, and families, licensed or certified child care providers or their employees, employee of the department of social and health services, juvenile probation officer, diversion unit staff, placement and liaison specialist, responsible living skills program staff, HOPE center staff, state family and children's ombuds or any volunteer in the ombuds' office, or host home program has reasonable cause to believe that a child has suffered abuse or neglect, he or she shall report such incident, or cause a report to be made, to the proper law enforcement agency or to the department as provided in RCW 26.44.040.

(b) When any person, in his or her official supervisory capacity with a nonprofit or for-profit organization, has reasonable cause to believe that a child has suffered abuse or neglect caused by a person over whom he or she regularly exercises supervisory authority, he or she shall report such incident, or cause a report to be made, to the proper law enforcement agency, provided that the person alleged to have caused the abuse or neglect is employed by, contracted by, or volunteers with the organization and coaches, trains, educates, or counsels a child or children or regularly has unsupervised access to a child or children as part of the employment, contract, or voluntary service. ((No)) Except for members of the clergy, no one shall be required to report under this section when he or she obtains the information solely as a result of a privileged communication as provided in RCW 5.60.060.

Nothing in this subsection (1)(b) shall limit a person's duty to report under (a) of this subsection.

For the purposes of this subsection, the following definitions apply:

(i) "Official supervisory capacity" means a position, status, or role created, recognized, or designated by any nonprofit or for-profit organization, either for financial gain or without financial gain, whose scope includes, but is not limited to, overseeing, directing, or managing another person who is employed by, contracted by, or volunteers with the nonprofit or for-profit organization.

(ii) "Organization" includes a sole proprietor, partnership, corporation, limited liability company, trust, association, financial institution, governmental entity, other than the federal government, and any other individual or group engaged in a trade, occupation, enterprise, governmental function, charitable function, or similar activity in this state whether or not the entity is operated as a nonprofit or for-profit entity.

(iii) "Reasonable cause" means a person witnesses or receives a credible written or oral report alleging abuse, including sexual contact, or neglect of a child.

(iv) "Regularly exercises supervisory authority" means to act in his or her official supervisory capacity on an ongoing or continuing basis with regards to a particular person.

(v) "Sexual contact" has the same meaning as in RCW 9A.44.010.

(c) The reporting requirement also applies to department of corrections personnel who, in the course of their employment, observe

offenders or the children with whom the offenders are in contact. If, as a result of observations or information received in the course of his or her employment, any department of corrections personnel has reasonable cause to believe that a child has suffered abuse or neglect, he or she shall report the incident, or cause a report to be made, to the proper law enforcement agency or to the department as provided in RCW 26.44.040.

(d) The reporting requirement shall also apply to any adult who has reasonable cause to believe that a child who resides with them, has suffered severe abuse, and is able or capable of making a report. For the purposes of this subsection, "severe abuse" means any of the following: Any single act of abuse that causes physical trauma of sufficient severity that, if left untreated, could cause death; any single act of sexual abuse that causes significant bleeding, deep bruising, or significant external or internal swelling; or more than one act of physical abuse, each of which causes bleeding, deep bruising, significant external or internal swelling, bone fracture, or unconsciousness.

(e) The reporting requirement also applies to guardians ad litem, including court-appointed special advocates, appointed under Titles 11 and 13 RCW and this title, who in the course of their representation of children in these actions have reasonable cause to believe a child has been abused or neglected.

(f) The reporting requirement in (a) of this subsection also applies to administrative and academic or athletic department employees, including student employees, of institutions of higher education, as defined in RCW 28B.10.016, and of private institutions of higher education.

(g) The report must be made at the first opportunity, but in no case longer than ((forty-eight)) 48 hours after there is reasonable cause to believe that the child has suffered abuse or neglect. The report must include the identity of the accused if known.

(2) The reporting requirement of subsection (1) of this section does not apply to the discovery of abuse or neglect that occurred during childhood if it is discovered after the child has become an adult. However, if there is reasonable cause to believe other children are or may be at risk of abuse or neglect by the accused, the reporting requirement of subsection (1) of this section does apply.

(3) Any other person who has reasonable cause to believe that a child has suffered abuse or neglect may report such incident to the proper law enforcement agency or to the department as provided in RCW 26.44.040.

(4) The department, upon receiving a report of an incident of alleged abuse or neglect pursuant to this chapter, involving a child who has died or has had physical injury or injuries inflicted upon him or her other than by accidental means or who has been subjected to alleged sexual abuse, shall report such incident to the proper law enforcement agency, including military law enforcement, if appropriate. In emergency cases, where the child's welfare is endangered, the department shall notify the proper law enforcement agency within ((twenty-four)) 24 hours after a report is received by the department. In all other cases, the department shall notify the law enforcement agency within ((seventy-two)) 72 hours after a report is received by the department. If the department makes an oral report, a written report must also be made to the proper law enforcement agency within five days thereafter.

(5) Any law enforcement agency receiving a report of an incident of alleged abuse or neglect pursuant to this chapter, involving a child who has died or has had physical injury or injuries inflicted upon him or her other than by accidental means, or who has been subjected to alleged sexual abuse, shall report such incident in writing as provided in RCW 26.44.040 to the proper county prosecutor or city attorney for appropriate action whenever the law enforcement agency's investigation reveals that a crime may have been committed. The law enforcement agency shall also notify the department of all reports received and the law enforcement agency's disposition of them. In emergency cases, where the child's welfare is endangered, the law enforcement agency shall notify the department within ((twenty-four)) 24 hours. In all other cases, the law enforcement agency shall notify the department within ((seventy-two)) 72 hours after a report is received by the law enforcement agency.

(6) Any county prosecutor or city attorney receiving a report under subsection (5) of this section shall notify the victim, any persons the victim requests, and the local office of the department, of the decision to charge or decline to charge a crime, within five days of making the decision.

(7) The department may conduct ongoing case planning and consultation with those persons or agencies required to report under

this section, with consultants designated by the department, and with designated representatives of Washington Indian tribes if the client information exchanged is pertinent to cases currently receiving child protective services. Upon request, the department shall conduct such planning and consultation with those persons required to report under this section if the department determines it is in the best interests of the child. Information considered privileged by statute and not directly related to reports required by this section must not be divulged without a valid written waiver of the privilege.

(8) Any case referred to the department by a physician licensed under chapter 18.57 or 18.71 RCW on the basis of an expert medical opinion that child abuse, neglect, or sexual assault has occurred and that the child's safety will be seriously endangered if returned home, the department shall file a dependency petition unless a second licensed physician of the parents' choice believes that such expert medical opinion is incorrect. If the parents fail to designate a second physician, the department may make the selection. If a physician finds that a child has suffered abuse or neglect but that such abuse or neglect does not constitute imminent danger to the child's health or safety, and the department agrees with the physician's assessment, the child may be left in the parents' home while the department proceeds with reasonable efforts to remedy parenting deficiencies.

(9) Persons or agencies exchanging information under subsection (7) of this section shall not further disseminate or release the information except as authorized by state or federal statute. Violation of this subsection is a misdemeanor.

(10) Upon receiving a report that a child is a candidate for foster care as defined in RCW 26.44.020, the department may provide prevention and family services and programs to the child's parents, guardian, or caregiver. The department may not be held civilly liable for the decision regarding whether to provide prevention and family services and programs, or for the provision of those services and programs, for a child determined to be a candidate for foster care.

(11) Upon receiving a report of alleged abuse or neglect, the department shall make reasonable efforts to learn the name, address, and telephone number of each person making a report of abuse or neglect under this section. The department shall provide assurances of appropriate confidentiality of the identification of persons reporting under this section. If the department is unable to learn

the information required under this subsection, the department shall only investigate cases in which:

(a) The department believes there is a serious threat of substantial harm to the child;

(b) The report indicates conduct involving a criminal offense that has, or is about to occur, in which the child is the victim; or

(c) The department has a prior founded report of abuse or neglect with regard to a member of the household that is within three years of receipt of the referral.

(12)(a) Upon receiving a report of alleged abuse or neglect, the department shall use one of the following discrete responses to reports of child abuse or neglect that are screened in and accepted for departmental response:

(i) Investigation; or

(ii) Family assessment.

(b) In making the response in (a) of this subsection the department shall:

(i) Use a method by which to assign cases to investigation or family assessment which are based on an array of factors that may include the presence of: Imminent danger, level of risk, number of previous child abuse or neglect reports, or other presenting case characteristics, such as the type of alleged maltreatment and the age of the alleged victim. Age of the alleged victim shall not be used as the sole criterion for determining case assignment;

(ii) Allow for a change in response assignment based on new information that alters risk or safety level;

(iii) Allow families assigned to family assessment to choose to receive an investigation rather than a family assessment;

(iv) Provide a full investigation if a family refuses the initial family assessment;

(v) Provide voluntary services to families based on the results of the initial family assessment. If a family refuses voluntary services, and the department cannot identify specific facts related to risk or safety that warrant assignment to investigation under this chapter, and there is not a history of reports of child abuse or neglect related to the family, then the department must close the family assessment response case. However, if at any time the department identifies risk or safety factors that warrant an investigation under this chapter, then the family assessment response case must be reassigned to investigation;

(vi) Conduct an investigation, and not a family assessment, in response to an allegation that, the department determines based on the intake assessment:

(A) Indicates a child's health, safety, and welfare will be seriously endangered if not taken into custody for reasons including, but not limited to, sexual abuse and sexual exploitation of the child as defined in this chapter;

(B) Poses a serious threat of substantial harm to a child;

(C) Constitutes conduct involving a criminal offense that has, or is about to occur, in which the child is the victim;

(D) The child is an abandoned child as defined in RCW 13.34.030;

(E) The child is an adjudicated dependent child as defined in RCW 13.34.030, or the child is in a facility that is licensed, operated, or certified for care of children by the department under chapter 74.15 RCW.

(c) In addition, the department may use a family assessment response to assess for and provide prevention and family services and programs, as defined in RCW 26.44.020, for the following children and their families, consistent with requirements under the federal family first prevention services act and this section:

(i) A child who is a candidate for foster care, as defined in RCW 26.44.020; and

(ii) A child who is in foster care and who is pregnant, parenting, or both.

(d) The department may not be held civilly liable for the decision to respond to an allegation of child abuse or neglect by using the family assessment response under this section unless the state or its officers, agents, or employees acted with reckless disregard.

(13)(a) For reports of alleged abuse or neglect that are accepted for investigation by the department, the investigation shall be conducted within time frames established by the department in rule. In no case shall the investigation extend longer than ((ninety)) 90 days from the date the report is received, unless the investigation is being conducted under a written protocol pursuant to RCW 26.44.180 and a law enforcement agency or prosecuting attorney has determined that a longer investigation period is necessary. At the completion of the investigation, the department shall make a finding that the report of child abuse or neglect is founded or unfounded.

(b) If a court in a civil or criminal proceeding, considering the same facts or circumstances as are contained in the report being investigated by the department, makes a judicial finding by a preponderance of the evidence or higher that the subject of the pending investigation has abused or neglected the child, the department shall adopt the finding in its investigation.

(14) For reports of alleged abuse or neglect that are responded to through family assessment response, the department shall:

(a) Provide the family with a written explanation of the procedure for assessment of the child and the family and its purposes;

(b) Collaborate with the family to identify family strengths, resources, and service needs, and develop a service plan with the goal of reducing risk of harm to the child and improving or restoring family well-being;

(c) Complete the family assessment response within ((forty-five)) 45 days of receiving the report except as follows:

(i) Upon parental agreement, the family assessment response period may be extended up to ((one hundred twenty)) 120 days. The department's extension of the family assessment response period must be operated within the department's appropriations;

(ii) For cases in which the department elects to use a family assessment response as authorized under subsection (12)(c) of this section, and upon agreement of the child's parent, legal guardian, legal custodian, or relative placement, the family assessment response period may be extended up to one year. The department's extension of the family assessment response must be operated within the department's appropriations.

(d) Offer services to the family in a manner that makes it clear that acceptance of the services is voluntary;

(e) Implement the family assessment response in a consistent and cooperative manner;

(f) Have the parent or guardian agree to participate in services before services are initiated. The department shall inform the parents of their rights under family assessment response, all of their options, and the options the department has if the parents do not agree to participate in services.

(15)(a) In conducting an investigation or family assessment of alleged abuse or neglect, the department or law enforcement agency:

(i) May interview children. If the department determines that the response to the allegation will be family assessment response, the preferred practice is to request a parent's, guardian's, or custodian's permission to interview the child before conducting the child interview unless doing so would compromise the safety of the child or the integrity of the assessment. The interviews may be conducted on school premises, at day-care facilities, at the child's home, or at other suitable locations outside of the presence of parents. If the allegation is investigated, parental notification of the interview must occur at the earliest possible point in the investigation that will not jeopardize the safety or protection of the child or the course of the investigation. Prior to commencing the interview the department or law enforcement agency shall determine whether the child wishes a third party to be present for the interview and, if so, shall make reasonable efforts to accommodate the child's wishes. Unless the child objects, the department or law enforcement agency shall make reasonable efforts to include a third party in any interview so long as the presence of the third party will not jeopardize the course of the investigation; and

(ii) Shall have access to all relevant records of the child in the possession of mandated reporters and their employees.

(b) The Washington state school directors' association shall adopt a model policy addressing protocols when an interview, as authorized by this subsection, is conducted on school premises. In formulating its policy, the association shall consult with the department and the Washington association of sheriffs and police chiefs.

(16) If a report of alleged abuse or neglect is founded and constitutes the third founded report received by the department within the last ((twelve)) 12 months involving the same child or family, the department shall promptly notify the office of the family and children's ombuds of the contents of the report. The department shall also notify the ombuds of the disposition of the report.

(17) In investigating and responding to allegations of child abuse and neglect, the department may conduct background checks as authorized by state and federal law.

(18)(a) The department shall maintain investigation records and conduct timely and periodic reviews of all founded cases of abuse and neglect. The department shall maintain a log of screened-out nonabusive cases.

(b) In the family assessment response, the department shall not make a finding as to whether child abuse or neglect occurred. No one shall be named as a perpetrator and no investigative finding shall be entered in the department's child abuse or neglect database.

(19) The department shall use a risk assessment process when investigating alleged child abuse and neglect referrals. The department shall present the risk factors at all hearings in which the placement of a dependent child is an issue. Substance abuse must be a risk factor.

(20) Upon receipt of a report of alleged abuse or neglect the law enforcement agency may arrange to interview the person making the report and any collateral sources to determine if any malice is involved in the reporting.

(21) Upon receiving a report of alleged abuse or neglect involving a child under the court's jurisdiction under chapter 13.34 RCW, the department shall promptly notify the child's guardian ad litem of the report's contents. The department shall also notify the guardian ad litem of the disposition of the report. For purposes of this subsection, "guardian ad litem" has the meaning provided in RCW 13.34.030.

(22) The department shall make efforts as soon as practicable to determine the military status of parents whose children are subject to abuse or neglect allegations. If the department determines that a parent or guardian is in the military, the department shall notify a department of defense family advocacy program that there is an allegation of abuse and neglect that is screened in and open for investigation that relates to that military parent or guardian.

(23) The department shall make available on its public website a downloadable and printable poster that includes the reporting requirements included in this section. The poster must be no smaller than ((eight and one-half by eleven)) 8.5 by 11 inches with all information on one side. The poster must be made available in both the English and Spanish languages. Organizations that include employees or volunteers subject to the reporting requirements of this section must clearly display this poster in a common area. At a minimum, this poster must include the following:

(a) Who is required to report child abuse and neglect;

(b) The standard of knowledge to justify a report;

(c) The definition of reportable crimes;

(d) Where to report suspected child abuse and neglect; and

(e)  What should be included in a report and the appropriate timing.

**--- END ---**